**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| SAM KATZ, on behalf of himself and all other similarly situated, | |
| *Plaintiff*, | |
| v. | Case No. 5:22-cv-05198-PKH |
| CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY, | |
| *Defendant*. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
<u>OF ITS MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   APPLICABLE LEGAL STANDARDS ............................................................... 3

    A.    Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim for Relief ............................. 3

    B.    Fed. R. Civ. P. 12(f) and 23 – Striking Improper Class and Other
    Allegations ........................................................................................................ 3

III.  ARGUMENT ..................................................................................................... 4

    A.    The Complaint Should Be Dismissed In Its Entirety Under Rule 12(b)(6)
    Because Plaintiff Fails to State a Plausible Claim for Relief Under the
    TCPA. .............................................................................................................. 4

        1.    Plaintiff Fails to Allege Sufficient Facts Supporting His
        "Prerecorded Voice" Claim Under Section 227(b) of the TCPA
        (Count I). ............................................................................................ 5

        2.    Plaintiff Fails to Plead Facts Supporting Essential Elements of His
        DNC Claims Under Section 227(c) of the TCPA (Counts II and
        III). .................................................................................................... 6

        3.    Plaintiff Also Lacks "Prudential" Standing to Bring a DNC Claim. ......... 9

        4.    Plaintiff Fails to Sufficiently Plead Direct TCPA Liability (All
        Counts). ............................................................................................. 10

        5.    Plaintiff Fails to Plead Vicarious TCPA Liability (All Counts). .............. 15

    B.    Alternatively, Plaintiff's Facially Uncertifiable Class Definitions and
    Other Improper Allegations Should Be Stricken Under Fed. R. Civ. P.
    12(f) and/or 23. ................................................................................................ 18

        1.    Plaintiff's Proposed Classes Are Impermissibly "Fail-Safe." ................. 18

        2.    Common Questions of Law and Fact Do Not Predominate
        Plaintiff's Proposed Classes, and Individualized Determinations
        Would Be Needed. .............................................................................. 21

        3.    Plaintiff's "DNC" and "Policy" Classes Are Impermissibly
        Overbroad. ......................................................................................... 23

        4.    The Complaint Contains "Superfluous Historical" Allegations. .............. 24

IV.   CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,
  2018 WL 488257 (N.D. Ill. Jan. 18, 2018)......................................................18, 23

*Aaronson v. CHW Grp., Inc.*,
  2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ............................................... passim

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
  2018 WL 288055 (N.D. Cal. Jan. 4, 2018)......................................................10, 14

*Acre v. Spindletop Oil & Gas Co.*,
  2009 WL 4016116 (E.D. Ark. Nov. 18, 2009) .....................................................13

*Adam v. CHW Grp., Inc.*,
  2021 WL 7285905 (N.D. Iowa Sept. 9, 2021)......................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................3, 13, 14

*Bank v. Philips Elecs. N. Am. Corp.*,
  2015 WL 1650926 (E.D.N.Y. Apr. 14, 2015) ......................................................13

*Bank v. Vivint Solar, Inc.*,
  2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019) .................................................14, 16

*Bank v. Vivint Solar, Inc.*,
  2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019) ..................................................14, 16

*Barnett v. Bank of Am., N.A.*,
  2021 WL 2187950 (W.D.N.C. May 28, 2021) .....................................................23

*Barrett v. ADT Corp.*,
  2016 WL 865672 (S.D. Ohio Mar. 7, 2016)........................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................3, 13

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) (*abrogated on other grounds by Microsoft v. Baker*,
  137 S. Ct. 1702 (2017))...........................................................................21

*Blount v. D. Canale Beverages, Inc.*,
  2003 WL 22890339 (W.D. Tenn. July 23, 2003) .................................................24

*Boyer v. Diversified Consultants, Inc.*,
  306 F.R.D. 536 (E.D. Mich. 2015) ..................................................................19

*Braver v. NorthStar Alarm Servs., LLC*,
  2019 WL 3208651 (W.D. Okla. July 16, 2019)......................................................6

*Brown v. Medtronic, Inc.*,
    628 F.3d 451 (8th Cir. 2010) ...........................................................................13

*Bryant v. King's Creek Plantation, L.L.C.*,
    2020 WL 6876292 (E.D. Va. June 22, 2020) .....................................................19

*Burks v. Arvest Bank*,
    2006 WL 3512478 (E.D. Ark. Dec. 6, 2006)......................................................10

*Carson Optical Inc. v. eBay Inc.*,
    202 F. Supp. 3d 247 (E.D.N.Y. 2016) ...............................................................13

*Charvat v. DFS Servs. LLC*,
    781 F. Supp. 2d 588 (S.D. Ohio 2011) .................................................................9

*Charvat v. GVN Michigan, Inc.*,
    561 F.3d 623 (6th Cir. 2009) ...............................................................................9

*Childress v. Liberty Mut. Ins. Co.*,
    2018 WL 4684209 (D.N.M. Sept. 28, 2018) .........................................11, 13, 14

*Cholly v. Uptain Grp., Inc.*,
    2017 WL 449176 (N.D. Ill. Feb. 1, 2017) ..........................................................22

*Christiansen v. West Branch Community School Dist.*,
    674 F.3d 927 (8th Cir. 2012) ................................................................................3

*Cicalese v. Univ. of Texas Med. Branch*,
    456 F. Supp. 3d 859 (S.D. Tex. 2020) ...............................................................13

*Cook v. ACS State & Local Sols., Inc.*,
    663 F.3d 989 (8th Cir. 2011) ................................................................................3

*Cunningham v. Caribbean Cruise Lines*,
    2016 WL 7494871 (S.D. Fla. Dec. 29, 2016) ......................................................7

*Cunningham v. McDonald*,
    2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL
    6198417 (Nov. 28, 2018)......................................................................................7

*Cunningham v. Politi*,
    2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL
    2524737 (June 19, 2019) ...................................................................................6, 7

*Cunningham v. Rapid Capital Funding, LLC/RCF*,
    2017 WL 3574451 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL
    3776165 (Aug. 31, 2017)....................................................................................6, 7

*Day v. Renny*,
    2020 WL 13002519 (D. Neb. July 24, 2020) .....................................................12

*Dixon v. Monterey Fin. Servs., Inc.*,
    2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ..............................................18, 19

*Donaca v. Dish Network, LLC*,
    303 F.R.D. 390 (D. Colo. 2014) ........................................................................11

*Donelson v. Ameriprise Fin. Servs., Inc.*,
  999 F.3d 1080 (8th Cir. 2021), *cert. denied,* 142 S. Ct. 2675 (2022)......................................4

*Dorfman v. Albertson's LLC*,
  2020 WL 86192 (D. Idaho Jan. 7, 2020) .................................................................................22

*Dowden, Tr. of Est. of Huchingson v. Cornerstone Nat'l Ins. Co.*,
  2019 WL 11274868 (W.D. Ark. May 16, 2019) ........................................................................8

*Eldridge v. Cabela's Inc.*,
  2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)...................................................................18, 22

*Ford v. TD Ameritrade Holding Corp.*,
  995 F.3d 616 (8th Cir. 2021) ...................................................................................................19

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .........................................................................11

*Gallegos v. Roman Catholic Archbishop of San Francisco*,
  2016 WL 3162203 (N.D. Cal. June 7, 2016) ...........................................................................24

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982).....................................................................................................................3

*Gene and Gene LLC v. BioPay LLC*,
  541 F.3d 318 (5th Cir. 2008) ....................................................................................................22

*Gulden v. Consol. World Travel Inc.*,
  2017 WL 3841491 (D. Ariz. Feb. 15, 2017).............................................................................18

*Hand v. Beach Entm't KC*,
  456 F. Supp. 3d 1099 (W.D. Mo. 2020) .....................................................................................6

*Hernandez v. Select Portfolio, Inc.*,
  2015 WL 3914741 (C.D. Cal. June 25, 2015) ..........................................................................13

*Herskowitz v. Apple, Inc.*,
  301 F.R.D. 460 (N.D. Cal. 2014)..............................................................................................21

*Hicks v. Alarm.com*,
  2020 WL 9261758 (E.D. Va. Aug. 6, 2020)...................................................................... passim

