## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **SAM KATZ**, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> **CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY,** <br><br> Defendant. | **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **Case No. 5:22-cv-05198-PKH** |

## <u>INTRODUCTION</u>

1.     This action arises out of Defendant, CHW Group, Inc.'s ("Defendant"), practice of placing prerecorded voice telemarketing calls to individuals, including Plaintiff, without prior express written consent, without the policies and procedures required to be implemented prior to making telemarketing calls, and to telephone numbers on the National Do-Not-Call Registry— violations of three separate provisions of the TCPA, 47 U.S.C. § 227, *et seq.*

2.     Rather than a one-off situation, this appears to be part and parcel of Defendant's business model.

3.     Defendant has faced nearly 40 lawsuits about its telemarketing practices since 2017 and there also exist a number of public complaints about the same.

4.     According to those complaints, Defendant's response to do-not-call requests ranges from ignoring them, to hanging up when the request is made, to rude comments, to *attempting to solicit payment for placement on the do-not-call list*, as was the case in this BBB complaint (left September 3, 2020):

> On one call I spoke with a rep and told them to stop calling (9/2)… On the most recent call (9/3), after I told them to stop calling, the rep told me the way to get off the phone list was to sign up for their service…

1

5.      Accordingly, Plaintiff brings this TCPA action on behalf of himself and classes of similarly situated individuals under 47 U.S.C. §§ 227(b) and 227(c).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.[1]

7.      This Court has jurisdiction over Defendant because Defendant conducts significant business transactions in this District and has committed tortious acts in this District.

8.      Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District, and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

9.      Plaintiff Katz is a citizen and resident of Gentry, Arkansas.

10.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11.     Defendant is, and at all times mentioned herein was, a New Jersey corporation with its principal place of business at 1090 King Georges Post Road, Edison, New Jersey 08837.

12.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## THE TCPA

13.     The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in

---

[1] Plaintiff does not intend to waive any arguments made in his Motion to Remand. [Dkt. 17.] Plaintiff intends only to conform to federal pleading requirements and to preserve all claims raised in the original complaint.

unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

14.    Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

15.    First, Section 227(b) of the TCPA prohibits initiating a telemarketing call using an automatic telephone dialing system or prerecorded voice without the prior express written consent of the called party.

16.    "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9).

17.    This written agreement must <u>clearly and conspicuously</u> disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(9)(i)(A-B).

18.    Consent can also be revoked, and most calls using an autodialer or pre-recorded voice, even if not telemarketing, violate the § 227(b) if made after such a revocation.

19.    A violation of § 227(b) carries statutory damages of $500 to $1,500 per call.

20.    Second, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

21.    These regulations are codified at 47 CFR 64.1200(c)(1-2).

22.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call

3

registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

23.    A violation of 47 C.F.R. § 64.1200(c) carries additional statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

24.    Third, the TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

25.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

26.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

27.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

28.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

29.    These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

30.    Specifically, these regulations require a company to keep a written policy,

4

available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

31.     These policies and procedures prohibit a company from making calls for telemarketing purposes[2] unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

32.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

33.     There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

34.     These requirements are separate but cumulative. In other words, a company must

---

[2] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

35.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

## PLAINTIFF KATZ FACTUAL ALLEGATIONS

36.     Plaintiff Katz is the sole and primary user of telephone numbers ending in 1001 and 4999.

37.     Plaintiff Katz telephone number in 4999 has been on the National Do-Not-Call Registry since December 09, 2017.

38.     Plaintiff Katz placed his telephone number ending in 4999 on the National Do-Not-Call Registry at that time.

39.     Plaintiff Katz's telephone number ending in 1001 is a residential telephone subscriber, as that term is defined at 47 C.F.R. § 64.2305(c), as his telephone number is subscribed to him personally rather than a business and is on a plan intended for individuals rather than businesses.

40.     Plaintiff Katz's telephone number ending in 4999 is a residential telephone subscriber, as that term is defined at 47 C.F.R. § 64.2305(c), as his telephone number is subscribed to him personally rather than a business and is on a plan intended for individuals rather than businesses.

