**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS**

SAM KATZ, on behalf of himself and all other
similarly situated,

        *Plaintiff*,

   v.

CHW GROUP, INC. d/b/a CHOICE HOME
WARRANTY,

        *Defendant*.

Case No. 5:22-cv-05198-PKH

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   APPLICABLE LEGAL STANDARDS ............................................................. 3

    A.   Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim for Relief ................................. 3

    B.   Fed. R. Civ. P. 12(f) and 23 – Striking Improper Class and Other
        Allegations ................................................................................................. 4

III.  ARGUMENT ....................................................................................................... 4

    A.   Plaintiff Fails to State a Plausible Claim for Relief Under the TCPA. .................... 4

        1.   Plaintiff Fails to Allege Facts Supporting His "Prerecorded or
              Artificial Voice" Claim Under Section 227(b) of the TCPA (Count
              I). ........................................................................................................... 5

        2.   Plaintiff Fails to Plead Facts Supporting Essential Elements of His
              DNC Claims Under Section 227(c) of the TCPA (Counts II and III).......... 7

        3.   Plaintiff Also Lacks "Prudential" Standing to Bring a DNC Claim. ......... 11

        4.   Plaintiff Fails to Sufficiently Plead Direct TCPA Liability (All
              Counts). .............................................................................................. 12

        5.   Plaintiff Fails to Plead Vicarious TCPA Liability (All Counts). ............... 16

    B.   The FAC Should Be Dismissed With Prejudice. .................................................... 18

    C.   Alternatively, Plaintiff's Facially Uncertifiable Class Definitions and Other
        Improper Allegations Should Be Stricken Under Fed. R. Civ. P. 12(f) and/or
        23 .................................................................................................................. 19

        1.   Plaintiff's Proposed Classes Are Impermissibly "Fail-Safe." .................. 20

        2.   Common Questions of Law and Fact Do Not Predominate. ..................... 22

        3.   The Complaint Contains "Superfluous Historical" Allegations. ............... 25

IV.   CONCLUSION ................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aaronson v. CHW Grp., Inc.*,
   2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ..........................................................13, 14, 17, 18

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
   2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ........................................................................12, 15

*Adam v. CHW Grp., Inc.*,
   2021 WL 7285905 (N.D. Iowa Sept. 9, 2021) ..........................................................................18

*Aikens v. Synchrony Fin.*,
   2015 WL 5818911 (E.D. Mich. July 31, 2015) ..........................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................3, 14, 15

*Bank v. Philips Elecs. N. Am. Corp.*,
   2015 WL 1650926 (E.D.N.Y. Apr. 14, 2015) ..........................................................................14

*Bank v. Vivint Solar, Inc.*,
   2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019) ..........................................................................17

*Bank v. Vivint Solar, Inc.*,
   2019 WL 2280731 ....................................................................................................................16

*Barnett v. Bank of Am., N.A.*,
   2021 WL 2187950 (W.D.N.C. May 28, 2021) ..........................................................................24

*Barrett v. ADT Corp.*,
   2016 WL 865672 (S.D. Ohio Mar. 7, 2016) ............................................................................24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................3, 14

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) (*abrogated on other grounds by Microsoft v. Baker*,
   137 S. Ct. 1702 (2017)) .............................................................................................................22

*Blount v. D. Canale Beverages, Inc.*,
   2003 WL 22890339 (W.D. Tenn. July 23, 2003) .....................................................................24

*Boyer v. Diversified Consultants, Inc.*,
   306 F.R.D. 536 (E.D. Mich. 2015) ..........................................................................................20

*Braver v. NorthStar Alarm Servs., LLC*,
   2019 WL 3208651 (W.D. Okla. July 16, 2019) ..........................................................................7

*Brown v. Medtronic, Inc.*,
   628 F.3d 451 (8th Cir. 2010) ....................................................................................................14

*Bryant v. King's Creek Plantation, L.L.C.*,
    2020 WL 6876292 (E.D. Va. June 22, 2020) ........................................................21

*Burks v. Arvest Bank*,
    2006 WL 3512478 (E.D. Ark. Dec. 6, 2006)......................................................19

*Charvat v. DFS Servs. LLC*,
    781 F. Supp. 2d 588 (S.D. Ohio 2011) .............................................................11

*Charvat v. GVN Michigan, Inc.*,
    561 F.3d 623 (6th Cir. 2009) ............................................................................11

*Childress v. Liberty Mut. Ins. Co.*,
    2018 WL 4684209 (D.N.M. Sept. 28, 2018) ...............................................13, 15

*Cholly v. Uptain Grp., Inc.*,
    2017 WL 449176 (N.D. Ill. Feb. 1, 2017) .........................................................23

*Christiansen v. West Branch Community School Dist.*,
    674 F.3d 927 (8th Cir. 2012) ..............................................................................3

*Cook v. ACS State & Local Sols., Inc.*,
    663 F.3d 989 (8th Cir. 2011) ..............................................................................3

*Cunningham v. McDonald*,
    2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL
    6198417 (Nov. 28, 2018).....................................................................................8

*Cunningham v. Politi*,
    2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL
    2524737 (June 19, 2019) ................................................................................7, 8

*Cunningham v. Rapid Capital Funding, LLC/RCF*,
    2017 WL 3574451 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL
    3776165 (Aug. 31, 2017).....................................................................................8

*Curry v. Synchrony Bank, N.A.*,
    2015 WL 7015311 (S.D. Miss. Nov. 12, 2015) ...................................................5

*Day v. Renny*,
    2020 WL 13002519 (D. Neb. July 24, 2020) ....................................................13

*Dixon v. Monterey Fin. Servs., Inc.*,
    2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) .............................................19, 20

*Donaca v. Dish Network, LLC*,
    303 F.R.D. 390 (D. Colo. 2014) ........................................................................12

*Donelson v. Ameriprise Fin. Servs., Inc.*,
    999 F.3d 1080 (8th Cir. 2021), *cert. denied,* 142 S. Ct. 2675 (2022).......................4

*Dowden, Tr. of Est. of Huchingson v. Cornerstone Nat'l Ins. Co.*,
    2019 WL 11274868 (W.D. Ark. May 16, 2019) ................................................10

*Eldridge v. Cabela's Inc.*,
    2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)..............................................19, 23

*Ford v. TD Ameritrade Holding Corp.*,
   995 F.3d 616 (8th Cir. 2021) ..................................................................................20

*Frame v. Cal-W. Reconveyance Corp.*,
   2011 WL3876012 (D. Ariz. Sept. 2, 2011)..............................................................19

*Frank v. Cannabis & Glass, LLC*,
   2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ........................................................13

*Gallegos v. Roman Catholic Archbishop of San Francisco*,
   2016 WL 3162203 (N.D. Cal. June 7, 2016) ...........................................................25

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982)...................................................................................................4

*Gene and Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) ...................................................................................23

*Gulden v. Consol. World Travel Inc.*,
   2017 WL 3841491 (D. Ariz. Feb. 15, 2017).............................................................18

*Hamilton v. El-Moussa*,
   2020 WL 2614625 (C.D. Cal. Feb. 10, 2020)............................................................6

*Hernandez v. Select Portfolio, Inc.*,
   2015 WL 3914741 (C.D. Cal. June 25, 2015) ..........................................................15

*Herskowitz v. Apple, Inc.*,
   301 F.R.D. 460 (N.D. Cal. 2014)..............................................................................22

*Hicks v. Alarm.com*,
   2020 WL 9261758 (E.D. Va. Aug. 6, 2020).............................................8, 9, 15, 25

*Howard v. Goodwin*,
   2018 WL 6613796 (W.D. Ark. Dec. 17, 2018) ........................................................10

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
   934 F. Supp. 2d 1219 (C.D. Cal. 2013) ...................................................................25

*In re Easysaver Rewards Litig.*,
   737 F. Supp. 2d 1159 (S.D. Cal. 2010).....................................................................25

*In re Joint Petition*
   *filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574 (2013).......................12

*In re: Monitronics Int'l, Inc., TCPA Litig.*,
   223 F. Supp. 3d 514 (N.D.W.Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec.
   Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ................................................17, 18

*In re Teflon Prod. Liab. Litig.*,
   254 F.R.D. 354 (S.D. Iowa 2008) ............................................................................22

*Johansen v. Vivant, Inc.*,
   2012 WL 6590551 (N.D. Ill. Dec. 18, 2012).............................................................5