*Howard v. Goodwin*,
  2018 WL 6613796 (W.D. Ark. Dec. 17, 2018) ..........................................................................8

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
  934 F. Supp. 2d 1219 (C.D. Cal. 2013) ....................................................................................25

*In re Easysaver Rewards Litig.*,
  737 F. Supp. 2d 1159 (S.D. Cal. 2010)......................................................................................25

*In re Joint Petition
  filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574 (2013).......................10

*In re: Monitronics Int'l, Inc., TCPA Litig.*,
  223 F. Supp. 3d 514 (N.D.W.Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec.
  Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ...........................................................16, 17, 18

*In re Teflon Prod. Liab. Litig.*,
   254 F.R.D. 354 (S.D. Iowa 2008) ...................................................................21

*Johansen v. Vivant, Inc.*,
   2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ...................................................5

*Johnson v. GMAC Mortg. Group, Inc.*,
   2006 WL 2433474 (N.D. Iowa Aug. 21, 2006) ..............................................21

*Jones v. Royal Admin. Servs., Inc.*,
   866 F.3d 1100 (9th Cir. 2017) ...............................................................15, 16

*Jones v. Royal Admin. Svcs., Inc.*,
   887 F.3d 443 (9th Cir. 2018) .................................................................16, 17

*Kristensen v. Credit Payment Servs.*,
   12 F. Supp. 3d 1292 (D. Nev. 2014) .............................................................15

*Landy v. Nat. Power Sources, LLC*,
   2021 WL 3634162 (D.N.J. Aug. 17, 2021) ...............................................13, 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ......................................................................................9

*Lind v. Midland Funding, LLC*,
   688 F.3d 402 (8th Cir. 2012) ........................................................................3

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
   2013 WL 275568 (E.D. Mo. Jan. 24, 2013) .......................................18, 19, 22, 23

*Linlor v. Five9, Inc.*,
   2017 WL 5885671 (S.D. Cal. Nov. 29, 2017) ................................................15

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
   2011 WL 4389689 (C.D. Cal. May 5, 2011) ..................................................25

*Maldonado v. HSBC Mortg. Sys., Inc.*,
   2017 WL 3496460 (D. Nev. Aug. 15, 2017) .................................................23

*Maldonado-Rodriguez v. Citibank, N.A.*,
   2013 WL 350814 (N.D. Ind. Jan. 28, 2013) ..................................................13

*Manopla v. Sansone Jr.'s 66 Automall*,
   2020 WL 1975834 (D.N.J. Jan. 10, 2020) .......................................................5

*Mantha v. QuoteWizard.com, LLC*,
   2022 WL 325722 (D. Mass. Feb. 3, 2022) ..................................................7, 8

*Martinez v. TD Bank USA*,
   2017 WL 2829601 (D.N.J. June 30, 2017) ....................................................19

*McReynolds v. Lowe's Cos. Inc.*,
   2008 WL 5234047 (D. Idaho Dec. 12, 2008) .................................................25

*Meeks v. Buffalo Wild Wings, Inc.*,
   2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ......................................12, 14, 15

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) ........................................................16

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018) .........................................................7

*Naiman v. TranzVia LLC*,
2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ........................................................15

*Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.*,
2013 WL 1196948 (W.D. Wash. Mar. 25, 2013) ..................................................25

*Orr v. Clements*,
688 F.3d 463 (8th Cir. 2012) ................................................................................25

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019)........................................................10

*Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ...........................................18, 19, 22

*Rahimian v. Rachel Adriano and Juan Martinez, Inc.*,
2002 WL 798371 (D. Nev. Mar. 16, 2022) ............................................................5

*Rand-Heart of New York, Inc. v. Dolan*,
812 F.3d 1172 (8th Cir. 2016) ...............................................................................3

*Randleman v. Fid. Nat'l Title Ins. Co.*,
646 F.3d 347 (6th Cir. 2011) ...............................................................................19

*Revitch v. Citibank*,
2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) ......................................................21

*Rogers v. Postmates Inc.*,
2020 WL 3869191 (N.D. Cal. July 9, 2020)..........................................................10

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
2022 WL 2713278 (N.D. Iowa June 9, 2022).......................................................20

*Sandusky Wellness Ctr., LLC v. ASD Spec. Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ...............................................................................21

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ...............................................................................12

*Saulsberry v. Meridian Fin. Servs., Inc.*,
2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) ......................................................21

*Sauter v. CVS Pharmacy, Inc.*,
2014 WL 1814076 (S.D. Ohio May 7, 2014) ...................................................18, 19

*Scott v. St. Louis Univ. Hosp.*,
2022 WL 1211092 (E.D. Mo. Apr. 25, 2022) .......................................................10

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020)...................................................14, 17

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020) ...........................................................10, 11, 17

*Smith v. Direct Building Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021)...........................................................................12

*Smith v. Pro Custom Solar LLC*,
2021 WL 141336 (D.N.J. Jan. 15, 2021) ...............................................................................5

*Smith v. Vision Solar LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ...................................................................7, 12

*Sundermann v. Golden Circle Real Est. Grp., L.L.C.*,
2019 WL 7758601 (S.D. Iowa Oct. 29, 2019)....................................................10, 15, 16, 17

*Survivor Prods. LLC v. Fox Broad. Co.*,
2001 WL 35829267 (C.D. Cal. June 12, 2001) ...................................................................25

*Thomas v. Taco Bell Corp.*,
582 F.App'x 678 (9th Cir. 2014) ........................................................................................10

*Trenz v. On-Line Admins., Inc.*,
2020 WL 5823565 (C.D. Cal. Aug. 10, 2020).....................................................................21

*Ung v. Universal Accept. Corp.*,
319 F.R.D. 537 (D. Minn. 2017)........................................................................................21

*Visser v. Caribbean Cruise Line, Inc.*,
2020 WL 415845 (W.D. Mich. Jan. 27, 2020) ....................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...........................................................................................................21

*Wiseberg v. Toyota Motor Corp.*,
2012 WL 1108542 (D.N.J. Mar. 30, 2012)..........................................................................25

*Woo v. Home Loan Group, L.P.*,
2007 WL 6624925 (S.D. Cal. Jul. 27, 2007) ......................................................................24

*Worsham v. Travel Options, Inc.*,
2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F.App'x 165 (4th Cir. 2017) ...............6

*Ybarra v. Dish Network, L.L.C.*,
807 F.3d 635 (5th Cir. 2015) ...............................................................................................1

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
80 F. Supp. 3d 610 (E.D. Pa. 2015) ....................................................................................19

## STATUTES

47 U.S.C. § 227(b)(1)(A)(iii).................................................................................................4, 5

47 U.S.C. § 227(c)(5).........................................................................................................4, 6, 22

47 U.S.C. § 227(d)....................................................................................................................4

# OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(2)..................................................................................4, 20

47 C.F.R. § 64.1200(c)(2)..........................................................................4, 6, 20, 24

47 C.F.R. § 64.1200(c)(2)(i)(D)...............................................................................6

47 C.F.R. § 64.1200(c)(2)(ii)..................................................................................22

47 C.F.R. § 64.1200(d) ...................................................................................4, 6, 20

47 C.F.R. § 64.1200(f)(1)........................................................................................20

47 C.F.R. § 64.1200(f)(5)........................................................................................24

47 C.F.R. § 64.1200(f)(9)........................................................................................20

47 C.F.R. § 64.1200(f)(13)......................................................................................20

47 C.F.R. § 64.1200(f)(15)................................................................................22, 24

Restatement (3d) of Agency § 1.01, cmt. c..............................................................15

Wright & Miller, FEDERAL PRAC. & PROC. § 1383 (3d ed.)......................................4

Wright & Miller, FEDERAL PRAC. & PROC. § 1760 (3d ed. 2005)...........................23

## I.     __INTRODUCTION__

In his Complaint (*see* Dkt. 2-1), Plaintiff does little more than allege, in a conclusory and inconsistent fashion and without sufficient requisite factual support, that CHW Group, Inc., d/b/a Choice Home Warranty ("CHW"), violated the Telephone Consumer Protection Act ("TCPA"). Taking a "kitchen sink" approach, Plaintiff bases these claims on ill-described calls and/or text messages, purportedly made to two different phone numbers, by someone using a "prerecorded or artificial voice"—albeit only for some calls, though he does not specify which, how many, or the type of "voice" used—without his consent and in violation of the TCPA's "Do-Not-Call" ("DNC") provisions. Merely regurgitating the legal elements of a claim without supporting facts, like Plaintiff did here, does not satisfy federal pleading standards and cannot avoid dismissal in this, or any, case. Therefore, Plaintiff's Complaint should be dismissed in its entirety for at least the following reasons:

__First__, Plaintiff's "prerecorded or artificial voice" claim under Section 227(b) of the TCPA in Count I should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to plead specific facts, beyond his bald conclusions, supporting a plausible inference that the at-issue calls were truly "prerecorded" or "artificial" as opposed to live. Courts have widely held that, to avoid dismissal of such a claim, a complaint must contain sufficient factual allegations regarding the "tenor, nature, or circumstances" of the call, beyond merely concluding it was "prerecorded" or "artificial." Here, Plaintiff does not allege any such facts and instead relies on bald conclusions, which is insufficient.[1]

__Second__, Plaintiff's DNC claims under Section 227(c) of the TCPA in Counts II and III should also be dismissed under Rule 12(b)(6) because, *inter alia*: (i) he does not allege any facts supporting an inference that he is a "residential telephone subscriber" within the meaning of the TCPA entitled

---

[1] A text message is not a "voice" call and does not result in liability. *See, e.g., Ybarra v. Dish Network, L.L.C.,* 807 F.3d 635, 640 (5th Cir. 2015) (To be liable under Section 227(b) of the TCPA, the "defendant must make a call and an artificial or prerecorded voice must actually play.").

1

to bring such claims; (ii) publicly-available evidence, in the form of Plaintiff's sworn deposition testimony from one of his many other TCPA cases (of which this Court may properly take judicial notice) reveals he cannot plausibly allege such facts in this case, as neither of the subject phone numbers qualify as his "residential" line; and (iii) his allegations regarding CHW's failure to have "internal" DNC policies are purely conclusory and ultimately do not support such a claim.

**Third**, Counts II and III should also be dismissed under Rule 12(b)(6) for the additional reason that Plaintiff lacks "prudential" standing to bring a TCPA DNC claim. Again, the TCPA's DNC provisions only cover "residential" subscribers. Because the subject numbers are plainly not "residential" numbers under the TCPA, Plaintiff is also not within the "zone of interests" that the TCPA's DNC provisions were designed to protect. Therefore, Plaintiff lacks "prudential" standing.

**Fourth**, in order to plead *any* TCPA claim under *any* provision and avoid dismissal under Rule 12(b)(6), all plaintiffs must allege specific, non-conclusory facts supporting the defendant's direct or vicarious liability. Here, Plaintiff fails to plead such facts supporting a plausible inference that CHW: (i) itself, and not some unidentified third party, took any steps necessary to "physically" place the calls or send the texts at issue, as required to plead direct TCPA liability; or (ii) had an agency relationship with (the touchstone of which is "control" over) any third parties who did call or text him, as required to plead vicarious TCPA liability. Federal courts routinely dismiss such deficient TCPA claims in their entirety at the pleadings stage under Rule 12(b)(6) on these bases alone. This Court should rule similarly and dismiss the entire Complaint on these grounds, as well.

**Finally**, while the Complaint should be dismissed for myriad reasons above, the class allegations within are also so facially improper and inadequate that the proposed classes are uncertifiable as pled. Federal courts routinely grant motions to strike such facially uncertifiable class allegations at the pleadings stage, and the Eighth Circuit recently reaffirmed that doing so is entirely

proper in appropriate cases. Accordingly, should the Court not dismiss the Complaint for any reason, it should nevertheless strike Plaintiff's deficient class and other allegations under Fed. R. Civ. P. 12(f) and/or 23 before the Court and the parties waste needless time on discovery relating to them.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim for Relief

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. Of course, a legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. Naked allegations without such factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). Moreover, while the Court must generally accept well-pled factual allegations as true under Rule 12(b)(6), conclusory allegations, unwarranted or unreasonable inferences, or legal conclusions masquerading as facts do not suffice, are not to be accepted as true, and will not prevent dismissal. *See, e.g., Cook v. ACS State & Local Sols., Inc.,* 663 F.3d 989, 992 (8th Cir. 2011); *Christiansen v. West Branch Community School Dist.,* 674 F.3d 927, 934 (8th Cir. 2012); *Rand-Heart of New York, Inc. v. Dolan*, 812 F.3d 1172, 1176 (8th Cir. 2016). Put simply, Plaintiff must allege ***specific facts*** supporting the essential elements of each claim to avoid dismissal here. *See, e.g., Lind v. Midland Funding, LLC*, 688 F.3d 402, 409 (8th Cir. 2012).

### B.   Fed. R. Civ. P. 12(f) and 23 – Striking Improper Class and Other Allegations

"Sometimes the issues are plain enough from the pleadings" to determine a case should not proceed as a class action and, thus, that a court may properly resolve class certification at the pleadings stage on a defendant's motion to strike before a motion to certify is filed. *Gen. Tel. Co. of*

3

the *Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Donelson v. Ameriprise Fin. Servs., Inc.,* 999 F.3d 1080, 1091–92 (8th Cir. 2021), *cert. denied,* 142 S. Ct. 2675 (2022). In fact, the Eighth Circuit recently reaffirmed that district courts may (and, indeed, ***should*** in appropriate cases) strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not certifiable under Rule 23 as pleaded. *Donelson*, 999 F.3d at 1092 (citing, *inter alia,* 5C Wright & Miller, FEDERAL PRAC. & PROC. § 1383 (3d ed.)).

## III.   ARGUMENT

### A.   The Complaint Should Be Dismissed In Its Entirety Under Rule 12(b)(6) Because Plaintiff Fails to State a Plausible Claim for Relief Under the TCPA.

In Count I of the Complaint (*see* ¶¶ 147-152), Plaintiff seeks relief under Section 227(b) of the TCPA and its related implementing regulations, which together *inter alia* provide that no person shall "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service … or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2). In Counts II and III (*see* ¶¶ 153-167), Plaintiff seeks relief under the TCPA's DNC provisions and related implementing regulations, which together *inter alia*: (a) prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry (*i.e.,* Count II); and (b) require any "person or entity making a call for telemarketing purposes" to "honor a residential subscriber's do-not-call request" made within a "reasonable time" and to have internal DNC policies and procedures in place meeting certain minimum standards (*i.e.,* Count III). 47 U.S.C. §§ 227(c)(5) & (d); 47 C.F.R. §§ 64.1200(c)(2) & (d). As shown below, however, the scant "facts" Plaintiff has alleged in support of these claims fail to satisfy federal pleadings standards for several reasons:

1.      **Plaintiff Fails to Allege Sufficient Facts Supporting His "Prerecorded Voice" Claim Under Section 227(b) of the TCPA (Count I).**

For starters, to avoid dismissal of Count I, Plaintiff "must include some factual allegations beyond 'the call had a prerecorded [or artificial] voice.'" *Smith v. Pro Custom Solar LLC*, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021). Along these lines, courts routinely dismiss TCPA claims under Rule 12(b)(6) that, like Plaintiff's, lack specific plausible facts "regarding the tenor, nature, or circumstances of the alleged calls" and that "merely proffer[] the content of the message and conclusory allege[] that Defendant utilized a pre-recorded message." *Manopla v. Sansone Jr.'s 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020). *See also Rahimian v. Rachel Adriano and Juan Martinez, Inc*., 2002 WL 798371, at * 2-3 (D. Nev. Mar. 16, 2022) (conclusory allegations the defendant "transmitted" calls "using a prerecorded voice" insufficient). While courts do not expect "technical specifications" about the delivery mechanism, they do uniformly require plaintiffs to plead sufficient supporting factual details from which a "prerecorded message" as opposed to a live human speaking can be inferred, not just naked conclusions. *Johansen v. Vivant, Inc*., 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012). Here, Plaintiff's Complaint lacks such contextual details.