41.     Plaintiff Katz has limited minute plans for each of those numbers and each call received depletes his minutes.

42.     Specifically, Plaintiff Katz's telephone numbers at issue are Number Barn telephone numbers.

43.     Each telephone number has 300 minutes.

44.     As Number Barn's FAQ explains, "[w]ith call forwarding, there is no handoff of the call once we connect it to your forwarding number. We maintain control of the call for its duration so any minutes used are subtracted from your plan's minutes." https://www.numberbarn.com/faqs

45.     In other words, each call made to the 1001 and 4999 numbers depletes Plaintiff Katz's minutes on those phone numbers,[3] making each call one for which Plaintiff is charged under 47 U.S.C. 227(b)(1)(A)(iii).

46.     Plaintiff Katz has never requested information on any of Defendant's forms or otherwise provided any form of consent for Defendant to call either of his numbers.

47.     From February 21, 2020 through August 27, 2020, Plaintiff Katz received at least 48 telephone calls made by or on behalf of Defendant on his telephone number 1001.

48.     Beginning on August 20, 2021, Plaintiff Katz received at least 12 calls by or on behalf of Defendant on his telephone number ending in 4999.

49.     Many of these calls were pre-recorded or artificial voice calls.

50.     The purpose of each of Defendant's calls was to encourage him or solicit him to purchase Defendant's home "warranty" services.

51.     The calls to Plaintiff's 4999 number asked for or identified him as "Jose", and the

---

[3] This is not the same as a TCPA lawsuit involving calls to a non-cell phone number, which then forwards to a cell phone number, and a lawsuit is brought based on calls to that cell phone number. Courts in those circumstances have generally found that such a forward does not qualify as a call made to a cellular telephone service. Here, the calls were made to two numbers that *themselves* are linked to limited minutes plans, and each call to those numbers necessarily depletes the minutes associated with the plans for those numbers, regardless of where those calls are ultimately forwarded.

calls to Plaintiff's 1001 number asked for or identified him as "James."

52.     Plaintiff has never been known by either name and did not provide such names to Defendant prior to any calls from Defendant.

## **IDENTIFICATION OF DEFENDANT AS THE CALLER**

53.     Plaintiff was able to identify the calls as coming from Defendant through several means.

54.     Defendant identified itself by name on several of the calls to Plaintiff.

55.     For example, on March 16, 2020, Plaintiff received a prerecorded message from Defendant's telephone number 973-969-3508 which stated, in part, "This call is being placed on behalf of Choice Home Warranty for telemarketing purposes…"

56.     Plaintiff received six total calls from the 3508 number to his 1001 number, several of which were live and also identified the call as coming from Choice Home Warranty.

57.     On August 27, 2021 Plaintiff received a live voicemail message from Defendant's telephone number 305-902-1257 to his telephone number ending in 4999 stating, in part, "This is Richard Kelly from Choice Home Warranty…"

58.     On an August 30, 2021, Plaintiff received prerecorded call from this same number to Plaintiff's telephone number ending in 4999, Defendant's message stated, in part, "Hey, this is Jen with Choice Home Warranty…"

59.     This 1257 number called Plaintiff's 4999 number a total of four times: August 27, 2021 (live), August 30 (twice, both prerecorded), and August 31 (prerecorded).

60.     On August 25 and 26, 2021, Plaintiff received four prerecorded calls from telephone number 909-830-1028 to his 4999 number.

61.     On three of these calls, the voice identified itself as "Jen from Choice Home

Warranty" and the fourth also identified it as coming from "Jen" and offered home warranty products.

62.     On December 23, 2021, Plaintiff received an SMS from telephone number 218-382-1870 to his phone number ending in 4999 stating, in part, it was from "Jen at Choice Home Warranty".

63.     Plaintiff also received additional prerecords that appear to be made by Defendant using a different name.

64.     For example, Plaintiff received numerous prerecords from telephone numbers beginning 207-573 which played identical artificial voice[4] messages and would connect to a live representative at Choice Home Warranty upon conclusion of the artificial voice message.

65.     For example, on a 12:00:56 PM July 6 call from Defendant's number 207-573-5381 to his telephone number ending in 1001, the artificial voice identified itself as being from "Complete Home Services".[5]

66.     At the conclusion of the artificial voice portion of the call, it connected Plaintiff to Marc at Choice Home Warranty sales.