*Jones v. Royal Admin. Servs., Inc.*,
   866 F.3d 1100 (9th Cir. 2017) ............................................................................16, 17

*Jones v. Royal Admin. Svcs., Inc.*,
887 F.3d 443 (9th Cir. 2018) ..................................................................17, 18

*Kemen v. Cincinnati Bell Tel. Co., Inc*.,
2023 WL 361136 (S.D. Ohio Jan. 23, 2023) ...............................................8, 9

*Kristensen v. Credit Payment Servs*.,
12 F. Supp. 3d 1292 (D. Nev. 2014)................................................................16

*Kushner v. Beverly Enter., Inc*.,
317 F.3d 820 (8th Cir. 2003) ...........................................................................9

*Landy v. Nat. Power Sources, LLC*,
2021 WL 3634162 (D.N.J. Aug. 17, 2021) ...................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc*.,
572 U.S. 118 (2014).........................................................................................11

*Lind v. Midland Funding, LLC*,
688 F.3d 402 (8th Cir. 2012) ............................................................................4

*Lindsay Transmission, LLC v. Office Depot, Inc*.,
2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ......................................19, 20, 23, 24

*Linlor v. Five9, Inc*.,
2017 WL 5885671 (S.D. Cal. Nov. 29, 2017)................................................16

*Maine State Retirement Sys. v. Countrywide Fin. Corp*.,
2011 WL 4389689 (C.D. Cal. May 5, 2011) ..................................................25

*Maldonado-Rodriguez v. Citibank, N.A.*,
2013 WL 350814 (N.D. Ind. Jan. 28, 2013) ..................................................14

*Manopla v. Sansone Jr.'s 66 Automall*,
2020 WL 1975834 (D.N.J. Jan. 10, 2020) ........................................................5

*Mantha v. QuoteWizard.com, LLC*,
2022 WL 325722 (D. Mass. Feb. 3, 2022) ...................................................8, 9

*Martinez v. TD Bank USA*,
2017 WL 2829601 (D.N.J. June 30, 2017).....................................................21

*McReynolds v. Lowe's Cos. Inc.*,
2008 WL 5234047 (D. Idaho Dec. 12, 2008) .................................................25

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)...........................................15, 16

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015)................................................17

*Milliman v. County of Stearns*,
2013 WL 5426049 (D. Minn. Sept. 26, 2013) ...............................................19

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018)................................................8, 9

*Naiman v. TranzVia LLC,*
  2017 WL 5992123 (N.D. Cal. Dec. 4, 2017).................................................................16

*Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.,*
  2013 WL 1196948 (W.D. Wash. Mar. 25, 2013)..........................................................25

*Pascal v. Agentra, LLC,*
  2019 WL 5212961 (N.D. Cal. Oct. 16, 2019)...............................................................12

*Pepka v. Kohl's Dep't Stores, Inc.,*
  2016 WL 8919460 (C.D. Cal. Dec. 21, 2016)..................................................19, 20, 23

*Rahimian v. Rachel Adriano and Juan Martinez, Inc.,*
  2002 WL 798371 (D. Nev. Mar. 16, 2022)......................................................................5

*Rand-Heart of New York, Inc. v. Dolan,*
  812 F.3d 1172 (8th Cir. 2016) .........................................................................................3

*Randleman v. Fid. Nat'l Title Ins. Co.,*
  646 F.3d 347 (6th Cir. 2011) .........................................................................................20

*Revitch v. Citibank,*
  2019 WL 1903247 (N.D. Cal. Apr. 28, 2019)...............................................................23

*Rogers v. Postmates Inc.,*
  2020 WL 3869191 (N.D. Cal. July 9, 2020)..................................................................12

*Rombough v. Robert D. Smith Ins. Agency, Inc.,*
  2022 WL 2713278 (N.D. Iowa June 9, 2022)...............................................................22

*Sandusky Wellness Ctr., LLC v. ASD Spec. Healthcare, Inc.,*
  863 F.3d 460 (6th Cir. 2017) .........................................................................................23

*Saulsberry v. Meridian Fin. Servs., Inc.,*
  2016 WL 3456939 (C.D. Cal. Apr. 14, 2016)...............................................................23

*Sauter v. CVS Pharmacy, Inc.,*
  2014 WL 1814076 (S.D. Ohio May 7, 2014).........................................................19, 20

*Scott v. St. Louis Univ. Hosp.,*
  2022 WL 1211092 (E.D. Mo. Apr. 25, 2022)...............................................................11

*Scruggs v. CHW Grp., Inc.,*
  2020 WL 9348208 (E.D. Va. Nov. 12, 2020).........................................................15, 18

*Sheski v. Shopify (USA) Inc.,*
  2020 WL 2474421 (N.D. Cal. May 13, 2020).........................................................12, 17

*Smith v. Direct Building Supplies, LLC,*
  2021 WL 4623275 (E.D. Pa. Oct. 7, 2021)...................................................................14

*Smith v. Pro Custom Solar LLC,*
  2021 WL 141336 (D.N.J. Jan. 15, 2021).........................................................................5

*Smith v. Vision Solar LLC,*
  2020 WL 5632653 (E.D. Pa. Sept. 21, 2020)..................................................................8

*Sundermann v. Golden Circle Real Est. Grp., L.L.C.*,
  2019 WL 7758601 (S.D. Iowa Oct. 29, 2019)............................................12, 16, 17

*Survivor Prods. LLC v. Fox Broad. Co.*,
  2001 WL 35829267 (C.D. Cal. June 12, 2001) ....................................................25

*Thomas v. Taco Bell Corp.*,
  582 F.App'x 678 (9th Cir. 2014) .........................................................................12

*Trenz v. On-Line Admins., Inc.*,
  2020 WL 5823565 (C.D. Cal. Aug. 10, 2020)......................................................23

*Ung v. Universal Accept. Corp.*,
  319 F.R.D. 537 (D. Minn. 2017)..........................................................................22

*Visser v. Caribbean Cruise Line, Inc.*,
  2020 WL 415845 (W.D. Mich. Jan. 27, 2020) .....................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..............................................................................................22

*Wiseberg v. Toyota Motor Corp.*,
  2012 WL 1108542 (D.N.J. Mar. 30, 2012)...........................................................25

*Woo v. Home Loan Group, L.P.*,
  2007 WL 6624925 (S.D. Cal. Jul. 27, 2007) ........................................................25

*Worsham v. Travel Options, Inc.*,
  2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd,* 678 F.App'x 165 (4th Cir. 2017) ...............7

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
  80 F. Supp. 3d 610 (E.D. Pa. 2015) .....................................................................20

## STATUTES

47 U.S.C. § 227(b)(1)(A)(iii)................................................................................4, 6

47 U.S.C. § 227(c)(5) .....................................................................................5, 7, 23

47 U.S.C. § 227(d)....................................................................................................5

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(2)...................................................................................4, 21

47 C.F.R. § 64.1200(c)(2)...........................................................................5, 7, 21, 22

47 C.F.R. § 64.1200(c)(2)(i)(D)...............................................................................7

47 C.F.R. § 64.1200(c)(2)(ii)...................................................................................23

47 C.F.R. § 64.1200(d) ....................................................................................5, 7, 21

47 C.F.R. § 64.1200(f)(1).........................................................................................21

47 C.F.R. § 64.1200(f)(9).........................................................................................21

47 C.F.R. § 64.1200(f)(13).......................................................................................21

47 C.F.R. § 64.1200(f)(15).......................................................................................23

47 C.F.R. § 64.2305 .................................................................................................8

47 C.F.R. § 64.2305(d) ...........................................................................................9

https://www.numberbarn.com/faqs ........................................................................9

Restatement (3d) of Agency § 1.01 .....................................................................16

Wright & Miller, FEDERAL PRAC. & PROC. § 1383 (3d ed.) ...........................4

## RULES

Fed. R. Civ. P. 12(b)(6)................................................................................ passim

Fed. R. Civ. P. 12(f)..................................................................................... passim

Fed. R. Civ. P. 23......................................................................................... passim

## I.    <u>INTRODUCTION</u>

Plaintiff's First Amended Complaint (Dkt. 23, the "FAC"), filed in response to the initial motion to dismiss his original complaint (*see* Dkt. 19) by Defendant Choice Home Warranty ("CHW"), fails to cure any of the fatal defects of its predecessor and is equally ripe for dismissal.