Indeed, though Plaintiff concedes he received some "live" calls, he does not give the content of any "message" he purportedly received—let alone identify how many there were in total—or give any other specific non-conclusory facts from which this Court could infer that the messages were anything other than just all ***routine voicemails being left by a <u>live</u> person***. *See, e.g.,* Dkt. 2-1, ¶¶ 42, 49-53, 56-59, 66, 67, 69, 72, 73, 121. Instead, he continually conflates "artificial" calls with "prerecorded" calls (which are not synonymous terms and in fact are distinct legal concepts under the TCPA[2]) throughout the Complaint, while parroting the statutory text and case law in conclusory fashion and without factual support. *Id.*  Such bald allegations are insufficient to state a plausible

---

[2] *See* 47 U.S.C. §227(b)(1)(A)(iii) (prohibiting calls made using an "artificial <u>or</u> prerecorded voice").

Section 227(b) claim under federal pleadings standards, which dooms Count I to dismissal.

### 2. Plaintiff Fails to Plead Facts Supporting Essential Elements of His DNC Claims Under Section 227(c) of the TCPA (Counts II and III).

Plaintiff's attempted TCPA DNC claims in Counts II and III of the Complaint fare no better[3] and are likewise subject to dismissal under Rule 12(b)(6) in their entirety for several reasons:

**First**, with respect to Count II, TCPA's National DNC Registry provision and its related implementing regulations, on their face, apply only to "***residential*** telephone subscribers." *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (emphasis added). *See also Cunningham v. Politi,* 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL 2524737 (June 19, 2019) (dismissing under Rule 12(b)(6), noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). Likewise, as to Count III, courts that have recognized a private cause of action for purported violations of the "internal" DNC procedural requirements under Section 64.1200(d) of the TCPA's implementing regulations[4] have ruled similarly—*i.e.,* that those regulations only apply to "residential" phone numbers, not to all phone numbers. *See, e.g., Cunningham v. Rapid Capital Funding, LLC/RCF,* 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) (dismissing on this basis).

---

[3] Only one of the two subject phone numbers, supposedly ending in 4999, is alleged to be on the National DNC Registry. *See* Dkt. 2-1, ¶ 37. Therefore, <u>any</u> violative calls made to the <u>other</u> alleged number (purportedly ending in 1001) are <u>not</u> subject to Plaintiff's claim asserted in Count II, which asserts a purported violation of the National DNC Registry provisions of the TCPA. *See* 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)(i)(D) (requiring the phone number at issue to be registered on the Registry at the time of, and for at least 31 days prior to, an alleged violative call or text).

[4] Several courts have recognized that the TCPA's "internal" DNC regulations in 47 C.F.R. § 64.1200(d) were promulgated under the ***technical and procedural*** standards in Section ***227(d)*** of the TCPA (*i.e.,* not Section 227(c)), which ***does <u>not</u> give rise to a private cause of action***. *See, e.g., Worsham v. Travel Options, Inc*., 2016 WL 4592373, at *4, 7 (D. Md. Sept. 2, 2016), *aff'd,* 678 F.App'x 165 (4th Cir. 2017); *Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at *15 (W.D. Okla. July 16, 2019). *But see Hand v. Beach Entm't KC,* 456 F. Supp. 3d 1099, 1124-25 (W.D. Mo. 2020). Thus, it is not well-settled that such a cause of action even exists in the first place.

Moreover, federal courts have widely recognized that plaintiffs hoping to bring TCPA DNC claims must allege sufficient non-conclusory ***facts*** showing that the subject phone number (*i.e.*, the phone number at which the plaintiff received the alleged calls or text messages) is ***actually used*** for "residential" purposes, or face dismissal under Rule 12(b)(6). *See, e.g., Hicks v. Alarm.com,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020); *Smith v. Vision Solar LLC,* 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Cunningham v. Politi,* 2019 WL 2517085, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL 6198417 (Nov. 28, 2018); *Cunningham v. Rapid Capital Funding,* 2017 WL 3574451, at *3; *Cunningham v. Caribbean Cruise Lines,* 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016). *See also Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing, noting that the plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute"). Thus, mere conclusions will not suffice.  Courts have also held that whether someone qualifies as a "residential telephone subscriber" for a DNC claim generally depends on certain conditions, including that the subject phone number "is the ***primary means of reaching the individual at their residence***—that is, ***there is no other landline or phone at their residence*** which is instead the primary means of reaching them." *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added).

As applied here, Plaintiff merely concludes, in **<u>one</u>** barebones paragraph, that the subject numbers "are, and all times were, used primarily as residential and personal numbers." Dkt. 2-1, ¶ 95. These bald allegations are insufficient to state a TCPA DNC claim under the provisions Plaintiff invokes for several reasons. To begin, Plaintiff's conclusion that his numbers are "residential" is not a fact, merely parrots the language of the statute, and need not be accepted as true by this Court. *See Morgan*, 2018 WL 3580775, at *2. Further, alleging a phone number is used for "personal" calls

likewise fails to plausibly allege "residential" use for purposes of a DNC claim. *See, e.g., Hicks*, 2020 WL 9261758, at *5 (dismissing under Rule 12(b)(6) where plaintiff alleged his phone number was "not associated with a business and is for personal use"). Plaintiff also tellingly does <u>not</u> allege any facts suggesting that there is ***no landline or other phone at his residence*** that is the primary means of reaching him there. *See, e.g., Mantha,* 2022 WL 325722, at *6. Therefore, under the weight of authority above, Plaintiff has not plausibly alleged that he is a "residential telephone subscriber" under the TCPA and, as such, Counts II and III should be dismissed for this reason <u>alone</u>.

**<u>Second</u>**, that Plaintiff does not properly allege any actual facts suggesting that the subject numbers are actually used for "residential" purposes is not surprising. That is because he ***cannot***. Indeed, Plaintiff, who is a serial TCPA litigant, has provided sworn deposition testimony in other cases, which has been filed on the public CM/ECF docket, confirming that the phone numbers at issue in this case are <u>not</u> "residential" phone numbers within the meaning of the TCPA. In fact, Plaintiff testified that: (a) the subject numbers are not his only phone line, and he has a separate landline number at his residence; (b) they do not ring his residential landline phone and instead are always forwarded to his cellular phone number; (c) he does not use them to make any calls; and (d) he uses them primarily (if not exclusively) to receive calls from would-be TCPA defendants who have the misfortune of calling him. *See* Declaration of A. Paul Heeringa, filed herewith, at ¶¶ 3-5, Exhibit A attached thereto at pp. 31-33, 35, 42, 44, 60-62 and Exhibit B attached thereto at pp. 115-116. Because this judicially-noticeable evidence (which this Court may properly consider under Rule 12(b)(6) when ruling on this Motion[5]) confirms that the subject phone numbers in this case are not

---

[5] It is well accepted in this Circuit that district courts may look to and take judicial notice of matters of public record (including court filings and transcripts) when ruling on a Rule 12(b)(6) motion pursuant to Rule 201 of the Federal Rules of Evidence. *See Dowden, Tr. of Est. of Huchingson v. Cornerstone Nat'l Ins. Co.,* 2019 WL 11274868, at *2 (W.D. Ark. May 16, 2019); *Howard v. Goodwin,* 2018 WL 6613796, at *1, n.1 (W.D. Ark. Dec. 17, 2018).  CHW respectfully requests that this Court do so.

used as "residential" numbers within the meaning of the TCPA, Counts II and III must be dismissed.

**Third**, as to Count III in particular, courts recognizing such a cause of action have also held that the TCPA's "internal" DNC regulations do <u>not</u> prohibit "actually calling an individual after the individual has requested placement on a[n] [internal] do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009)). In other words, a violation of the internal DNC regulations <u>only</u> stems from "the initiation of the phone call without having [first] implemented the minimum procedures" and <u>not</u> when an internal DNC request is not honored or for any other reason (*e.g.,* training employees, having or providing a copy of a written internal DNC policy, maintaining the internal DNC list, etc.). *Charvat v. GVN Michigan, Inc.,* 561 F.3d at 632. In this regard, Plaintiff bases Count III primarily, if not entirely, on his allegations that he supposedly requested but did not receive a copy of CHW's internal policy. *See, e.g.,* Dkt. 2-1, ¶¶ 108-113. But that does not support an inference that no such policy ***existed*** or was not implemented prior to his receipt of the alleged calls and texts, and it is insufficient to plead a claim under the TCPA's "internal" DNC regulations standing alone, as the authorities above show. *Id*. Count III should be dismissed for this reason, too.