67.     Plaintiff requested that Marc provide Plaintiff with a copy of Defendant's Do-Not-Call policy.

68.     Marc stated he would provide this policy in an email and then hung up.

69.     Notably, Plaintiff did *not* provide his email to Marc on this call.

---

[4] The TCPA does not define "prerecorded" or "artificial", but both are actionable. Herein, Plaintiff uses "prerecorded" to refer to calls that were non-interactive and sounded as if they were actual pre-created recordings (compare to one's outgoing voicemail message), and "artificial" to refer to calls that were either interactive or appeared to be computer- or artificially-generated during the call (compare to a customer service system that invites you to speak responses and answers accordingly).

[5] The "Complete Home Services" artificial voice calls were interactive, where the artificial voice would ask questions and wait for Plaintiff to respond, similar to calling a customer service line where the automated voice says "in a few words, tell me what we can help you with today."

70.     Plaintiff had given his email address on other calls in an effort to obtain information on the identity of the caller and Defendant's Do-Not-Call policy.

71.     At 12:02 PM, Marc sent Plaintiff an email advertising Defendant's services, but which did not contain (or even reference) any requested Do-Not-Call Policy.

72.     Because Plaintiff did not provide his email on the call with Marc, but Marc appeared to have an email address associated with Plaintiff's account, the originating call must have been from Defendant (despite identifying itself as "Complete Home Services") for Defendant to have known the email address associated with the call to Plaintiff's telephone number without Plaintiff providing it on that call.

73.     Plaintiff received numerous, identical artificial voice calls claiming to be from "Complete Home Services", all of which connected to a live person at Choice Home Warranty at the conclusion of the artificial voice person (on those calls on which Plaintiff chose to see that portion of the call to its conclusion).

74.     These include calls on March 3, 2020 (which connected to a live person at Choice Home Warranty at the conclusion of the artificial voice portion of the call), July 7, and July 8.

75.     Notably, at no point did Plaintiff receive a call from "Complete Home Services" that connected him to any company *other* than Defendant, which would only make sense if Defendant was the caller (rather than a third-party lead generator).

76.     To the best of Plaintiff's recollection, on the only home warranty calls he received on the telephone numbers at issue herein, the caller (which includes prerecorded and artificial voice callers) either outrighted stated the call was from Defendant, called from a number that a previous caller had stated was from Defendant, or connected to Defendant at the conclusion of an artificial voice identifying itself as calling from "Complete Home Services."

## NATURE OF THE CALLS

77.     Each call was intended to provide Plaintiff with a home warranty quote, answer questions about Defendant's offerings, and otherwise encourage Plaintiff to purchase Defendant's services.

78.     The calls were therefore all "telemarketing" and had a "telemarketing purpose" under 47 C.F.R. § 64.1200(f)(13).

79.     Several of these calls were made using an artificial or prerecorded voice.

80.     For the calls made using an artificial or prerecorded voice, Plaintiff is aware that these telephone calls used a prerecorded or artificial voice because of his familiarity with normal human interaction, intonation, manners of speaking, and his inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

## CONSENT

81.     As discussed above, all of Defendant's calls qualify as "telemarketing".

82.     Because Defendant's calls constitute telemarketing, Defendant was required to obtain prior express written consent from the persons to whom they made prerecorded calls.

83.     As stated, Plaintiff never filled out any form or otherwise provided Defendant with any written consent to contact him via phone, especially via a prerecorded voice.

84.     Even if he had, however, the only locations at which Defendant solicits consent contain improper consent language as a matter of law.

85.     "Prior express written consent" is specifically defined by statute as:

[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

11

47 C.F.R. § 64.1200(f)(9).

86.     This agreement must "include a **clear and conspicuous** disclosure informing the person signing that … such a person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice" and that "[t]he person is not required to sign the agreement … as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(9)(i).

87.     "Prior express written consent" requires the agreement to **clearly and conspicuously** inform the consumer of the possibility of "telemarketing calls using an … artificial or prerecorded voice."

88.     The disclosure on some of Defendant's sites states:

> By entering my information and submitting for a free quote, I am providing express consent to be contacted via email, phone and text, including my wireless phone number, regarding product and servicing information **using automated technology**, even if it is registered on a federal, state, or corporate do not call list. I am not required to provide this consent in order to obtain goods or services from Choice Home Warranty. If my area is not covered, I may be referred to alternate trusted provider.