Indeed, in his FAC, Plaintiff still does little more than allege, in a conclusory and inconsistent fashion and without sufficient requisite factual support, that CHW violated the Telephone Consumer Protection Act ("TCPA"). Continuing his "kitchen sink" approach, and though seemingly no longer claiming to have received unlawful texts,[1] Plaintiff bases these claims on ill-described calls purportedly made by someone using a "prerecorded or artificial voice"—albeit only for some calls, though he still does not specify which, how many, or the type of "voice" used—to his two different phone numbers without his consent. Tellingly, Plaintiff also now concedes that neither phone number at issue is assigned to a residential landline or to a cell phone and, instead, they were purchased from an online marketplace ("Number Barn") and are ***used strictly to forward calls to other numbers***. Regardless, merely regurgitating the legal elements of a claim without supporting facts, like Plaintiff persists on doing here, does not satisfy federal pleading standards. He also cannot expect to represent four nationwide putative classes based on his still-facially-uncertifiable class allegations. Thus, the FAC should be dismissed in its entirety and <u>with prejudice</u>, or alternatively his faulty class and other improper allegations should be stricken, for at least for the following reasons:

<u>First</u>, Plaintiff's "prerecorded or artificial voice" claim under Section 227(b) of the TCPA in Count I should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff still fails to plead facts, beyond his bald conclusions, supporting a plausible inference that the at-issue calls were truly "prerecorded" or "artificial" as opposed to live. Courts have widely held that, to avoid dismissal of

---

[1] Plaintiff removed most, but not all, of the references to "text messages" in his FAC. *See, e.g.,* Dkt. 23, ¶ 62. However, he does not allege that any text message he may have received violated the TCPA.

such a claim, a complaint must contain sufficient factual allegations regarding the "tenor, nature, or circumstances" of the call, beyond merely concluding it was "prerecorded" or "artificial." Here, Plaintiff does not allege any such facts and instead relies on bald conclusions, which is insufficient.

**Second**, Plaintiff's "Do-Not-Call" ("DNC") claims under Section 227(c) of the TCPA in Counts II and III should be dismissed under Rule 12(b)(6) because, *inter alia*: (i) he still does not allege any facts supporting an inference that he is a "residential telephone subscriber" within the meaning of the TCPA entitled to bring such claims (and, indeed, now pleads contradictory facts); (ii) publicly-available evidence, in the form of Plaintiff's sworn deposition testimony from one of his many other TCPA cases (of which this Court may properly take judicial notice when ruling here) reveals that he still cannot plausibly allege such facts in this case, as neither of the subject phone numbers qualify as his "residential" line; and (iii) his allegations regarding CHW's failure to have "internal" DNC policies are purely conclusory and ultimately do not support such a claim any way.

**Third**, Counts II and III should also be dismissed under Rule 12(b)(6) for the additional reason that Plaintiff lacks "prudential" standing to bring a TCPA DNC claim. Again, the TCPA's DNC provisions only cover "residential" subscribers. Because the subject numbers are plainly not "residential" numbers under the TCPA, Plaintiff is also not within the "zone of interests" that the TCPA's DNC provisions were designed to protect. Therefore, Plaintiff lacks "prudential" standing.

**Fourth**, in order to plead any TCPA claim under any provision and avoid dismissal under Rule 12(b)(6), all plaintiffs must allege specific, non-conclusory facts supporting the defendant's direct or vicarious liability. Here, Plaintiff still fails to plead facts such supporting a plausible inference that CHW: (i) <u>itself</u>, and not some unidentified third party, took any steps necessary to "physically" place the calls at issue, as required to plead direct TCPA liability; or (ii) had an agency relationship with (the touchstone of which is "control" over) any third parties who did call him, as

2

required to plead vicarious TCPA liability. Courts routinely dismiss such deficient TCPA claims in their <u>entirety</u> at the pleadings stage under Rule 12(b)(6) on these bases <u>alone</u>. This Court should too.

**Finally**, while the FAC should be dismissed with prejudice for myriad reasons above, Plaintiff's class allegations remain so facially improper and inadequate that the proposed classes are uncertifiable as pled. Federal courts routinely grant motions to strike such facially uncertifiable class allegations at the pleadings stage, and the Eighth Circuit recently reaffirmed that doing so is entirely proper in appropriate cases like this one. Thus, should the Court not dismiss the FAC for any reason, it should nevertheless strike Plaintiff's deficient class and other allegations under Fed. R. Civ. P. 12(f) and/or 23 before the Court and the parties waste needless time on discovery relating to them.

## II.   <u>APPLICABLE LEGAL STANDARDS</u>

### A.   <u>Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim for Relief</u>

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. Of course, a legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. Naked allegations without such factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). Moreover, while the Court must generally accept well-pled factual allegations as true under Rule 12(b)(6), conclusory allegations, unwarranted or unreasonable inferences, or legal conclusions masquerading as facts do not suffice, are not to be accepted as true, and will not prevent dismissal. *See, e.g., Cook v. ACS State & Local Sols., Inc.,* 663 F.3d 989, 992 (8th Cir. 2011); *Christiansen v. West Branch Community School Dist.,* 674 F.3d 927, 934 (8th Cir. 2012); *Rand-Heart of New York, Inc. v. Dolan*, 812 F.3d 1172, 1176 (8th Cir. 2016).

Put simply, Plaintiff must allege ***specific facts*** supporting all the essential elements of ***each*** claim to

avoid dismissal here. *See, e.g., Lind v. Midland Funding, LLC*, 688 F.3d 402, 409 (8th Cir. 2012).

### B.      Fed. R. Civ. P. 12(f) and 23 – Striking Improper Class and Other Allegations

"Sometimes the issues are plain enough from the pleadings" to determine a case should not

proceed as a class action and, thus, that a court may properly resolve class certification at the

pleadings stage on a defendant's motion to strike before a motion to certify is filed. *Gen. Tel. Co. of

the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Donelson v. Ameriprise Fin. Servs., Inc.,* 999 F.3d

1080, 1091-92 (8th Cir. 2021), *cert. denied,* 142 S. Ct. 2675 (2022). In fact, the Eighth Circuit

recently reaffirmed that district courts may (and, indeed, ***should*** in appropriate cases) strike faulty

class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face

of the complaint that the proposed classes are not certifiable under Rule 23 as pleaded. *Donelson*,

999 F.3d at 1092 (citing, *inter alia,* 5C Wright & Miller, FEDERAL PRAC. & PROC. § 1383 (3d ed.)).

### III.    ARGUMENT

#### A.      Plaintiff Fails to State a Plausible Claim for Relief Under the TCPA.

In Count I of the FAC (*see* ¶¶ 154-161), Plaintiff seeks relief under Section 227(b) of the

TCPA and its related implementing regulations, which together *inter alia* provide that no person

shall "make any call (other than a call … made with the prior express consent of the called party)

using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular

telephone service … or any service for which the called party is charged for the call." 47 U.S.C. §

227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2). In Counts II and III (*see* ¶¶ 162-178), Plaintiff seeks

relief under the TCPA's DNC provisions and related implementing regulations, which together *inter

alia*: (a) prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the

same entity" in a 12-month period to a "residential telephone subscriber who has registered his or

her telephone number" on the National DNC Registry (*i.e.,* Count II); and (b) require any "person or

4

entity making a call for telemarketing purposes" to "honor a residential subscriber's do-not-call request" made within a "reasonable time" and to have internal DNC policies and procedures in place meeting certain minimum standards (*i.e.,* Count III). 47 U.S.C. §§ 227(c)(5) & (d); 47 C.F.R. §§ 64.1200(c)(2) & (d). As shown below, however, Plaintiff pleads scant actual ***facts*** supporting these elements of his claims, and relies instead on legal buzzwords, conclusion, and speculation.

       **1.**     **Plaintiff Fails to Allege Facts Supporting His "Prerecorded or Artificial Voice" Claim Under Section 227(b) of the TCPA (Count I).**

To avoid dismissal of Count I, Plaintiff "must include some factual allegations beyond 'the call had a prerecorded [or artificial] voice.'" *Smith v. Pro Custom Solar LLC*, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021). Courts routinely dismiss claims under Section 227(b) of the TCPA that omit plausible facts "regarding the tenor, nature, or circumstances of the alleged calls" and instead "merely proffer[] the content of the message and conclusory allege[] that Defendant utilized a pre-recorded message." *Manopla v. Sansone Jr.'s 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020). While courts do not expect all the "technical specifications" about the delivery mechanism for the calls, they do uniformly require plaintiffs to plead sufficient supporting factual details from which a "prerecorded" or "artificial" voice (as opposed to a live human speaking) can be inferred, not naked conclusions. *Johansen v. Vivant, Inc*., 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).[2] Despite amending and CHW's prior motion on this point, Plaintiff's FAC still lacks such details.