### 3.    Plaintiff Also Lacks "Prudential" Standing to Bring a DNC Claim.

For some of the same reasons above, the DNC claims in Counts II and III are subject to dismissal under Rule 12(b)(6) under the doctrine of "prudential" (a.k.a. "statutory") standing.

In contrast to Article III constitutional standing, prudential standing is not jurisdictional but rather concerns, among other things, whether the plaintiff is within the "zone of interests" that the law being invoked (*i.e.*, the TCPA's DNC provisions) was designed to protect. *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 126, 129-132 (2014). Where (as here) a plaintiff

9

lacks prudential standing, his complaint may be properly dismissed under Rule 12(b)(6) for failure to state a claim. *See, e.g., Scott v. St. Louis Univ. Hosp.,* 2022 WL 1211092, at *3–5 (E.D. Mo. Apr. 25, 2022)*. On this front, the TCPA's DNC provisions apply only to "residential telephone subscribers" as noted above. Because Plaintiff does not properly allege he uses the subject numbers for "residential" purposes—and cannot credibly do so given his contradictory sworn testimony as discussed above—he is clearly not within the "zone of interests" that the TCPA's DNC provisions were designed to protect. Therefore, Counts II and III should be dismissed on this additional basis.[6]

### 4.     Plaintiff Fails to Sufficiently Plead Direct TCPA Liability (All Counts).

Additionally, it is well established that, "[f]or a person to 'make' [or 'initiate'] a call under [*any* provision of] the TCPA [and thus be subject to liability], the person must either (1) *directly make* the call, or (2) have an *agency relationship* with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)) (emphasis added). *See also Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) ("There are two potential theories of liability under the TCPA: (1) direct liability; and (2) vicarious liability.") (citing *Thomas v. Taco Bell Corp*., 582 F.App'x 678, 679 (9th Cir. 2014)); *Sundermann v. Golden Circle Real Est. Grp., L.L.C.*, 2019 WL 7758601, at *2 (S.D. Iowa Oct. 29, 2019) (citing *Thomas* and *Abante Rooter*). As to the former theory, it is equally well accepted that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" telemarketing calls or texts, and that to "initiate" in this context means to "physically place" the calls or send the text messages at issue. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574, 6583 ¶ 26 (2013)).

---

[6] With Plaintiff's all of individual TCPA claims dismissed, the Court should also dismiss the class claims, as well. *See, e.g., Burks v. Arvest Bank,* 2006 WL 3512478, at *2 (E.D. Ark. Dec. 6, 2006).

This rule applies with equal force to claims brought under the TCPA's DNC provisions, as Plaintiff invokes here. *See, e.g., Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394-96 (D. Colo. 2014).

Consequently, federal courts have routinely dismissed conclusory direct TCPA liability claims that, like Plaintiff's here, lack sufficient factual allegations demonstrating that the defendant actually "initiated" the phone calls or texts at issue in the sense of "***tak[ing] the steps necessary to physically place***" a call or send a text message. *Sheski*, 2020 WL 2474421, at \*2-3 (quoting 28 FCC Rcd. at 6583 ¶ 26) (dismissing where plaintiff's allegations did not "lead to the inference that [defendant] sent or was directly involved in sending the text messages at issue") (emphasis added). *See also Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at \*3 (D.N.M. Sept. 28, 2018) (finding no direct liability where "there [were] no factual allegations that [d]efendant actually made the telephone call at issue," and holding that "[t]he mere conclusion that the [dialer] responsible for the call belonged to [d]efendant, without any factual allegations to support that conclusion, does not constitute a factual allegation that, if proven, would establish that [d]efendant 'made,' or 'physically placed' the call to [p]laintiff's cell phone"); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019) (dismissing CHW where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that [CHW] actually, physically initiated the telephone calls at issue" and where plaintiff merely concluded that the call originated from a number purportedly belonging to CHW without support).

In short, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call is not sufficient to allege a [direct] TCPA [liability] claim" and cannot survive dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at \*2 (E.D. Wash. Oct. 1, 2019). Put differently, for direct TCPA liability to attach here, Plaintiff must allege plausible facts, in accordance with federal pleadings standards, suggesting ***CHW <u>itself</u>—not some unidentified third party—<u>literally</u> picked***

**up the phone and physically called or texted him <u>directly</u>**. *See also Day v. Renny*, 2020 WL 13002519, at *6 (D. Neb. July 24, 2020) (dismissing where plaintiff "did not allege that [defendant] himself placed the calls at issue, and therefore he failed to state a cause of action for direct liability").[7]

As applied here, Plaintiff does <u>not</u> plausibly allege that CHW <u>itself</u> physically placed the calls or sent the text messages at issue, as is indisputably required to plead direct TCPA liability at the pleadings stage under the weight of applicable federal authority. Instead, and at best, Plaintiff vaguely alleges—or, rather, concludes without sufficient specific factual support—that he received calls and/or texts made "***by or on behalf of*** Defendant." Dkt. 2-1, ¶¶ 40-41 (emphasis added). *See also id*. ¶¶ 56, 132, 148, 149, 154 (alleging, *inter alia,* that "Defendant ***made, or had made on its behalf***, telephone calls and text messages" to Plaintiff and the putative class members) (emphasis added). Yet, Plaintiff also contradictorily alleges that some calls originated from a ***different entity*** called "Complete Home Services" (and not CHW), and does not allege any facts supporting his bald conclusion that the at-issue calls or texts originated "from Defendant's number." *Id*. ¶ 58. Indeed, he does not allege, for example, any facts suggesting that CHW owns the phone numbers purportedly used to call him, CHW appeared on his caller ID, or he called any of those numbers back and reached CHW—all of which *might* support a direct liability claim. *See, e.g., Aaronson*, 2019 WL 8953349, at *2 (dismissing where the complaint did not contain "any facts to explain why plaintiff believes the identified phone number is owned by" CHW); *Smith v. Direct Building Supplies, LLC,* 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where the complaint lacked similar specific

---

[7] While various provisions of the TCPA use the terms "make" or "initiate" fairly interchangeably, courts dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and many others) under Rule 12(b)(6) have <u>uniformly</u> held that "make" or "initiate" in this context means to "physically" make the calls or send the texts at issue. *See, e.g., Smith v. Vision Solar LLC,* 2020 WL 5632653, at *3; *Hicks,* 2020 WL 9261758, at *4-5; *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018). Further, text messages are generally considered "calls" under the TCPA. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 952 (9th Cir. 2009).

factual allegations about the phone numbers and callers at issue) (citing, *inter alia*, *Aaronson*).[8]

In other words, what Plaintiff really alleges, at bottom, is that **_either_** CHW **_or_** countless unidentified third parties are possibly at fault, which federal courts have found to be "woefully insufficient to state a claim of **_any sort_**." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). *See also Bank v. Philips Elecs. N. Am. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (alleging that the at-issue calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" was deemed "too conclusory to state a plausible claim" for direct TCPA liability). And not only do they fail to state a plausible direct TCPA liability claim, as the many directly on-point authorities cited above show, but also such obviously "[c]ontradictory allegations … are [also] inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal under Rule 12(b)(6), either. *Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015).[9]

Further, courts have also recognized that merely **_transferring_** an initial call to a defendant— which is what Plaintiff suggests occurred here, at most (*see, e.g.,* Dkt. 2-1, ¶¶ 57-58, 66-67, 69)— does not support an inference that the defendant itself physically placed the **_initial_** call and, thus, does not suffice for direct TCPA liability purposes. *See, e.g., Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021); *Childress* 2018 WL 4684209, at *4. That is because

---

[8] At best, Plaintiff asserts that "at no point did Plaintiff receive a call from 'Complete Home Services' that connected him to any company *other* than Defendant" and concludes that this "would only make sense if Defendant was the caller (rather than a third-party lead generator)." Dkt. 2-1 ¶ 68 (emphasis original). But it utterly defies logic to assume, and would be patently unreasonable to infer, that CHW would use a <u>different</u> name to physically place calls on its <u>own</u> behalf, rather than use its own name. *See also Brown v. Medtronic, Inc.,* 628 F.3d 451, 461 (8th Cir. 2010) (holding that courts are not required to draw "unreasonable inferences" in a plaintiff's favor under Rule 12(b)(6)).