89.     The disclosure on other of Defendant's sites states:

> By entering my information and submitting for a free quote, I am providing express consent to be contacted via email, phone and text, including my wireless phone number, regarding products, service, discounts, promotions, offers, (including third-party discounts, offers, and promotions) and information **using automated technology**, even if it is registered on a federal, state, or corporate do not call list. I am not required to provide this consent in order to obtain goods or services from Choice Home Warranty. If my area is not covered, I may be referred to alternate trusted provider. Click Here to view full privacy policy.

90.     These disclosures say *nothing* about pre-recorded or artificial voice calls, instead mentioning only "automated technology."

12

91.     Defendant's click-through privacy policy, linked on only one of the sites reviewed, does not fare much better.

92.     Defendant's privacy policy states:

> If you gave us your email address, Choice Home Warranty may use it from time to time to notify you of such things as new services, products, service offers, discounts, promotions, (including third-party discounts, offers, and promotions) to confirm transactions or information, or to assist with the completion of a quote. If you do not wish to be contacted by email for non-policy related communications, you may select the "unsubscribe" link at the bottom of any Choice Home Warranty email you receive. If you gave us your phone number, Choice Home Warranty may use it from time to time to notify you of such things as new services, products, service offers, discounts, promotions, (including third-party discounts, offers, and promotions) or to confirm transactions. Choice Home Warranty **may also leave pre-recorded[sic] on any number** you provided to us.

93.     Here, the privacy policy says nothing about using automatic telephone dialing systems and omits the words after "pre-recorded" to indicate *what* can be "left" pre-recorded.

94.     Rather than pedantic, this is key: if the privacy policy was intended to give Defendant the right to leave pre-recorded telemarketing messages, it would have made more sense to include it in the previous sentence (e.g. "may use it from time to time to notify you, using an automatic telephone dialing system or artificial or prerecorded voice, of such things as…").

95.     Instead, Defendant's privacy policy sets the "pre-recorded" language off in its own sentence, with an "also", indicating it is intended for something other than the telemarketing purposes described in the preceding sentence (for example, it may have been intended to say "pre-recorded voicemails related to account servicing" or "pre-recorded claims information".)

96.     The use of "pre-recorded" here versus "automated technology" in the on-site disclosure also suggests Defendant understood the difference between the terms "automated" and

"pre-recorded."

97.     In short, Defendant's disclosures do not **clearly and conspicuously** disclose the possibility of telemarketing calls using a prerecorded or artificial voice.

98.     Upon information and belief, Defendant obtains written contact information only through sites containing one of the above-mentioned disclosures.

99.     As such, all of Defendant's telemarketing calls to persons who provided their information to Defendant online are made without prior express written consent.

## DO-NOT-CALL LIST

100.    The TCPA prohibits making "any telephone solicitation" to a telephone number on the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c).

101.    Plaintiff registered his number ending in 4999 on the National Do-Not-Call Registry prior to the calls.

102.    Plaintiff's telephone numbers are, and all times were, used primarily as residential and personal numbers.

103.    While the exact number of calls to Plaintiff's telephone number will be determined in discovery, as pled above, Plaintiff has received more than two such telemarketing calls messages in a 12-month period, as required by 47 U.S.C. § 227(c) for violations of § 227(c).

104.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to an $500 per call.

105.    Plaintiff is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

## POLICIES AND PROCEDURES

14

106.    As discussed, the TCPA prohibits making "any call for telemarketing purposes" unless the caller has met the affirmative defense of instituting certain minimum standards for maintaining an internal do-not-call list.

107.    These standards include, among others, keeping a written policy, available upon demand, for maintaining a do-not-call list, training personnel engaged in telemarketing on the existence and use of the do-not-call list, and recording and honoring "do not call" requests. 47 CFR § 64.1200(d).

108.    At the time of its calls to Plaintiff, Defendant did not have such a written policy, nor did it train personnel engaged in telemarketing on the existence and use of the do-not-call list.

109.    Plaintiff requested the written policy via telephone on at least July 6, 2020 on a call with Marc Rabie, and no such policy was sent.

110.    As such, even if Defendant did have a such a policy in place at the time of the calls, Defendant's failure and refusal to produce that policy make it not "available upon demand".

111.    Plaintiff does not appear to be alone.

112.    In a case filed in the Western District of Michigan (and since closed), the plaintiff there indicated he requested the written policy via telephone on March 3, 2021 by calling Defendant's telephone number 1-888-531-5403. *Rogers v. CHW Group, Inc.*, Case No. 21-cv-00226, Dkt. 32, ¶¶ 105-113.