Indeed, Plaintiff now alleges—or, rather, merely concludes, albeit only in passing via a footnote—that he uses the term "prerecorded" in his FAC "to refer to calls that were non-interactive

---

[2] *See also Rahimian v. Rachel Adriano and Juan Martinez, Inc*., 2002 WL 798371, at * 2-3 (D. Nev. Mar. 16, 2022) (conclusory allegations defendant "transmitted" calls "using a prerecorded voice" insufficient); *Curry v. Synchrony Bank, N.A.*, 2015 WL 7015311, at *2-3 (S.D. Miss. Nov. 12, 2015) (dismissing where the plaintiff had "'not provided sufficient contextual details to determine whether she spoke to a human or merely heard a recording upon picking up the phone'") (quoting *Aikens v. Synchrony Fin.*, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015)).

and sounded as if they were actual pre-created recordings (compare to one's outgoing voicemail message)" and "'artificial' to refer to calls that were either interactive or appeared to be computer- or artificially-generated during the call (compare to a customer service system that invites you to speak responses and answers accordingly)." Dkt. 23, ¶ 64, n.4. At the same time, his FAC is riddled with inherent contradictions. For example, Plaintiff still conflates "artificial voice" with "prerecorded" calls—which are not synonymous terms and are distinct legal concepts under the TCPA[3]—and uses those terms interchangeably throughout the FAC, all without identifying precisely which or how many of the alleged calls involved which type of "voice" (if at all), and while conceding he did receive some "live" calls.[4] In all, these allegations parrot the statutory text and case law without factual support, which is woefully insufficient to avoid dismissal under Rule 12(b)(6).

Moreover, Plaintiff does not provide any plausible facts supporting an inference that these supposed "prerecorded messages" were anything other than ***voicemail messages left by a live person***. In fact, his allegation they "sounded" like "one's outgoing voicemail message" belies such an inference, as that simply describes a garden variety voicemail; and one cannot tell whether a voicemail was prerecorded as opposed to made by a live caller based on its content, let alone "interact" with a voicemail message.[5] Similarly, Plaintiff's description of the supposedly "artificial" calls as "interactive" merely shows it is equally plausible that they were made by a live human. Indeed, Plaintiff does not provide any specific facts regarding the "nature, tenor or circumstances"

---

[3] *See* 47 U.S.C. §227(b)(1)(A)(iii) (prohibiting calls using an "artificial <u>or</u> prerecorded voice").

[4] *See, e.g.,* Dkt 23, ¶ 49 ("***Many*** of these calls were ***pre-recorded or artificial voice*** calls."); ¶ 56 ("Plaintiff received six total calls … ***several*** of which were ***live***…."); ¶ 57 ("Plaintiff received a ***live*** voicemail ***message***…."); ¶ 64 (Plaintiff "received numerous ***prerecords*** … which played identical ***artificial*** voice messages…."); ¶ 79 ("[s]everal of these calls were made using an ***artificial or prerecorded*** voice"); ¶ 155 ("Defendant made ***prerecorded and artificial*** voice" calls) (all emphases added); *see also* ¶¶ 58-60, 63, 64-66, 73-74, 76, 80, 128 (containing similar conclusory allegations).

[5] This distinction is of critical importance and bears emphasis. Leaving a voicemail alone does <u>not</u> violate the TCPA, and "prerecorded" in this context means the message was recorded beforehand.

of the voice he allegedly heard supporting an inference that the messages were "computer- or artificially-generated" and, of course, a live person can interact with a caller. He also tellingly still does not allege *he actually tried* to interact with any caller but was unable to do so. In short, Plaintiff's conclusory and contradictory allegations above fall far short of nudging this claim from merely "possible" to "probable" and, therefore, Count I should be dismissed under Rule 12(b)(6).

### 2. Plaintiff Fails to Plead Facts Supporting Essential Elements of His DNC Claims Under Section 227(c) of the TCPA (Counts II and III).

Plaintiff's second attempt to plead TCPA DNC claims in Counts II and III fares no better:[6]

<u>**First**</u>, with respect to Count II, TCPA's National DNC Registry provision and its related implementing regulations, on their face, apply <u>only</u> to "*residential* telephone subscribers." *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (emphasis added). *See also Cunningham v. Politi,* 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL 2524737 (June 19, 2019) (dismissing under Rule 12(b)(6), noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). Likewise, as to Count III, courts that have recognized a private cause of action for purported violations of the "internal" DNC procedural requirements under Section 64.1200(d) of the TCPA's implementing regulations[7] have ruled similarly—*i.e.,* that those regulations only apply to "residential" phone numbers, not to all phone numbers. *See, e.g.,*

---

[6] Only <u>one</u> of the two subject phone numbers, supposedly ending in 4999, is alleged to be on the National DNC Registry. *See* Dkt. 23, ¶ 37. Therefore, any violative calls made to the <u>other</u> subject number (purportedly ending in 1001) are <u>not</u> subject to Plaintiff's claim asserted in Count II, which asserts a purported violation of the National DNC Registry provisions of the TCPA. *See* 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)(i)(D) (requiring the phone number at issue to be registered on the Registry at the time of, and for at least 31 days prior to, an alleged violative call or text).

[7] Though the issue is not well-settled, courts have held the TCPA's "internal" DNC regulations in 47 C.F.R. § 64.1200(d) fall under the *technical* standards in Section *227(d)* of the TCPA (*i.e.,* not Section 227(c)), which *does not give rise to a private cause of action*. *See, e.g., Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *4, 7 (D. Md. Sept. 2, 2016), *aff'd,* 678 F.App'x 165 (4th Cir. 2017); *Braver v. NorthStar Alarm Servs., LLC,* 2019 WL 3208651, at *15 (W.D. Okla. July 16, 2019). CHW respectfully submits that this Court should rule similarly and reject Count III on this basis alone.

*Cunningham v. Rapid Capital Funding, LLC/RCF,* 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) (dismissing on this basis).

Moreover, federal courts have recognized that plaintiffs hoping to bring TCPA DNC claims must allege sufficient non-conclusory facts showing that the subject phone number (*i.e.*, the phone number at which the plaintiff received the alleged calls) is ***actually used*** for "residential" purposes, or face dismissal under Rule 12(b)(6). *See, e.g., Kemen v. Cincinnati Bell Tel. Co., Inc*., 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) (citing *Cunningham v. Rapid Capital Funding,* 2017 WL 3574451, at *3 and *Hicks v. Alarm.com,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020)); *Smith v. Vision Solar LLC,* 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Cunningham v. Politi,* 2019 WL 2517085, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL 6198417 (Nov. 28, 2018). *See also Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing, noting that plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute"). In other words, mere naked conclusions will not suffice.

Courts have also held that whether someone qualifies as a "residential telephone subscriber" for a DNC claim generally depends on certain conditions, including that the subject number "is the ***primary means of reaching the individual at their residence***—that is, ***there is no other landline or phone at their residence*** which is instead the primary means of reaching them." *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added).

As applied here, Plaintiff merely still concludes that the subject numbers are "used primarily as residential and personal numbers"—and he now adds they "[are] residential telephone subscriber[s], [*sic*] as that term is defined at 47 C.F.R. § 64.2305[(d)[8]], as [those] telephone

---

[8] The FAC incorrectly cites Section 64.2305(c), which does not define "residential subscriber."

number[s] [are] subscribed to him personally rather than a business and [are] on a plan intended for individuals rather than businesses." Dkt. 23, ¶¶ 39, 40, 102. But these bald allegations are insufficient to state a DNC claim for several reasons. To begin, Plaintiff's conclusion that his numbers are "residential" is not a fact, just repeats the statutory text, and need not be accepted as true by this Court. *See Morgan*, 2018 WL 3580775, at *2. Alleging a number is used for "personal" calls likewise fails to plausibly allege "residential" use for purposes of a DNC claim. *See, e.g., Hicks*, 2020 WL 9261758, at *5 (dismissing under 12(b)(6) where plaintiff alleged number was "not associated with a business and is for personal use"). Moreover, despite CHW pointing this issue out in its previous dispositive motion, Plaintiff still does not allege there is ***no landline or other phone at his residence*** that is the primary means of reaching him there. *See, e.g., Mantha,* 2022 WL 325722, at *6.