[9] *See also Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 872, n.8 (S.D. Tex. 2020) ("'Where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.'") (quoting *Carson Optical Inc. v. eBay Inc.,* 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016)); *Acre v. Spindletop Oil & Gas Co.,* 2009 WL 4016116, at *7 (E.D. Ark. Nov. 18, 2009) (similarly holding that internally inconsistent allegations in the complaint supported its dismissal).

receiving a call transfer from someone else is not the equivalent of physically making a call.[10]

Moreover, despite what Plaintiff suggests, even a call or text message allegedly offering the defendant's products, identifying the defendant by name, and/or made by a caller allegedly connected to or associated with the defendant in some fashion (*see, e.g.*, Dkt. 2-1, ¶ 69) is not enough to plausibly allege direct TCPA liability standing alone, either. *See, e.g., Abante Rooter,* 2018 WL 288055, at *4 (allegations the plaintiff received a call from someone purportedly calling on behalf of the defendant and who identified defendant by name insufficient for direct liability); *Meeks*, 2018 WL 1524067, at *3–5 (dismissing on this basis, even though the alleged texts identified the defendant and contained a link to its website); *Hicks,* 2020 WL 9261758, at *5 (alleging that the caller provided defendant's number for call back purposes was not enough to plead direct TCPA liability, standing alone); *Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *3 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (allegations the defendant "placed, or directed to be placed," the at-issue prerecorded call and the plaintiff subsequently received an email from the defendant 30 minutes after the call were deemed insufficient for direct TCPA liability).  In short, even a call or voicemail purportedly "from" CHW (*see* Dkt. 2-1 ¶¶ 49-55) is of no moment and does not confer direct TCPA liability, without more. *See, e.g., Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6-10 (E.D. Va. Nov. 12, 2020) (allegations that the caller expressly stated he/she was "associated with" CHW and identified CHW by name were insufficient for direct <u>or</u> vicarious TCPA liability, and holding that "this statement does not foreclose the possibility that a third party" made the call and "[t]hat lone link to the defendant is insufficient under the *Iqbal* pleading standards").

In all, given the dearth of non-conclusory facts alleged supporting an inference that CHW

---

[10] This distinction is of critical importance here and bears repeating. Someone who **receives** a transferred call is <u>not</u> who physically made the initial call for direct TCPA liability; rather, the person or entity who transferred the call is who physically made it, as the courts in *Childress* and *Landy* found.

itself physically placed the at-issue calls/texts, coupled with the contradictory and inherently implausible allegations, Plaintiff's Complaint should be dismissed on direct TCPA liability grounds.

### 5.  Plaintiff Fails to Plead Vicarious TCPA Liability (All Counts).

To the extent Plaintiff also asserts that CHW is vicariously liable under the TCPA for calls and texts made by some third party acting on its "behalf," his claims still do not survive dismissal.

Indeed, vicarious liability cannot be casually pled, and courts uniformly require pleading sufficient facts before a defendant can be hauled into court for the alleged unlawful acts of a third party. Rather, adequately alleging vicarious liability in any case requires specific non-conclusory facts demonstrating a consensual relationship between a principal and an agent, and the principal's control over that agent. *See, e.g.,* Restatement (3d) of Agency § 1.01, cmt. c ("[T]he concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."). Specifically, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017) (quoting *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100, 1105 (9th Cir. 2017) (citing Restatement, § 1.01)). *Accord Sundermann,* 2019 WL 7758601, at *2 (citing, *inter alia*, Restatement, § 1.01). This requires "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). "Though 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks,* 2018 WL 1524067, at *5 (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp.

15

3d 1292, 1301 (D. Nev. 2014)). In short, "[t]he existence of *some* connections between the defendant and the maker of the call will not suffice" to plausibly allege vicarious TCPA liability or to avoid dismissal on this basis. *Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *3 (emphasis in original).

Further, in the TCPA context, courts have widely recognized that vicarious liability cannot attach without the "essential ingredient" of control over the caller and, more specifically, over its call campaign. *See, e.g., Jones v. Royal Admin. Svcs., Inc.,* 887 F.3d 443, 450 (9th Cir. 2018). *See also In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520 (N.D.W.Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("[I]n order to prove actual agency [for vicarious TCPA liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted."); *Sundermann,* 2019 WL 7758601, at *3 (citing *Jones* with approval). In short, to avoid dismissal on this basis, plaintiffs "must allege *some* facts regarding the relationship between an alleged principal and agent" showing the defendant had the right to control the calls in order to plead vicarious liability and "cannot simply allege general control in a vacuum." *Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015) (ruling similarly) (emphasis in original). *See also Aaronson*, 2019 WL 8953349, at *3 (citing *Melito*).

Thus, not only do courts routinely dismiss conclusory TCPA claims premised on vicarious liability at the pleading stage, but also the vast majority have held that failure to allege facts establishing agency is <u>fatal</u> to such claims. *See*, *e.g.*, *Sundermann,* 2019 WL 7758601, at *3 (dismissing TCPA case where plaintiff did not plead facts supporting agency theory); *Bank v. Vivint Solar, Inc.,* 2019 WL 1306064, at *4 (E.D.N.Y. Mar. 22, 2019) (dismissing where complaint lacked "allegations that [defendant] had the power to give 'interim instructions' to [the purported agent], or any non-conclusory suggestion of 'direction' or 'control' by [the defendant] of [the purported

agent]") (citation omitted); *Sheski*, 2020 WL 2474421, at *4 (dismissing where "[t]here [we]re no factual allegations that support any sort [of] agency relationship outside of Plaintiff's conclusory statement that 'Defendants and their agents transmit text messages'"). Such is true in this case.

Here, Plaintiff does not—and indeed cannot—allege the essential ingredient of control and, therefore, has failed to plead a plausible vicarious TCPA liability claim. Again, the Complaint includes only vague references to third parties supposedly making calls on "behalf" of CHW. But it does <u>not</u> allege, for example, with any supporting facts that: (1) CHW had any relationship with any third party that initiated the calls/texts; (2) CHW exerted control over that third party or had the power to give interim instructions; (3) CHW supervised or controlled the calls/texts, let alone the overall call campaign, in any manner; (4) the third party was operating as part of CHW's business; (5) CHW had supplied that third party with tools and instrumentalities to send the texts or make the calls; or (6) CHW and that third party maintained a long-term or permanent working relationship. *See*, *e.g.*, *Jones*, 887 F.3d at 450 (analyzing these and other factors in holding that seller was not vicariously liability for telemarketer's alleged TCPA violations). *See also Monitronics*, 223 F. Supp. 3d at 520 (discussing similar factors). Consequently, to the extent Plaintiff seeks to hold CHW vicariously liable under the TCPA, his Complaint falls far short of satisfying federal pleading requirements, and thus it should be dismissed for this reason, as well. *See Sundermann, supra*.

In sum, because Plaintiff does not properly that CHW "physically" sent the texts or placed the calls at issue, or that some third party agent over whom CHW had "control" did, this Court should dismiss Plaintiff's Complaint in its <u>entirety</u> under Rule 12(b)(6) on these bases, as well.[11] *See, e.g.*,

---

[11] In response to this Motion, Plaintiff may cite *Adam v. CHW Grp., Inc.,* 2021 WL 7285905 (N.D. Iowa Sept. 9, 2021), where a district court in this Circuit denied CHW's motion to dismiss on direct and vicarious liability grounds. However, that decision stands in stark contrast to the vast majority of case law on those fronts (including *Aaronson* and *Scruggs*, *supra*, which were ***decided in CHW's favor on those bases***, and many others) and, respectfully, was wrongly-decided in several respects.

*Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (dismissing, and ruling that "*[b]ecause [caller] identity is a necessary element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims*") (emphasis added).