113.    This is the number expressly listed in Defendant's privacy policy as the number to contact regarding Defendant's "collection and use" of consumer information, and to "opt-out of receiving mobile SMS or voice messaging from us."

15

114.    On this call, the plaintiff alleged he spoke with Defendant's employee "Dennis."

115.    On this call, the plaintiff alleged he repeatedly asked Dennis for a copy of Defendant's do-not-call policy.

116.    The plaintiff alleged that Defendant's employee Dennis indicated repeatedly that he was unable to provide the plaintiff with the policy.

117.    The plaintiff alleged that during this call, Defendant's employee Dennis placed the call on hold so he could call someone else to ask if a copy of Defendant's do-not-call policy could be provided to plaintiff.

118.    The plaintiff alleged that when Dennis came back on the line, he stated again that he could not give the plaintiff a copy of the policy.

119.    The plaintiff alleged that at this point, with the conversation going nowhere, the plaintiff ended the call.

120.    Furthermore, Defendant's employees are not trained on honoring "do not call" requests or any internal "do not call policy".

121.    The internet is full of complaints about Defendant's failure to honor do-not-call requests.

122.    On Yelp,[6] where Defendant has one star out of five, numerous reviewers complain about Defendant's calling practices. For example:

> THEY WON'T STOP CALLING!! I decided not to choose then for our home warranty. I receive about 4 calls a day. I have asked them REPEATEDLY to remove me from their call list.... Yet, I continue to receive calls.
>
> Take it from me- Don't give them your number or email unless you are absolutely sure you want them.

---

[6] https://www.yelp.com/biz/choice-home-warranty-austin?q=list

Choice, if you are reading this... STOP FREAKING CALLING ME!

- Carol F., Tucson AZ, September 21, 2020

---

this company SUCKS!!! I somehow got a calling list and they call me multiple times a day! I've asked multiple people to remove my # but it never happens…

- Nikki O., Carlsbad, CA, September 1, 2020

123.    On the BBB website,[7] Defendant has a 1.05/5 rating and 9,973 complaints closed in the last three years, and 3,805 complaints closed in the last 12 months.

124.    Many of these complaints are related to Defendant's calling practices. For example:

I have asked this company numerous times to take me off their call list, yet they keep calling me (sometimes multuple times per day) about their warranty. I do not even own a home anymore. I don't understand why your call centers do not understand this.

Complaint made May 27, 2022

---

I have been receiving calls from this company 100% unsolicited! I will never buy coverage from a cold calling company like this. When i asked for company name, they put me on hold and came back a few mins later and told me the name.... Seems fishy and very scam-like. remove me from any and all list you have.

Complaint made May 5, 2022

---

…Since January, I have been called probably around 10 times. I have asked them to place me on the Do Not Call list three times. On Monday 2/14, I received yet another phone call, after I've already asked to be put

---

[7]          https://www.bbb.org/us/nj/edison/profile/home-warranty-plans/choice-home-warranty-0221-90048733/complaints

on the Do Not Call list twice. I spoke with a supervisor telling him that I will get my lawyer involved if calls persist. Well, low and behold, I received yet another phone call today…

Complaint made February 21, 2022

---

… On one call I spoke with a rep and told them to stop calling (9/2)… On the most recent call (9/3), after I told them to stop calling, the rep told me the way to get off the phone list was to sign up for their service. I told him that's not how it works. I said I would report the company if they continued contacting me. He was defiant and asked who I would report them to. At this point, I consider their continued contact to be harassment and want it stopped.

Complaint made September 3, 2020

---

My contract is expiring today and the onslaught of phone calls and emails has been UNRELENTING. I have received upwards of 5-6 calls per day and multiple emails per day trying to get me to renew my policy. The sales reps that I did talk to were pushy and aggressive and not professional at all. When I would tell them to cease contact with me completely, they would just hang up the phone.

Complaint made May 1, 2020

---

I've asked the representatives to stop calling my number. I have blocked several of the numbers and they continue to call from different numbers. When ever I speak with a live person to ask them to stop calls because I no longer want to due business with the company they just hang up. My most recent call was today at 3:34 PM central time from ###-###-####. I think this name was Al. 2/2###-###-#### at 3:34 central time.