Plaintiff's newly-added allegations referencing the definition of "residential subscriber" in the FCC's common carrier regulations in 47 C.F.R. § 64.2305(d) fare no better and actually undermine his DNC claim. On the one hand, that regulation is <u>not</u> part of the TCPA and, in any event, does not obviate Plaintiff's obligation to plead plausible facts demonstrating that those numbers are ***actually used*** for "residential" purposes—just being a number "***intended*** for individuals" to use is not enough. *See, e.g., Kemen*, 2023 WL 361136, at *5 (noting this definition but dismissing on this basis where plaintiff failed to plead such facts). On the other hand, Plaintiff does not allege any facts suggesting that his actual use of the subject phone numbers is consistent with that definition, either. To the contrary, the only "facts" Plaintiff alleges actually confirm that the phone numbers at issue are <u>not</u> "residential" but instead are non-cellular/landline numbers issued by "Number Barn"[9] whose ***sole purpose*** (as further discussed below) is to ***forward calls to other phones.*** *See* Dkt. 23, ¶¶ 42-45 & n.3. Therefore, under the vast weight of applicable authority above,

---

[9] *See* Dkt. 29, ¶ 44 (citing https://www.numberbarn.com/faqs). As this is cited in the FAC, the Court may consider this website here. *See Kushner v. Beverly Enter., Inc*., 317 F.3d 820, 831 (8th Cir. 2003).

Plaintiff has not plausibly alleged that he is a "residential telephone subscriber" under the TCPA. Accordingly, Counts II and III should be dismissed on these grounds <u>alone</u>.

**Second**, that Plaintiff still does not properly allege any actual facts suggesting that the subject numbers are actually used for "residential" purposes is not surprising. That is because he ***cannot***. Indeed, Plaintiff, who is a serial TCPA litigant, has provided sworn deposition testimony in other cases, which has been filed on the public CM/ECF docket, confirming that the phone numbers at issue in this case are indeed <u>not</u> "residential" phone numbers within the meaning of the TCPA. In fact, Plaintiff testified that: (a) the subject numbers are not his only phone line, and he has a separate landline number at his residence; (b) they do not ring his residential landline phone and instead are always forwarded to his cellular phone number; (c) he does not use them to make any calls; and (d) he uses them primarily (if not exclusively) to receive calls from would-be TCPA defendants who have the misfortune of calling him. *See* Declaration of A. Paul Heeringa, filed herewith, at ¶¶ 3-5, Exhibit A attached thereto at pp. 31-33, 35, 42, 44, 60-62 and Exhibit B attached thereto at pp. 115-116. Because this judicially-noticeable evidence (which this Court may properly consider under Rule 12(b)(6) when ruling on this Motion[10]) confirms that the subject phone numbers in this case are not used as "residential" numbers within the meaning of the TCPA, Counts II and III must be dismissed.

**Third**, as to Count III in particular, courts recognizing such a cause of action have also held that the TCPA's "internal" DNC regulations do <u>not</u> prohibit "actually calling an individual after the individual has requested placement on a[n] [internal] do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list."

---

[10] It is well accepted in this Circuit that courts may look to and take judicial notice of matters of public record (including court filings and transcripts) when ruling on a Rule 12(b)(6) motion pursuant to Rule 201 of the Federal Rules of Evidence. *See Dowden, Tr. of Est. of Huchingson v. Cornerstone Nat'l Ins. Co.,* 2019 WL 11274868, at *2 (W.D. Ark. May 16, 2019); *Howard v. Goodwin,* 2018 WL 6613796, at *1, n.1 (W.D. Ark. Dec. 17, 2018). CHW respectfully requests that this Court do so here.

*Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009)). In other words, a violation of the internal DNC regulations <u>only</u> stems from "the initiation of the phone call without having [first] implemented the minimum procedures" and <u>not</u> when an internal DNC request is not honored or for any other reason—*e.g.,* training employees, having or providing a copy of a written DNC policy, maintaining the internal DNC list, etc. *Charvat v. GVN Michigan, Inc.,* 561 F.3d at 632. In this regard, Plaintiff bases Count III primarily, if not entirely, on his allegations that he supposedly requested but did not receive a copy of CHW's internal policy. *See, e.g.,* Dkt. 23, ¶¶ 115-120. But that does not support an inference that no such policy ***existed*** or was not implemented ***prior to*** his receipt of the alleged calls; and it is insufficient to plead a claim under the TCPA's "internal" DNC regulations alone.

### 3.    Plaintiff Also Lacks "Prudential" Standing to Bring a DNC Claim.

For some of the same reasons above, the DNC claims in Counts II and III are subject to dismissal under Rule 12(b)(6) under the doctrine of "prudential" (a.k.a. "statutory") standing.

In contrast to Article III constitutional standing, prudential standing is not jurisdictional but rather concerns, among other things, whether the plaintiff is within the "zone of interests" that the law being invoked (*i.e.,* the TCPA's DNC provisions) was designed to protect. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 126, 129-132 (2014). Where (as here) a plaintiff lacks prudential standing, his complaint may be properly dismissed under Rule 12(b)(6) for failure to state a claim. *See, e.g., Scott v. St. Louis Univ. Hosp.,* 2022 WL 1211092, at *3–5 (E.D. Mo. Apr. 25, 2022)*.* On this front, the TCPA's DNC provisions apply only to "residential telephone subscribers," as noted above. Because Plaintiff does not properly allege he uses the subject numbers for "residential" purposes—and cannot credibly do so given his contradictory sworn testimony as discussed above—he is clearly not within the "zone of interests" that the TCPA's DNC provisions

were designed to protect. Therefore, Counts II and III should be dismissed on this additional basis.

**4.      Plaintiff Fails to Sufficiently Plead Direct TCPA Liability (All Counts).**

Additionally, it is well established that, "[f]or a person to 'make' [or 'initiate'] a call under [*any* provision of] the TCPA [and thus be subject to liability], the person must either (1) *directly make* the call, or (2) have an *agency relationship* with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). *See also Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) ("There are two potential theories of liability under the TCPA: (1) direct liability; and (2) vicarious liability.") (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)); *Sundermann v. Golden Circle Real Est. Grp., L.L.C.*, 2019 WL 7758601, at *2 (S.D. Iowa Oct. 29, 2019) (citing *Thomas* and *Abante Rooter*). As to the former theory, it is equally well accepted that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" telemarketing calls, and that to "initiate" in this context means to "physically place" the calls at issue. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574, 6583 ¶ 26 (2013)). *See also Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394-96 (D. Colo. 2014) (applying this rule to Section 227(c) of the TCPA).

Consequently, federal courts have routinely dismissed conclusory direct TCPA liability claims that, like Plaintiff's here, lack sufficient factual allegations demonstrating that the defendant actually "initiated" the phone calls or texts at issue in the sense of "***tak[ing] the steps necessary to physically place***" a call or send a text message. *Sheski*, 2020 WL 2474421, at *2-3 (quoting 28 FCC Rcd. at 6583 ¶ 26) (dismissing where plaintiff's allegations did not "lead to the inference that [defendant] sent or was directly involved in sending the text messages at issue") (emphasis added).

*See also Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (finding no direct liability where "there [were] no factual allegations that [d]efendant actually made the telephone call at issue," and holding that "[t]he mere conclusion that the [dialer] responsible for the call belonged to [d]efendant, without any factual allegations to support that conclusion, does not constitute a factual allegation that, if proven, would establish that [d]efendant 'made,' or 'physically placed' the call to [p]laintiff's cell phone"); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (dismissing CHW where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that [CHW] actually, physically initiated the telephone calls at issue" and where plaintiff merely concluded that the call originated from a number purportedly belonging to CHW without support).

In short, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call is not sufficient to allege a [direct] TCPA [liability] claim" and cannot survive dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). Put differently, for direct TCPA liability to attach here, Plaintiff must allege plausible facts suggesting ***CHW itself— not some unidentified third party—literally picked up the phone and physically called him <u>directly</u>***. *See Day v. Renny*, 2020 WL 13002519, at *6 (D. Neb. July 24, 2020) (dismissing). He did not.