**B.**     <u>Alternatively, Plaintiff's Facially Uncertifiable Class Definitions and Other Improper Allegations Should Be Stricken Under Fed. R. Civ. P. 12(f) and/or 23.</u>

Should the Court decide not to dismiss the Complaint, it should still strike Plaintiff's facially-uncertifiable class allegations. Courts in this Circuit and elsewhere routinely find proposed classes to be uncertifiable and strike them at the pleadings stage, particularly in TCPA cases like this one, where *inter alia*: (i) the proposed class definitions are impermissibly "fail-safe" or overbroad; and/or (ii) common questions of law or fact do not predominate and thus individualized determinations would be required. *See, e.g., Lindsay Transmission, LLC v. Office Depot, Inc.,* 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (striking proposed TCPA class as "fail-safe" at the pleadings stage); *Sauter v. CVS Pharmacy, Inc*., 2014 WL 1814076, at *2-9 (S.D. Ohio May 7, 2014) (same); *Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 4426908, at *2-3 (N.D. Cal. Aug. 22, 2016) (same); *Pepka v. Kohl's Dep't Stores, Inc.,* 2016 WL 8919460, at *1-5 (C.D. Cal. Dec. 21, 2016) (striking TCPA class allegations which "necessarily involve[d] individualized inquiries" and for being "impermissibl[y] fail-safe"); *Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at *7-11 (W.D. Ky. Sept. 29, 2017) (striking proposed TCPA "revocation" class in part because individualized consent determinations would be needed and as being redundant); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.,* 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018) (striking proposed TCPA class as overbroad where it included members who no viable claim). As shown below, Plaintiff's facially-deficient proposed classes (*see* Dkt. 2-1, ¶ 132) fit neatly into all of these categories.

**1.**     **Plaintiff's Proposed Classes Are Impermissibly "Fail-Safe."**

For starters, it is readily apparent that Plaintiff's proposed classes are all impermissibly "fail-

safe." A proposed class definition is impermissibly fail-safe in violation of Rule 23 where, as here, the Court must make a determination on the merits of the class members' individual claims to determine membership. *E.g., Sauter,* 2014 WL 1814076, at *4; *Lindsay*, 2013 WL 275568, at *4. Such a proposed class definition constitutes an "independent ground for denying class certification" because it "shields the putative class members from receiving an adverse judgment" and "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir. 2011). *Accord Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (ruling similarly).

Thus, federal courts routinely strike improper proposed class definitions at the pleadings stage in TCPA cases on this basis. *See, e.g., Sauter,* 2014 WL 1814076, at *8-9 (striking proposed class "defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS"); *Pepka*, 2016 WL 8919460, at *4 (granting motion to strike Section 227(b) class allegations case on fail-safe grounds); *Dixon*, 2016 WL 4426908, at *2-3 (same); *Lindsay Transmission, LLC,* 2013 WL 275568, at *4 (same); *Boyer v. Diversified Consultants, Inc.,* 306 F.R.D. 536, 540 (E.D. Mich. 2015) (holding that TCPA class composed of people who did not provide "prior express consent" to be contacted was an improper fail-safe class); *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623-26 (E.D. Pa. 2015) (striking proposed TCPA class definition with "consent" in the definition); *Martinez v. TD Bank USA*, 2017 WL 2829601, at *12 (D.N.J. June 30, 2017) (same); *Bryant v. King's Creek Plantation, L.L.C.*, 2020 WL 6876292, at *3–4 (E.D. Va. June 22, 2020) (striking proposed DNC class on fail-safe grounds, noting "[w]hen plaintiffs define a class that explicitly includes the lack of members' consent to receive the calls, a court is unable to establish member-ship of the class until the merits of each member's TCPA claim (i.e., that each member did not give consent) are

determined; such a class must be deemed a fail-safe class."). This Court should rule similarly.

As applied here, all of Plaintiff's proposed classes (*see* Dkt. 2-1, ¶ 132) are impermissibly fail-safe because membership in each depends on the merits of the putative class members' underlying claims. For example, each proposed class is defined to include all persons in the United States who received a call or text (1) regarding CHW's "goods, products, or services" (*i.e.*, whether they constituted an "advertisement" or "telemarketing" for purposes of a Section 227(b) claim[12] or were a "telephone solicitation" or for "telemarketing purposes" for purposes of a Section 227(c) claim[13] as defined by the TCPA); and (2) that was placed either by CHW or "on its behalf" (*i.e.,* by an "agent," for vicarious liability purposes). Further, as their titles suggest, Plaintiff's proposed "No Consent Class" and "Wrong Number/No Consent Class" would include only persons who did not provide their "consent" (specifically, "prior express written consent") under the TCPA to receive "artificial or prerecorded voice" calls.[14] And Plaintiff's "DNC Class" is limited only to persons whose numbers were "on the National Do-Not-Call Registry at the time of the [alleged] messages" or calls (*i.e.*, whether they are a "residential telephone subscriber" who "registered his or her [own] telephone number" on the National DNC Registry, as proscribed).[15] In all, each of these issues is undoubtedly a merits-based inquiry going directly to the heart of the underlying TCPA claims in this case, as demonstrated above; and there is no objective way for the Court to determine who is a class member given Plaintiff's proposed definitions as pleaded. Therefore, all of Plaintiff's proposed

---

[12] *See* 47 C.F.R. §§ 64.1200(a)(2), (f)(1) & (f)(13).

[13] *See* 47 C.F.R. §§ 64.1200(c)(2), (d), (f)(13) & (f)(15).

[14] *See* 47 C.F.R. §§ 64.1200(a)(2) & (f)(9).

[15] *See* 47 C.F.R. § 64.1200(c)(2). *See also Rombough v. Robert D. Smith Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022) (thoroughly analyzing Section 227(c), dismissing **with prejudice** under Rule 12(b)(6), and holding that this provision "does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry" and that this "plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else").

classes are impermissibly "fail-safe" and, as such, they should be stricken on this basis alone.

### 2. Common Questions of Law and Fact Do Not Predominate Plaintiff's Proposed Classes, and Individualized Determinations Would Be Needed.

Plaintiff's proposed classes would require the Court to make individualized determinations on the issue of consent, among others, which makes them impermissibly fail-safe as discussed above. However, this also shows that common questions of law and fact would <u>not</u> predominate, as required by Rule 23(b)(3). Under that rule, "common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 470 (N.D. Cal. 2014) (quoting *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (*abrogated on other grounds by Microsoft v. Baker*, 137 S. Ct. 1702 (2017))). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (a common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). Predominance is lacking where the issues raised are "unique to each class member" and not subject to generalized proof. *In re Teflon Prod. Liab. Litig.*, 254 F.R.D. 354, 369 (S.D. Iowa 2008) (citing *Johnson v. GMAC Mortg. Group, Inc.*, 2006 WL 2433474, at *2 (N.D. Iowa Aug. 21, 2006)).

Along those lines, courts often deny class certification in TCPA cases on predominance grounds where (as here) individualized determinations of "consent" or "revocation" of consent (among other issues) would be needed. *E.g., Ung v. Universal Accept. Corp.*, 319 F.R.D. 537, 540–41 (D. Minn. 2017); *Sandusky Wellness Ctr., LLC v. ASD Spec. Healthcare, Inc.,* 863 F.3d 460, 468 (6th Cir. 2017); *Visser v. Caribbean Cruise Line, Inc*., 2020 WL 415845, at *5 (W.D. Mich. Jan. 27, 2020); *Saulsberry v. Meridian Fin. Servs., Inc*., 2016 WL 3456939, at *11 (C.D. Cal. Apr. 14, 2016); *Revitch v. Citibank*, 2019 WL 1903247, at *4 (N.D. Cal. Apr. 28, 2019); *see also Trenz v. On-Line Admins., Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying, noting "[t]he

necessity of individual inquiries is a ***clear bar*** to class certification in TCPA matters") (collecting cases, emphasis added). Courts also often strike class allegations or grant deny certification at the pleadings stage, in TCPA cases and others, where individualized determinations of "consent" are needed. *E.g., Eldridge*, 2017 WL 4364205, at \*7–11; *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at \*4 (N.D. Ill. Feb. 1, 2017); *Pepka*, 2016 WL 8919460, at \*4; *Lindsay*, 2013 WL 275568, at \*5; *Dorfman v. Albertson's LLC*, 2020 WL 86192, at \*5 (D. Idaho Jan. 7, 2020). Indeed, "the predominant issue of fact [in TCPA class actions] is undoubtedly one of ***individual*** consent." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (emphasis in original).