Complaint made February 24, 2020

---

 put in a request for information on the website ************************** earlier this month, as I was researching costs for home warranties . Within a minute, my phone was ringing with a pushy salesperson trying to sell me their plan. I have been receiving non-

18

stop phone calls, morning, noon, and night since this time. When I block the number, they just call from a different number. When I request to be taken off of the calling list, they just hang up on me.

Complaint made January 24, 2020

---

I have received non stop calls from Choice Home Warranty after filling out information for an online quote. I have asked numerous times to place me on the do not contact list and stop calling me. Only to get harassed with an other new number from this company. This type of sale practice is ridiculous. Today alone I received six calls, on the hour every hour, by a different number. I blocked the number but they still could leave voicemails. This has to stop!

Complaint made January 2, 2020

125.    In fact, over the past three years, of the more than 300 "Advertising/Sales" complaints with complaint details available on BBB, almost half appear to involve wholly unsolicited communications and/or unwanted communications after requests that Defendant stop contacting them, and most of these appear to involve phone calls and emails (rather than just emails).

126.    There is no other explanation for the consistency in Defendant's refusal to honor do-not-call requests than a lack of meaningful training and/or policies and procedures on documenting and honoring do-not-call requests.

127.    Accordingly, all of Defendant's telemarketing calls to anyone, in the absence of such a policy, and regardless of consent or equipment used, violate 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

**DEFENDANT'S LIABILITY**

128.    Defendant called Plaintiff using a pre-recorded or artificial voice without his prior express written consent. This constitutes a violation of 47 U.S.C. § 227(b).

19

129.    For violations of 47 U.S.C. § 227(b), Plaintiff is entitled to a minimum of $500 per call.

130.    Plaintiff is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

131.    Defendant placed two or more telephone solicitations to Plaintiff, whose residential number was on the National Do-Not-Call Registry at the time of the calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

132.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to an additional $500 per telephone solicitation call or message, through 47 U.S.C. § 227(c).

133.    Plaintiff is entitled to an additional $1,500 per call or message if Defendant's actions are found to be knowing or willful.

134.    Defendant placed two or more telemarketing calls to Plaintiff, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

135.    Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

136.    Plaintiff is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

137.    Plaintiff has suffered concrete harm because of Defendant's unwanted and unsolicited telemarketing calls, including, but not limited to:

- Device storage;

- Data usage;

- Lost time tending to and responding to the unsolicited calls;

- Invasion of Privacy;

- Nuisance; and

- Increased risk of all of the above.

138.    These concrete harms, among others, are sufficient for Article III standing.

## **CLASS ACTION ALLEGATIONS**

139.    Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of six classes,

preliminarily defined as follows:

> Since July 19, 2018, all persons in the United States, who were non-customers of Defendant CHW Group, Inc. at the time of the calls, to whose telephone number Defendant CHW Group, Inc. 1) placed (or had placed on its behalf) a telephone call 2) regarding Defendant's home warranty services 3) using an artificial or pre-recorded voice.

> ("Prerecord Class")

> Since July 19, 2018, all persons in the United States, who were non-customers of Defendant CHW Group, Inc. at the time of the calls, to whose telephone number Defendant CHW Group, Inc. 1) placed (or had placed on its behalf) a telephone call 2) regarding Defendant's home warranty services 3) using an artificial or pre-recorded voice and 4) when the number did not belong to the person for whom the calls were intended.

> ("Prerecord Subclass")

> Since July 19, 2018, all persons in the United States, who were non-customers of Defendant CHW Group, Inc. at the time of the calls, to whose residential or cellular telephone number Defendant CHW Group, Inc. 1) placed (or had placed on its behalf) two or more calls in a 12-month period 2) regarding Defendant's home warranty services 3) when the number to which the calls were placed was on the National Do-Not-Call Registry at the time of the calls and 4) when the number did not belong to the person for whom the calls were intended.

> ("DNC Class")

> Since July 19, 2018, all persons in the United States, who were non-customers of Defendant CHW Group, Inc. at the time of the calls, to whose telephone number Defendant CHW Group, Inc. 1) placed (or had placed on its behalf) two or more calls in a 12-month period 2) regarding Defendant's home warranty services.

("Policy Class")

(These classes are collectively referred to herein as the "Classes.")

140.    Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

141.    The putative Class members for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

142.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

> a.   The time period(s) during which Defendant placed its calls;
>
> b.   The telephone numbers to which Defendant placed its calls;
>
> c.   The name, address, and email address associated with the telephone numbers to which Defendant placed its calls;
>
> d.   The source of the telephone numbers to which Defendant placed its calls;
>
> e.   The purposes and scripts for Defendant's calls.