As applied here, Plaintiff does not plausibly allege that CHW <u>itself</u> physically placed the calls at issue, as is indisputably required to plead direct TCPA liability at the pleadings stage under the weight of applicable federal authority. Instead, and at best, Plaintiff vaguely alleges—or, rather, concludes without sufficient factual support—that he received calls made "***by or on behalf of*** Defendant." Dkt. 23, ¶¶ 47-48 (emphasis added). *See also id*. ¶ 139 (alleging, *inter alia,* that "Defendant ***placed (or had placed on its behalf)***" telephone calls to Plaintiff and the putative class members) (emphasis added). Yet, Plaintiff also contradictorily suggests that some calls originated

13

from a ***different entity*** called "Complete Home Services" (and not CHW), and does not allege any facts supporting his bald conclusion that the at-issue calls originated "from Defendant's number." *Id*. ¶ 65. In fact, despite his amendments, Plaintiff still does not allege, for example, that CHW appeared on his caller ID or that he called any of those numbers back and reached CHW—both of which ***might*** support a direct liability claim. *See, e.g., Aaronson*, 2019 WL 8953349, at *2 (dismissing where the complaint did not contain "any facts to explain why plaintiff believes the identified phone number is owned by" CHW); *Smith v. Direct Building Supplies, LLC,* 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where the complaint lacked similar specific factual allegations about the phone numbers and callers at issue) (citing, *inter alia*, *Aaronson*).[11]

In other words, what Plaintiff alleges, at bottom, is that either CHW or countless unidentified third parties are possibly at fault, which federal courts have found to be "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). *See also Bank v. Philips Elecs. N. Am. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (alleging that the at-issue calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" was deemed "too conclusory to state a plausible claim" for direct TCPA liability). And not only do they fail to state a plausible direct TCPA liability claim, as the many directly on-point authorities cited above show, but also such obviously "[c]ontradictory allegations … are [also] inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal under Rule 12(b)(6), either. *Hernandez*

---

[11] At best, Plaintiff asserts that "at no point did Plaintiff receive a call from 'Complete Home Services' that connected him to any company *other* than Defendant" and concludes that this "would only make sense if Defendant was the caller (rather than a third-party lead generator)." Dkt. 23 ¶ 75 (emphasis original). But it utterly defies logic to assume, and would be patently unreasonable to infer, that CHW would use a different name to physically place calls on its own behalf, rather than use its own name. *See also Brown v. Medtronic, Inc.,* 628 F.3d 451, 461 (8th Cir. 2010) (holding that courts are not required to draw "unreasonable inferences" in a plaintiff's favor under Rule 12(b)(6)).

*v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015).

Further, courts have also recognized that merely ***transferring*** an initial call to a defendant—which is what Plaintiff suggests occurred here, at most (*e.g.,* Dkt. 23, ¶¶ 64-65, 73-74, 76)—does not support an inference that the defendant itself physically placed the ***initial*** call and, thus, does not suffice for direct TCPA liability purposes. *See, e.g., Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021); *Childress* 2018 WL 4684209, at *4. That is because ***receiving*** a call transfer from someone else is not the equivalent of physically making a call directly.

Moreover, despite what Plaintiff suggests, even a call allegedly offering the defendant's products, identifying the defendant by name, and/or made by a caller allegedly connected to or associated with the defendant in some fashion (*e.g.,* Dkt. 23, ¶¶ 55, 76) is not enough to plausibly allege direct TCPA liability, standing alone. *See, e.g., Abante Rooter,* 2018 WL 288055, at *4 (allegations plaintiff received a call from someone purportedly calling "on behalf of" the defendant and who identified defendant by name insufficient for direct liability); *Meeks v. Buffalo Wild Wings, Inc.,*2018 WL 1524067 , at *3–5 (N.D. Cal. Mar. 28, 2018) (dismissing on this basis, even though alleged texts identified defendant and contained a link to its website); *Hicks,* 2020 WL 9261758, at *5 (alleging that the caller provided defendant's number for call back purposes was not enough to plead direct TCPA liability, standing alone). In short, conclusory allegations regarding a call or voicemail purportedly being "from" or "on behalf" of CHW—which is all Plaintiff alleges (*see* Dkt. 23 ¶¶ 55-62)—does not confer direct TCPA liability on CHW as a matter of law, without more. *See, e.g., Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6-10 (E.D. Va. Nov. 12, 2020) (allegations caller expressly stated he/she was "associated with" CHW and identified CHW by name were insufficient for direct <u>or</u> vicarious TCPA liability, holding "this statement does not foreclose the possibility that a third party" made the call and "[t]hat lone link to the defendant is insufficient under

the *Iqbal* pleading standards"); *Hamilton v. El-Moussa*, 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (follow up email from defendant received after the call insufficient to plausibly allege direct liability). Thus, Plaintiff's FAC should also be dismissed on direct TCPA liability grounds.

### 5.      Plaintiff Fails to Plead Vicarious TCPA Liability (All Counts).

To the extent Plaintiff also asserts that CHW is vicariously liable under the TCPA for calls made by some unnamed third party acting on its "behalf," his claims still do not survive dismissal.

Indeed, vicarious liability cannot be casually pled, and courts uniformly require pleading sufficient facts before a defendant can be hauled into court for the alleged unlawful acts of a third party. Specifically, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017) (quoting *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100, 1105 (9th Cir. 2017) (citing Restatement (3d) of Agency § 1.01, )). *Accord Sundermann,* 2019 WL 7758601, at *2 (citing, *inter alia*, Restatement, § 1.01). This requires showing "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). However, "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks,* 2018 WL 1524067, at *5 (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)). In short, "[t]he existence of *some* connections between the defendant and the maker of the call will not suffice" to plausibly allege vicarious TCPA liability or to avoid dismissal on this basis. *Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *3 (emphasis in original).

Further, in the TCPA context, courts have widely recognized that vicarious liability cannot

attach without the "essential ingredient" of control over the caller and, more specifically, over its call campaign. *See, e.g., Jones v. Royal Admin. Svcs., Inc.,* 887 F.3d 443, 450 (9th Cir. 2018). *See also In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520 (N.D.W.Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("[I]n order to prove actual agency [for vicarious TCPA liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, ***the manner and means of the solicitation campaign that was conducted***.") (emphasis added); *Sundermann,* 2019 WL 7758601, at *3 (citing *Jones* with approval). In short, to avoid dismissal, Plaintiff "must allege ***some*** facts regarding the relationship between an alleged principal and agent" showing CHW had the right to control the calls in order to plead vicarious liability and "cannot simply allege general control in a vacuum." *Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015) (ruling similarly) (emphasis in original). *See also Aaronson*, 2019 WL 8953349, at *3 (citing *Melito*).

Thus, not only do courts routinely dismiss conclusory TCPA claims premised on vicarious liability at the pleading stage, but also the vast majority have held that failure to allege facts establishing agency is <u>fatal</u> to such claims. *See*, *e.g.*, *Sundermann,* 2019 WL 7758601, at *3 (dismissing TCPA case where plaintiff did not plead facts supporting agency theory); *Bank v. Vivint Solar, Inc.,* 2019 WL 1306064, at *4 (E.D.N.Y. Mar. 22, 2019) (dismissing where complaint lacked "allegations that [defendant] had the power to give 'interim instructions' to [the purported agent], or any non-conclusory suggestion of 'direction' or 'control' by [the defendant] of [the purported agent]") (citation omitted); *Sheski*, 2020 WL 2474421, at *4 (dismissing where "[t]here [we]re no factual allegations that support any sort [of] agency relationship outside of Plaintiff's conclusory statement that 'Defendants and their agents transmit text messages'"). Such is true in this case.

Here, Plaintiff does not—and indeed cannot—allege the essential ingredient of control and,

therefore, has failed to plead a plausible vicarious TCPA liability claim. Again, the FAC includes only vague references to third parties supposedly making calls on "behalf" of CHW. But it does <u>not</u> allege, for example, with any supporting facts that: (1) CHW had any relationship with any third party that initiated the calls/texts; (2) CHW exerted control over that third party or had the power to give interim instructions; (3) CHW supervised or controlled the calls/texts, let alone the overall call campaign, in any manner; (4) the third party was operating as part of CHW's business; (5) CHW had supplied that third party with tools and instrumentalities to send the texts or make the calls; or (6) CHW and that third party maintained a long-term or permanent working relationship. *See*, *e.g.*, *Jones*, 887 F.3d at 450 (analyzing these and other factors in holding that seller was not vicariously liability for telemarketer's alleged TCPA violations). *See also Monitronics*, 223 F. Supp. 3d at 520 (discussing similar factors). Consequently, to the extent Plaintiff seeks to hold CHW vicariously liable under the TCPA, his FAC falls far short of satisfying federal pleading requirements, as well.