Here, it is apparent from the face of the Complaint that common questions of law and fact do not predominate and that individualized inquiries would be required. In this regard, as noted above, Plaintiff's two proposed "prerecorded voice" classes (*i.e.*, "No Consent Class" and "Wrong Number/No Consent Class") would include only persons who did <u>not</u> provide their "consent" under the TCPA. Similarly, to qualify as a "telephone solicitation" as required for a DNC violation, and thus be a member of either of Plaintiff's two proposed DNC classes (*i.e.*, "DNC Class" and "Policy Class"), the recipient must <u>not</u> have provided their "prior express invitation or permission" (*i.e.,* their consent) to the caller, among other things. *See* 47 U.S.C. §227(c)(5), 47 C.F.R. §§ 64.1200(c)(2)(ii) & (f)(15). Yet, as discussed above (*see* pp. 10-18), Plaintiff has also suggested that countless unidentified third parties could have been involved in initiating the alleged calls and texts to Plaintiff and the putative class members "on behalf" of CHW. Assuming *arguendo* that Plaintiff is correct, how these many different parties may have ***obtained*** "consent" or "invitation" or "permission" may vary widely, as would how the putative class members may have ***provided*** their "consent" to those different third parties or even the same party. The context and circumstances under which consumers might ***revoke*** "consent" to the same entity or different entities, or whether their revocation was

"clear" and "unambiguous" enough to be legally effective as a matter of law,[16] can naturally vary by individual and entity, too. The same would be true as to whether the class members have a "residential" number for the two DNC classes—indeed, Plaintiff's prior testimony in other cases (*see* pp. 8-9, *supra*) shows how the uses of a phone number can vary <u>substantially</u> by individual.

     In short, whether any calls or texts in this case were initiated without the consent of the Plaintiff and the putative class members, or whether they were made to a "residential" number, are not common questions of law or fact that can be resolved by generalized proof across the entire class in a single adjudication. Rather, they would necessitate countless individualized factual and legal inquires on those undoubtedly critical case-dispositive issues at the minimum, among many other key issues.[17] Therefore, all of Plaintiff's proposed classes should be stricken on this additional basis, as it is readily apparent from the face of the Complaint that he cannot meet Rule 23(b)(3). And because individualized determinations will undoubtedly be required on some or all of these critical issues no matter what amendments Plaintiff could conceivably make, leave to amend should not be granted. *See, e.g., Barrett v. ADT Corp.,* 2016 WL 865672, at *5 (S.D. Ohio Mar. 7, 2016).

### 3.    Plaintiff's "DNC" and "Policy" Classes Are Impermissibly Overbroad.

     A proposed class definition is impermissibly overbroad where the class would include members to whom the defendant would not be legally liable. *See* 7A Wright & Miller, FEDERAL PRAC. & PROC. § 1760 (3d ed. 2005). Courts commonly strike proposed TCPA class definitions on this basis. *See, e.g., A Custom Heating,* 2018 WL 488257, at *4 (striking proposed class definition as impermissibly overbroad where members had no claim); *Maldonado v. HSBC Mortg. Sys., Inc.,* 2017 WL 3496460, at *4 (D. Nev. Aug. 15, 2017) (ruling similarly). Such is true here.

---

[16] *See, e.g., Barnett v. Bank of Am., N.A.,* 2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021) (discussing standards for properly revoking consent under the TCPA).

[17] *Lindsay,* 2013 WL 275568, at *5 (a "prior business relationship" is an individualized issue).

On this front, Plaintiff's proposed "DNC Class" includes persons whose "residential *or cellular* telephone number" had been "on the National Do-Not-Call Registry at the time" of the alleged calls or texts. As discussed above, however, an alleged National DNC Registry violation under Section 227(c) requires a "***residential telephone subscriber who has registered his or her [own]*** telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). Thus, this proposed definition is impermissibly overbroad because, on its face, it would ostensibly include people who do <u>not</u> use their "cellular" numbers for "residential" purposes and/or whose numbers were registered by someone else. The same would be true for the proposed "Policy Class," which would ostensibly include those same persons, plus persons who received calls or texts "regarding Defendant's goods, products or services" <u>generally</u> that do not qualify as a "telephone solicitation" as required for a Section 227(c) claim. And neither proposed DNC class <u>excludes</u> persons who either provided their "prior express invitation or permission" or have an "established business relationship" with CHW, which would also not be a "telephone solicitation." *See* 47 C.F.R. § 64.1200(c)(2), (f)(5) & (15). Such persons cannot bring a DNC claim as a matter of law. Thus, Plaintiff's DNC classes are also impermissibly overbroad and therefore should be stricken for this reason, as well.[18]

### 4.     The Complaint Contains "Superfluous Historical" Allegations.

Lastly, courts have also recognized that "'[s]uperfluous historical allegations are a proper subject of a motion to strike.'" *Hicks,* 2020 WL 9261758, at *5 (granting motion, quoting *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, at *5 (S.D. Cal. Jul. 27, 2007)). *See also Gallegos v. Roman Catholic Archbishop of San Francisco*, 2016 WL 3162203, at *5 (N.D. Cal. June 7, 2016)

---

[18] With all of Plaintiff's proposed class definitions appropriately stricken for the myriad reasons above, all of his remaining class-related allegations in the Complaint (*see, e.g.,* Dkt. 2-1 ¶¶ 133-146) are redundant, immaterial and impertinent, and thus should also be stricken as well. *See, e.g., Blount v. D. Canale Beverages, Inc.*, 2003 WL 22890339, at *8 (W.D. Tenn. July 23, 2003) (striking factual allegations under Rule 12(f) as "immaterial" after dismissal of underlying claims).

(striking irrelevant references "involving a different plaintiff, and different underlying events"). The same is true for allegation about unauthenticated and unadjudicated complaints in other cases, third party opinions about the legality of the conduct in a case, or anonymous internet commentary. *See, e.g., In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.,* 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013); *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011); *Survivor Prods. LLC v. Fox Broad. Co.,* 2001 WL 35829267, at *3–4 (C.D. Cal. June 12, 2001); *McReynolds v. Lowe's Cos. Inc.,* 2008 WL 5234047, at *7 (D. Idaho Dec. 12, 2008); *Wiseberg v. Toyota Motor Corp.,* 2012 WL 1108542, at *13 (D.N.J. Mar. 30, 2012).[19]

Here, Plaintiff attempts to interject such immaterial, impertinent, and unduly prejudicial allegations that have nothing to do with ***his*** claims against CHW in ***this*** case. *See, e.g.,* Dkt. 2-1, ¶¶ 115-118 (referring to anonymous posts on third-party websites and unadjudicated claims against CHW). Should any part of the Complaint somehow survive dismissal, therefore, the Court should also strike those improper "superfluous historical" allegations under Rule 12(f). *See Hicks*, *supra*.

## IV.    <u>CONCLUSION</u>

For all the reasons above, this Court should enter an order granting this Motion and dismissing Plaintiff's Complaint in its entirety[20] or, in the alternative, striking Plaintiff's improper class and other allegations identified above, along with granting CHW all other just and proper relief.

---

[19] Indeed, courts have often opined on the utter lack of efficacy of internet commentary. *See, e.g.*, *In re Easysaver Rewards Litig.,* 737 F. Supp. 2d 1159, 1168 (S.D. Cal. 2010); *Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.,* 2013 WL 1196948, at *13 (W.D. Wash. Mar. 25, 2013).

[20] A Rule 12(b)(6) dismissal is presumed to be a judgment on the merits <u>with prejudice</u>. *See, e.g.*, *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012).

Dated: December 2, 2022                    Respectfully submitted,


                                           By:  /s/ A. Paul Heeringa
                                           A. Paul Heeringa, Admitted *Pro Hac Vice*
                                           **MANATT, PHELPS & PHILLIPS, LLP**
                                           151 North Franklin Street, Ste. 2600
                                           Chicago, IL 60606
                                           (312) 529-6308 - Telephone
                                           (312) 529-6315 - Facsimile
                                           pheeringa@manatt.com

                                           Emily A. Neal, Ark. Bar No. 2003087
                                           Conner Eldridge, Ark. Bar No. 2003155
                                           **ELDRIDGE BROOKS, PLLC**
                                           5100 West JB Hunt Drive, Ste. 840
                                           Rogers, AR 72758
                                           4795537678 - Telephone
                                           4795537553 - Facsimile
                                           emily@eldridgebrooks.com
                                           conner@eldridgebrooks.com

                                           *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on December 2, 2022, which served same electronically upon all counsel of record.


<u>/s/ A. Paul Heeringa</u>