143.    The Classes are comprised of thousands of individuals nationwide.

144.    There are common questions of law and fact affecting the rights of putative, including, *inter alia*, the following:

> a.   Whether Defendant or someone acting on its behalf places telemarketing calls;
>
> b.   Whether Defendant obtains prior express written consent;

    c.   Whether Defendant or someone acting on its behalf places its calls using an artificial or pre-recorded voice;

    d.   Whether Defendant places solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

    e.   Whether Defendant had the required policies and procedures prior to making telemarketing calls;

    f.   Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

    g.   Whether Defendant should be enjoined from engaging in such conduct in the future.

145.   Plaintiff is a member of the Classes in that he was a non-customer of Defendant, and Defendant placed two or more calls, some of which used a pre-recorded voice, regarding its home warranty products, in a one-year period to Plaintiff's telephone numbers, and such calls were intended for someone else, and one of Plaintiff's telephone numbers was on the National Do-Not-Call Registry.

146.   Plaintiff's claims are typical of the claims of the putative Class members in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

147.   Plaintiff and all putative Class Members have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy.

148.   Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

149.     Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent himself and the Classes.

150.     Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

151.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

152.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

153.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of Plaintiff and the Prerecord Class and Prerecord Subclass)**

154.     Plaintiff and the proposed Prerecord Class and Prerecord Subclass incorporate the foregoing allegations as if fully set forth herein.

155.     Defendant made prerecorded and artificial voice telemarketing telephone calls to Plaintiff's and putative Class Members despite, as a practice, not obtaining proper prior express written consent prior to such calls.

156.     Defendant also made prerecorded or artificial voice telemarketing telephone calls to Plaintiff's and putative Class Members despite the call being intended for someone else, meaning even if Defendant obtained consent from *someone*, Defendant did not have prior express written consent from the call recipient.

24

157.   The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

158.   Plaintiff and putative Class Members were non-customers of Defendant at the time of the calls.

159.   Therefore, Defendant's calls about its home warranty offerings to Class Members were telemarketing.

160.   Plaintiff and putative Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

161.   Plaintiff and putative Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the DNC Class)**

162.   Defendant placed telephone calls to Plaintiff's and putative DNC Class Members' telephone numbers.

163.   Plaintiff and putative Class Members were non-customers of Defendant at the time of the calls.

164.   Therefore, Defendant's calls about its home warranty offerings to Class Members were telephone solicitations.

165.   Plaintiff's and putative DNC Class Members' telephone numbers were on the National Do-Not-Call Registry at the time of the calls.

166.   Plaintiff and putative DNC Class Members each received two or more such calls in a 12-month period.

167.    Plaintiff and putative DNC Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

168.    Plaintiff and putative DNC Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**THIRD CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Policy Class)[8]**

169.    Defendant placed numerous calls to Plaintiff's and putative Policy Class Members' telephone numbers.

170.    Plaintiff and putative Class Members were non-customers of Defendant at the time of the calls.

171.    Therefore, Defendant's calls about its home warranty offerings to Class Members were telemarketing.

172.    Defendant did so despite not having a written policy pertaining to "do not call" requests.

173.    Defendant did so despite not having such a policy available "upon demand."

174.    Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

175.    Defendant did so despite not recording, or not honoring recorded, "do not call" requests.

176.    Defendant placed two or more telemarketing telephone calls to Plaintiff and putative Class Members' telephone numbers in a 12-month period.

---

[8] Plaintiff includes this here in in the interest of thoroughness, but does not intend to waive any arguments made in his pending Motion to Remand or concede that this cause of action is properly in Federal Court.

177.    Plaintiff and putative Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

178.    Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for:

A.    An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing his counsel as Class Counsel;

B.    An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. §§ 227(b) and (c);

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages;

E.    An award of treble damages; and

F.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** January 16, 2023

s/ Jeremy M. Glapion_____
Jeremy M. Glapion, Esquire
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com
(Pro hac vice)

Corey D. McGaha
Ark. Bar No. 2003047
COREY D. MCGAHA PLLC
5507 Ranch Drive
Suite 104-D
Little Rock, AR 72223
Phone: (501) 205-4026
Fax: (501) 367-8208
cmcgaha@mcgahalaw.com