In sum, because Plaintiff does not properly allege, with supporting facts, that CHW "physically" placed the calls at issue, or that some third party over whom CHW had "control" did, this Court should dismiss Plaintiff's FAC in its <u>entirety</u> under Rule 12(b)(6) on these bases, as well. *See, e.g.*, *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (dismissing, and ruling that "***[b]ecause [caller] identity is a necessary element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims***") (emphasis added).[12]

### B.      The FAC Should Be Dismissed With Prejudice.

Given that the FAC represents Plaintiff's second failed attempt to state a plausible TCPA

---

[12] In response to this Motion, Plaintiff may cite *Adam v. CHW Grp., Inc.,* 2021 WL 7285905 (N.D. Iowa Sept. 9, 2021), where a district court in this Circuit denied CHW's motion to dismiss on direct and vicarious liability grounds. However, that decision stands in stark contrast to the vast majority of case law on those topics (including *Aaronson* and *Scruggs*, *supra*, which were ***decided in CHW's favor on those bases***, and many others) and, respectfully, was wrongly-decided in several respects.

claim against CHW despite having had the benefit of CHW's initial motion to dismiss outlining all the fatal defects addressed above in detail prior to amending, Plaintiff's continued failure to adequately plead facts supporting his claims demonstrates further amendment would be futile and plainly warrants dismissal of the FAC with prejudice. *See, e.g., Milliman v. County of Stearns,* 2013 WL 5426049, at *16-17 (D. Minn. Sept. 26, 2013) (dismissing claims with prejudice where claimant "has had ample opportunities to properly assert specific facts to support [its] claims"); *Frame v. Cal-W. Reconveyance Corp.,* 2011 WL3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [the] First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions").[13]

   **C.    Alternatively, Plaintiff's Facially Uncertifiable Class Definitions and Other Improper Allegations Should Be Stricken Under Fed. R. Civ. P. 12(f) and/or 23.**

   Should the Court decide not to dismiss the FAC, it should still strike Plaintiff's facially-uncertifiable class allegations. Courts in this Circuit and elsewhere routinely find proposed classes to be uncertifiable and strike them at the pleadings stage, particularly in TCPA cases, where *inter alia*: (i) the proposed definitions are impermissibly "fail-safe"; and/or (ii) common questions of law or fact do not predominate and individualized determinations would be required. *See, e.g., Lindsay Transmission, LLC v. Office Depot, Inc.,* 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (striking proposed TCPA class as "fail-safe" at the pleadings stage); *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *2-9 (S.D. Ohio May 7, 2014) (same); *Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 4426908, at *2-3 (N.D. Cal. Aug. 22, 2016) (same); *Pepka v. Kohl's Dep't Stores, Inc.,* 2016 WL 8919460, at *1-5 (C.D. Cal. Dec. 21, 2016) (striking TCPA class allegations which "necessarily involve[d] individualized inquiries" and for being "impermissibl[y] fail-safe"); *Eldridge v. Cabela's*

---

[13] With Plaintiff's all of individual TCPA claims dismissed, the Court should also dismiss the class claims, as well. *See, e.g., Burks v. Arvest Bank,* 2006 WL 3512478, at *2 (E.D. Ark. Dec. 6, 2006).

*Inc.*, 2017 WL 4364205, at *7-11 (W.D. Ky. Sept. 29, 2017) (striking proposed TCPA "revocation" class in part because individualized consent determinations were needed). As shown below, Plaintiff's faulty proposed classes (*see* Dkt. 23, ¶ 139) fit neatly into these categories and, therefore, should be stricken from the FAC under Rules 12(f) and 23, if the Court does not dismiss it outright.

### 1.    Plaintiff's Proposed Classes Are Impermissibly "Fail-Safe."

For starters, it is readily apparent that Plaintiff's proposed classes are all impermissibly "fail-safe." A proposed class definition is impermissibly fail-safe in violation of Rule 23 where, as here, the Court must make a determination on the merits of the class members' individual claims to determine membership. *E.g., Sauter,* 2014 WL 1814076, at *4; *Lindsay*, 2013 WL 275568, at *4. Such a proposed class definition constitutes an "independent ground for denying class certification" because it "shields the putative class members from receiving an adverse judgment" and "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir. 2011). *Accord Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (ruling similarly).

Thus, federal courts routinely strike improper proposed class definitions at the pleadings stage in TCPA cases on this basis. *See, e.g., Sauter,* 2014 WL 1814076, at *8-9 (striking proposed class "defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS"); *Pepka*, 2016 WL 8919460, at *4 (granting motion to strike Section 227(b) class allegations case on fail-safe grounds); *Dixon*, 2016 WL 4426908, at *2-3 (same); *Lindsay Transmission, LLC,* 2013 WL 275568, at *4 (same); *Boyer v. Diversified Consultants, Inc.,* 306 F.R.D. 536, 540 (E.D. Mich. 2015) (holding that TCPA class composed of people who did not provide "prior express consent" to be contacted was an improper fail-safe class); *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623-26

(E.D. Pa. 2015) (striking proposed TCPA class definition with "consent" in the definition); *Martinez v. TD Bank USA*, 2017 WL 2829601, at \*12 (D.N.J. June 30, 2017) (same); *Bryant v. King's Creek Plantation, L.L.C.*, 2020 WL 6876292, at \*3–4 (E.D. Va. June 22, 2020) (striking proposed DNC class on fail-safe grounds, noting "[w]hen plaintiffs define a class that explicitly includes the lack of members' consent to receive the calls, a court is unable to establish member-ship of the class until the merits of each member's TCPA claim (i.e., that each member did not give consent) are determined; such a class must be deemed a fail-safe class."). This Court should rule similarly.

As applied here, all four of Plaintiff's proposed classes (*see* Dkt. 23, ¶ 139) are impermissibly fail-safe because membership in each depends on the merits of the putative class members' underlying claims. For example, each proposed class is defined to include all persons in the United States who were "non-customers" of CHW and who received a call (1) regarding CHW's "home warranty services" (*i.e.*, whether they constituted an "advertisement" or "telemarketing" for purposes of a Section 227(b) claim[14] or were a "telephone solicitation" or for "telemarketing purposes" for purposes of a Section 227(c) claim[15] as defined by the TCPA); and (2) that was placed either by CHW or "on its behalf" (*i.e.,* by an "agent," for vicarious liability purposes). Further, Plaintiff's proposed "Prerecord Subclass" would include only persons who did <u>not</u> provide their "consent" (specifically, "prior express written consent") under the TCPA to receive "artificial or prerecorded voice" calls.[16] And Plaintiff's "DNC Class" is limited only to persons whose numbers were "on the National Do-Not-Call Registry at the time of the [alleged] calls" (*i.e.*, whether they are a "residential telephone subscriber" who "registered his or her [own] telephone number" on the National DNC

---

[14] *See* 47 C.F.R. §§ 64.1200(a)(2), (f)(1) & (f)(13).
[15] *See* 47 C.F.R. §§ 64.1200(c)(2), (d), (f)(13) & (f)(15).
[16] *See* 47 C.F.R. §§ 64.1200(a)(2) & (f)(9).

Registry, as proscribed).[17] In all, each of these issues is undoubtedly a merits-based inquiry going directly to the heart of the underlying TCPA claims in this case, as demonstrated above; and there is no objective way for the Court to determine who is a class member given Plaintiff's proposed definitions as pleaded. Therefore, all of Plaintiff's proposed classes are impermissibly "fail-safe."

### 2.    Common Questions of Law and Fact Do Not Predominate.

Plaintiff's proposed classes would require the Court to make individualized determinations on the issue of consent, among others, which makes them impermissibly fail-safe as discussed above. However, this also shows that common questions of law and fact would <u>not</u> predominate, as required by Rule 23(b)(3). Under that rule, "common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 470 (N.D. Cal. 2014) (quoting *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (*abrogated on other grounds by Microsoft v. Baker*, 137 S. Ct. 1702 (2017))). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (a common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). Predominance is lacking where the issues raised are "unique to each class member" and not subject to generalized proof. *See In re Teflon Prod. Liab. Litig.*, 254 F.R.D. 354, 369 (S.D. Iowa 2008).

Along those lines, courts often deny class certification in TCPA cases on predominance grounds where (as here) individualized determinations of "consent" or "revocation" of consent (among other issues) would be needed. *E.g., Ung v. Universal Accept. Corp.*, 319 F.R.D. 537, 540–

---

[17] *See* 47 C.F.R. § 64.1200(c)(2). *See also Rombough v. Robert D. Smith Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022) (thoroughly analyzing Section 227(c), dismissing **with prejudice** under Rule 12(b)(6), and holding that this provision "does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry" and that this "plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else").

41 (D. Minn. 2017); *Sandusky Wellness Ctr., LLC v. ASD Spec. Healthcare, Inc.,* 863 F.3d 460, 468 (6th Cir. 2017); *Visser v. Caribbean Cruise Line, Inc*., 2020 WL 415845, at *5 (W.D. Mich. Jan. 27, 2020); *Saulsberry v. Meridian Fin. Servs., Inc*., 2016 WL 3456939, at *11 (C.D. Cal. Apr. 14, 2016); *Revitch v. Citibank*, 2019 WL 1903247, at *4 (N.D. Cal. Apr. 28, 2019); *see also Trenz v. On-Line Admins., Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying, noting "[t]he necessity of individual inquiries is a ***clear bar*** to class certification in TCPA matters") (collecting cases, emphasis added). Courts also often strike class allegations or grant deny certification at the pleadings stage, in TCPA cases and others, where individualized determinations of "consent" are needed. *E.g., Eldridge*, 2017 WL 4364205, at *7–11; *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017); *Pepka*, 2016 WL 8919460, at *4; *Lindsay,* 2013 WL 275568, at *5. Indeed, "the predominant issue of fact [in TCPA cases] is undoubtedly one of ***individual*** consent." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (emphasis in original).

Here, it is apparent from the face of the FAC that common questions of law and fact do not predominate and that individualized inquiries would be required. Again, as noted above, Plaintiff's proposed "Prerecord Subclass" class would include only persons who did not provide their "consent" under the TCPA. Similarly, to qualify as a "telephone solicitation" as required for a DNC violation, and thus be a member of either of Plaintiff's two proposed DNC classes (*i.e.*, "DNC Class" and "Policy Class"), the recipient must not have provided their "prior express invitation or permission" (*i.e.,* their consent) to the caller, among other things. *See* 47 U.S.C. §227(c)(5), 47 C.F.R. §§ 64.1200(c)(2)(ii) & (f)(15). Yet, as discussed above (*see* pp. 12-19), Plaintiff has also suggested that countless unidentified third parties could have been involved in initiating the alleged calls and texts to Plaintiff and the putative class members "on behalf" of CHW. Assuming *arguendo* that Plaintiff is correct, how these many different third parties may have ***obtained*** "consent" or "invitation" or

"permission" or whether they used an "artificial" or "prerecorded" voice within the meaning of the TCPA may vary widely depending on the circumstances and parties involved.[18] The same is true for how the putative class members may have ***provided*** their "consent" to those different third parties or even the same party. The context and circumstances under which consumers might ***revoke*** "consent" to the same entity or different entities, or whether their revocation was "clear" and "unambiguous" enough to be legally effective as a matter of law,[19] can naturally vary by individual and entity, too. The same would also be true as to whether the class members have a "residential" number for the two DNC classes, and Plaintiff's own pled allegations show that the "uses" of a phone number can vary substantially by individual too. And determining whether a "number did not belong to the person for whom the calls were ***intended***" for Plaintiff's "Prerecord Subclass" and "DNC Class" would unquestionably require individualized determinations of fact by this Court to figure out.

In short, the foregoing are not common questions of law or fact that can be resolved by generalized proof across the entire class in a single adjudication. Rather, they would necessitate countless individualized factual and legal inquires on those undoubtedly critical case-dispositive issues at the minimum, among others.[20] Thus, Plaintiff's proposed classes should be completely stricken on this additional basis, as it is apparent from the face of the FAC that he cannot meet Rule 23(b)(3). And because individualized determinations will undoubtedly be required on some or all of these critical issues no matter what further amendments Plaintiff could make, leave to amend should not be granted. *See, e.g., Barrett v. ADT Corp.,* 2016 WL 865672, at *5 (S.D. Ohio Mar. 7, 2016).[21]

---

[18] The latter also impacts Plaintiff's proposed "Prerecord Class."

[19] *See, e.g., Barnett v. Bank of Am., N.A.,* 2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021) (discussing standards for properly revoking consent under the TCPA).

[20] *Lindsay,* 2013 WL 275568, at *5 (a "prior business relationship" is an individualized issue).

[21] With Plaintiff's class definitions appropriately stricken for the myriad reasons above, his remaining class-related allegations in the FAC (*e.g.,* Dkt. 23 ¶¶ 140-153) are immaterial and thus should also be stricken. *See Blount v. D. Canale Beverages, Inc.,* 2003 WL 22890339, at *8 (W.D. Tenn. July 23, 2003) (striking class allegations under Rule 12(f) as "immaterial" after dismissal of underlying claims).

### 3. The Complaint Contains "Superfluous Historical" Allegations.

Lastly, courts have also recognized that "'[s]uperfluous historical allegations are a proper subject of a motion to strike.'" *Hicks,* 2020 WL 9261758, at *5 (granting motion, quoting *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, at *5 (S.D. Cal. Jul. 27, 2007)). *See also Gallegos v. Roman Catholic Archbishop of San Francisco*, 2016 WL 3162203, at *5 (N.D. Cal. June 7, 2016) (striking irrelevant references "involving a different plaintiff, and different underlying events"). The same is true for allegation about unauthenticated and unadjudicated complaints in other cases, third party opinions about the legality of the conduct in a case, or anonymous internet commentary. *See, e.g., In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.,* 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013); *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011); *Survivor Prods. LLC v. Fox Broad. Co.,* 2001 WL 35829267, at *3–4 (C.D. Cal. June 12, 2001); *McReynolds v. Lowe's Cos. Inc.,* 2008 WL 5234047, at *7 (D. Idaho Dec. 12, 2008); *Wiseberg v. Toyota Motor Corp.,* 2012 WL 1108542, at *13 (D.N.J. Mar. 30, 2012).[22]

Here, Plaintiff attempts to interject such immaterial, impertinent, and unduly prejudicial allegations that have nothing to do with *his* claims against CHW in *this* case. *See, e.g.,* Dkt. 23, ¶¶ 122-125 (referring to anonymous posts on third-party websites and unadjudicated claims against CHW). Should any part of the FAC somehow survive dismissal, therefore, the Court should also strike those improper "superfluous historical" allegations under Rule 12(f). *See Hicks*, *supra*.

## IV.  <u>CONCLUSION</u>

For these reasons, this Court should dismiss Plaintiff's FAC with prejudice, or alternatively strike the improper allegations noted above, along with granting all other just and proper relief.

---

[22] Indeed, courts have often opined on the lack of efficacy of such anonymous internet commentary. *See, e.g.*, *In re Easysaver Rewards Litig.,* 737 F. Supp. 2d 1159, 1168 (S.D. Cal. 2010); *Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.,* 2013 WL 1196948, at *13 (W.D. Wash. Mar. 25, 2013).

Dated: January 30, 2023                    Respectfully submitted,


                                           By: /s/ A. Paul Heeringa
                                           A. Paul Heeringa, Admitted *Pro Hac Vice*
                                           **MANATT, PHELPS & PHILLIPS, LLP**
                                           151 North Franklin Street, Ste. 2600
                                           Chicago, IL 60606
                                           (312) 529-6308 - Telephone
                                           (312) 529-6315 - Facsimile
                                           pheeringa@manatt.com

                                           Emily A. Neal, Ark. Bar No. 2003087
                                           Conner Eldridge, Ark. Bar No. 2003155
                                           **ELDRIDGE BROOKS, PLLC**
                                           5100 West JB Hunt Drive, Ste. 840
                                           Rogers, AR 72758
                                           4795537678 - Telephone
                                           4795537553 - Facsimile
                                           emily@eldridgebrooks.com
                                           conner@eldridgebrooks.com

                                           *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on January 30, 2023, which served same electronically upon all counsel of record.

<u>/s/ A. Paul Heeringa</u>