**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| **SAM KATZ**, on behalf of himself and all others similarly situated,<br><br>                            Plaintiff,<br>v.<br><br>**CHW GROUP, INC. d/b/a CHOICE HOME WARRANY,**<br><br>                        Defendant. | **Case No. 22-cv-5198** |

**Plaintiff's Opposition to Defendant's Motion to Dismiss and Motion to Strike**

Contents

I.    Plaintiff states a claim for a violation of § 227(b). ........................................................ 1

  a.    Plaintiff pleads that Defendant initiated the calls............................................................ 2
  b.    Plaintiff pleads that the calls were telemarketing............................................................ 6
  c.    Plaintiff pleads that the calls were made using an artificial or prerecorded voice........... 6
  d.    Plaintiff pleads that Defendant lacked prior express written consent. ........................... 7

II.   Plaintiff states a claim for a violation of § 227(c) through 47 C.F.R. § 64.1200(c). ....... 8
  a.    Section 64.1200(c) ........................................................................................................ 8
  b.    Section 64.1200(d). ...................................................................................................... 10

III.  Section 227(c)'s applicability to "residential telephone subscribers". ......................... 13
  a.    "Residential telephone subscriber" requires only that the subscriber number at issue is
        not on a business plan. ................................................................................................. 13
  b.    Defendant's suggested limitations on who qualifies as a "residential telephone
        subscriber" are arbitrary, nonsensical, and unworkable. ............................................. 16
  c.    Nothing about Defendant's ad hominem attacks on Plaintiff indicate his number is not
        residential................................................................................................................... 18
  d.    Standing........................................................................................................................ 18

IV.   Plaintiff's class definitions and allegations are proper. ................................................ 19
  a.    Plaintiff's proposed class definitions are not fail-safe .................................................. 19
  b.    Predominance ............................................................................................................... 22
  c.    Superfluous historical allegations ................................................................................ 24

CONCLUSION................................................................................................................... 24

On July 18, 2022, Plaintiff Katz filed a putative class action complaint under the Telephone Consumer Protection Act ("TCPA") in the Circuit Court of Benton County, Arkansas. Therein, Plaintiff pled three causes of action: the first, that Defendant placed prerecorded telemarketing calls to him without his consent in violation of 47 U.S.C. § 227(b)(1)(A)(iii); the second, that Defendant placed telephone solicitations to his telephone number on the National Do-Not-Call Registry in violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c); and the third, that Defendant placed telemarketing calls to him in the absence of policies and procedures for maintaining an internal do-not-call list and honoring do-not-call requests, in violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d). *See* State Court Compl., Dkt. 3.

On December 2, 2022, Defendant moved to dismiss Plaintiff's complaint. [Dkts. 19-20.] On January 16, 2023, Plaintiff filed an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1). [Dkt. 23] ("FAC"). On January 30, Defendant moved to dismiss the Amended Complaint and to strike the proposed class definitions and certain allegation. [Dkt. 25.] For the reasons set forth below, Defendant's Motion should be denied in full.

## DISCUSSION

### I.     Plaintiff states a claim for a violation of § 227(b).

To state a claim for a violation of § 227(b), Plaintiff must plead that 1) Defendant initiated 2) a call 3) using an artificial or prerecorded voice 4) to Plaintiff's telephone number.[1] *Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1005 (D. Minn. 2018). Consent is an affirmative defenses on which Defendant bears the burden. *See, e.g. Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 591 (M.D. Tenn. 2018).

---

[1] Plaintiff's § 227(b) claims are *only* for the prerecorded/artificial voice calls made to him. Non-prerecorded calls are actionable through Plaintiff's § 227(c) claims.

Defendant's only argument unique to this cause of action is whether Plaintiff properly pled the use of a prerecorded or artificial voice. Nevertheless, each issue, including consent, will be discussed.

**a. Plaintiff pleads that Defendant initiated the calls.**

Plaintiff pleads Defendant was the caller. [FAC ¶¶ 53-76.] In support, he pleads that the calls and texts identified Defendant itself as the caller on several occasions. [*Id.* at ¶¶ 55, 57-58, 61-62.] Defendant also occasionally sent emails to Plaintiff at the exact same time it placed the calls. [*Id.* at ¶¶ 69-72.] Plaintiff also pleads that on home warranty calls on which the caller did *not* directly identify itself as Defendant, the calls always connected to Defendant in the end and appeared linked to Defendant's internal systems. [*Id.* at ¶¶ 73-76.] These allegations are sufficient at this stage.

      i.   <u>Direct Liability</u>

Defendant spends a significant portion of its brief arguing that Plaintiff has failed to plead either direct or vicarious liability.[2] [Def.'s Brief, Dkt. 26, pp. 12-18.] Defendant's arguments are mistaken and its citations are inapposite. First, Defendant contends that "direct liability under the TCPA applies only to persons or entities that … physically place the calls at issue." [Def.'s Brief, p. 12.] This is incorrect. While the FCC held that, generally, a "person or entity initiates a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities … that might merely have some role, however minor, in the casual chain", it also found that "one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it—by giving the third party

---

[2] This is relevant to all claims, though only discussed in this section.

specific and comprehensive instructions as to timing and the manner of the call, for example." 28 FCC Rcd. 6574, ¶¶ 26-27. The FCC's order upon which Defendant's argument depends was intended only to preclude an interpretation that "a seller always initiates a call that is made by a third party on its behalf[.]" *Id.* at ¶ 27.

Second, Defendant's arguments do not address Plaintiff's actual allegations, which are that the calls were from Defendant directly. Plaintiff specifically pleads that "Defendant identified itself by name on several of the calls to Plaintiff." [FAC ¶ 54.] On one such call, from telephone number ending 3508, the prerecorded message began "This call is being placed on behalf of Choice Home Warranty for telemarketing purposes…" [*Id.* at ¶ 56.] Plaintiff received several additional calls from this 3508 number, several of which also identified the call as coming from Defendant. [*Id.* at ¶ 56.] Plaintiff further alleges a call from telephone number ending 1257 in which the live caller identified themself as "Richard Kelly from Choice Home Warranty…" [*Id.* at ¶ 57.] Plaintiff received an additional prerecorded call from this same number in which the message stated, in part, "Hey, this is Jen from Choice Home Warranty…" [*Id.* at ¶ 58.] The same occurred with calls from telephone number ending 1028, and a text from a number ending 1870. [*Id.* at ¶¶ 61-62.]

At best, Defendant's arguments regarding direct liability apply only to the "Complete Home Services" calls which, because of the fake name, at least provide Defendant with a colorable basis for arguing that those calls were made by a third party.[3] But Plaintiff pleads that these

---

[3] This is likely not the case. Though Defendant claims that it "utterly defies logic" to assume it would use a different name to place calls on its own behalf, Defendant is very familiar with the TCPA, as it has been sued more than a dozen times for TCPA violations. As such, it is certainly aware of techniques to make it more difficult to hold it accountable (e.g. using fictitious and untraceable names). An internet search for a "Complete Home Services" that offers home warranty products turns up nothing that does not also relate to Defendant here. Further, a publicly available recording of a call found at https://www.nomorobo.com/lookup/201-277-0981 indicates that when a "Complete Home Services" call is "transferred" to Defendant, Defendant's employee outright states that Defendant is the one "reaching out"—language that would make no sense if Defendant were not the caller.

"Complete Home Services" calls were actually from Defendant, as the artificial voice exclusively transferred its calls to Choice Home Warranty. Upon transfer, Defendant knew Plaintiff's information, including email address, which it could not have known had it not been the actual caller, or had the caller not been directly linked with Defendant's systems. [*Id.* at ¶¶ 66-72.] Accordingly, Defendant was either the caller or was so intertwined with the calls as to be held directly liable just the same. 28 FCC Rcd. 6574, ¶¶ 26-27.

Plaintiff's allegations far exceed the allegations found to be deficient in Defendant's cited cases. In *Sheski*, the court dismissed a complaint against Shopify alleging that Shopify was directly liable for texts from a third-party retailer because Shopify provided the checkout platform to that third-party retailer. 2020 U.S. Dist. LEXIS 84433 (N.D. Cal., May 13, 2020). In *Childress*, the plaintiff alleged that the caller used a name other than defendant's and then, without explanation, leapt to the conclusion that those calls were made by defendant. *Childress v. Liberty Mut. Ins. Co.*, 2018 U.S. Dist. LEXIS 167281, *8 (D.N.M. Sept. 28, 2018). In *Aaronson*, the court dismissed a complaint against the Defendant here because the complaint pled no facts "such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls that would tend to identify defendant as the party that" made the calls. 2019 U.S. Dist. LEXIS 231433, *4 (E.D. Va. Apr. 15, 2019). In *Abante*, the court dismissed a direct liability claim where the only calls made were alleged to be made "on behalf of" the defendant. None of these facts are analogous.[4] Plaintiff pleads that Defendant identified itself as the caller on multiple occasions and that the calls were all offering for sale Defendant's services. [FAC, ¶ 57 (caller identified

---

[4] Another court recently, in detail, rejected Defendant's arguments citing these and other cases in yet another TCPA case against it. *Atkinson v. Choice Home Warranty*, 2023 U.S. Dist. LEXIS 5570, *7-10 (D.N.J. Jan. 11, 2023).

themselves as Richard Kelly "*from* Choice Home Warranty…"; ¶ 58 (call stating "this is Jen *with* Choice Home Warranty"); ¶¶ 61-62 (same).]

    ii.   <u>Vicarious Liability</u>

Plaintiff pleads that Defendant is directly liable for *all* the calls. *See Atkinson v. Choice Home Warranty*, 2023 U.S. Dist. LEXIS 5570, *10-11 (D.N.J. Jan. 11, 2023) (not considering Defendant's vicarious liability arguments when plaintiff alleged Defendant was directly liable for all calls). Defendant's issue, and why it believes vicarious liability to be implicated, is that Plaintiff's complaint occasionally uses "had made on its behalf" or "or on behalf of" rather than simply "by." This grammatical analysis cannot defeat the plain allegations of Plaintiff's complaint.

Nevertheless, if Plaintiff's references to "on behalf of" implicates vicarious liability, Plaintiff's complaint pleads, at minimum, apparent authority. In the context of the TCPA,

> [a]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote, or reviewed the outside entity's telemarketing scripts.

28 F.C.C. Rcd. 6574, ¶ 46. For the calls from numbers that a caller did not identify as belonging to Defendant, Plaintiff pleads that *all* such calls were transferred to Defendant. [FAC, ¶¶ 65-76.] More than that, Plaintiff pleads that upon receipt of these transfers—assuming it was not actually Defendant fabricating a transfer—Defendant had access to Plaintiff's information, including an email address which had not been provided to Defendant on the particular call resulting in an email from Defendant. [*Id.* at ¶¶ 70-72.] This means either that Defendant itself was the caller and was using information it had previously obtained, *or* the third-party caller obtained that information

and was able to "enter consumer information into the seller's sales or customer systems". Plaintiff also pleads that within a minute of the July 6 "Complete Home Services" call, Defendant's employee to whom Plaintiff was transferred sent him an email thanking him for his interest in Choice Home Warranty and advertising Defendant's services. [FAC, ¶¶ 65- 71.]

This is analogous to *Smith v. Vision Solar LLC*, where the court found agency sufficiently pled because the "purported principal followed-up with the plaintiff after she provided information to the telemarketer, thereby demonstrating that the principal knew of and benefited from the marketing calls." 2020 U.S. Dist. LEXIS 229989, *9-10 (E.D. Pa. Dec. 8, 2020); *see also Hodgin v. Parker Waichman LLP*, 2015 U.S. Dist. LEXIS 192262 (W.D.K.Y. Sept. 30, 2015).

This is sufficient to proceed to discovery on vicarious liability, particularly since "[w]ithout discovery it is impossible for plaintiffs to know the nature of an alleged relationship between the purported principal and agent." *Smith*, 2020 U.S. Dist. LEXIS at *10 (citing *Hodgin*); 28 FCC Rcd. 6574, ¶ 24 ("[C]onsumers may acquire [evidence of agency relationships] through discovery, if they are not independently privy to such information.").

### b. Plaintiff pleads that the calls were telemarketing.

"Telemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). Purpose controls, even if the call or text is devoid of telemarketing content. *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820 (8th Cir. 2015). Plaintiff specifically pleads that both the content and purpose of Defendant's calls were to sell Defendant's home warranty services. [FAC, ¶¶ 53-77.] This is sufficient at this stage.

### c. Plaintiff pleads that the calls were made using an artificial or prerecorded voice.

Plaintiff specifically pleads that he received from Defendant multiple calls using an artificial or prerecorded voice. [FAC, ¶¶ 49, 55, 58, 59-60, 63-66, 73-74, 80.] Plaintiff pleads that he was aware that these calls used an artificial or prerecorded voice "because of his familiarity with normal human interaction, intonation, manners of speaking, and his inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter." [Id. at ¶ 80.] It is difficult to imagine what more can be pled on this point. Even one of Defendant's few "supporting" cases agrees. *Johansen v. Vivant, Inc.*, 2012 U.S. Dist. LEXIS 178558, *10 (N.D. Ill. Dec. 18, 2012). *Johansen* specifically held that a plaintiff can plead, e.g. "the robotic sound of the voice on the other line [or] the lack of human response when he attempted to have a conversation with the 'person' calling him"—exactly as Plaintiff did here. *See also Padilla v. Whetstone Partners*, LLC, 2014 U.S. Dist. LEXIS 95308, *5-6 (S.D. Fla. July 14, 2014).

To argue otherwise, Defendant claims, with no support, that it is improper for Plaintiff to allege that the voices were "artificial or prerecorded", and instead he must choose one. The statute does not require such a choice, and forcing a Plaintiff to plead so precisely on this technical distinction is patently unreasonable. As Defendant acknowledges, courts do not expect plaintiffs to plead "technical specifications" about the delivery mechanism of a prerecorded or artificial voice call. Def.'s Brief, p. 5. With that said, Plaintiff not only provides his own definitions of "prerecorded" and "artificial" in the FAC, ¶ 64 n.4, but goes beyond that which is required and, with few exceptions, attempts to differentiate between such terms throughout. *Compare* FAC ¶ 58 *with* FAC ¶¶ 65-66. Plaintiff's allegations are more than sufficient at this stage.

### d.  Plaintiff pleads that Defendant lacked prior express written consent.

Though consent this is an affirmative defense, Plaintiff pleads that he never provided Defendant with any consent to contact him by phone. [FAC ¶¶ 46, 82.]

**II.      Plaintiff states a claim for a violation of § 227(c) through 47 C.F.R. § 64.1200(c).**

To state a claim for a violation of § 227(c), Plaintiff must plead that he received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under § 227(c). *See Hand v. Beach Entm't KC*, 456 F. Supp. 3d, 1099, 1119 (W.D. Mo. 2020). The two regulations prescribed thereunder are found at 47 C.F.R. § 64.1200(c) (relating to the National Do-Not-Call Registry) and § 64.1200(d) (relating to internal do-not-call policies and procedures). These will be discussed separately.

**a.  Section 64.1200(c)**

Section 64.1200(c) prohibits a person or entity from initiating any "telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone on the national do-not-call registry[.]" These regulations are equipment/technology agnostic

Combining § 227(c) and § 64.1200(c), Plaintiff must show that 1) in a 12-month period, he received more than one 2) telephone solicitation 3) which Defendant or someone on its behalf initiated 4) to a residential subscriber on the National Do-Not-Call Registry.

    i.   <u>Plaintiff pleads that the calls were "telephone solicitations."</u>

"Telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(15). Excluded are calls made to any person with that person's prior express invitation or to any person with whom the caller has an established business relationship. Other than these exceptions, this definition is identical to that for telemarketing. Plaintiff pled that these calls were telemarketing and that he never provided Defendant with any form of consent nor has he done business with Defendant. [FAC ¶¶ 46, 77,

81-83, 145.] Accordingly, there is no "prior express invitation" or "established business relationship", making the calls "telephone solicitations."

      ii.    <u>Plaintiff pleads that he received more than one call in a 12-month period.</u>

Plaintiff pleads he received at least 12 calls from Defendant between August 20, 2021 and the lawsuit's filing on July 18, 2022 to his telephone number ending in 4999. [FAC ¶ 48.]

      iii.    <u>Plaintiff pleads that his telephone number was on the National Do-Not-Call Registry at the time of the calls.</u>

Plaintiff alleges that his telephone number ending in 4999 was on the National Do-Not-Call Registry at the time of the calls. [FAC ¶¶ 37-38.] This is sufficient at this stage.

Plaintiff would be remiss, however, if he failed to address Defendant's argument that only the individual who placed their number on the Do-Not-Call Registry can state a claim. [Def.'s Brief, p. 22, n. 17.] While this was pled, FAC ¶ 38, Defendant is incorrect and this argument has been rejected by most courts to have considered it. For example, in *Krakauer v. Dish Network, L.L.C.*, the Fourth Circuit rejected the defendant's argument that "the private right of action in § 227(c)(5) must be limited to 'subscribers' because it is telephone subscribers who can list their phone numbers on the national Do-Not-Call registry. 925 F.3d 643, 656-57 (4th Cir. 2019). The court wrote:

> Dish argues that the private right of action in § 227(c)(5) must be limited to "subscribers" because it is telephone subscribers who can list their phone numbers on the national Do-Not-Call registry. See 47 C.F.R. § 64.1200(c)(2). In the face of clear text pointing the other way, however, we see no reason that the private right of action should be limited only to those who can list their numbers on the registry. <u>If a wife, as the subscriber, lists a home telephone number on the Do-Not-Call registry, but her husband happens to be the one who receives the improper calls, the law has still been violated. Both the wife and the husband can suffer the harm that Congress sought to deter, and both are "persons" able to bring a claim under § 227(c)(5).</u>

*Id.* at 657 (emphasis added); *see also, e.g.*, *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015); 30 FCC Rcd. 7961, 8001 ¶ 74 (2015); *Ammons*, 326 F. Supp. 3d at 590 ("[P]ersuasive authority holds that 'the intended recipient *need not* have answered the calls. *The act of placing the calls triggers the statute*."); *Chinitz v. Intero Real Estate Servs.*, 2020 U.S. Dist. LEXIS 247921, *46 (N.D. Cal. July 22, 2020).

### b. Section 64.1200(d).

Section 64.1200(d) requires that companies implement minimum policies and procedures for maintaining an internal do-not-call list prior to making any telemarketing call. 47 C.F.R. § 64.1200(d). The rule, as currently codified, states:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber[5] unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

These procedures "must meet" minimum standards. Companies making telemarketing calls must maintain a written policy, available upon demand, for maintaining a do-not-call list; train and inform personnel engaged in telemarketing on the existence and use of the do-not-call list; record do-not-call requests when made; and honor do-not-call requests. *Id.* at (d)(1), (2) , (3) , (6). Telemarketers are "ultimately responsible … and fully accountable for any problems arising in the maintenance and accuracy of the list." *TCPA Implementation Order*, 7 FCC Rcd. at 8766 ¶ 24. "[I]f [the procedures in 47 C.F.R. § 64.1200(d)] are not implemented, each call made by a telemarketer constitutes a violation of the TCPA and the FCC regulations[.]" *Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582, 587 (N.D. Ga. 2017); *see also, e.g.*, *Allard v. SCI Direct, Inc.*,

---

[5] In 2003, this was expanded to include calls to cellular telephones. 47 C.F.R. § 64.1200(e).

2017 U.S. Dist. LEXIS 107106, *14-17 (M.D. Ten. July 10, 2017). It does not matter here whether Defendant relied on third parties to do its marketing, as "the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request." 47 C.F.R. § 64.1200(d)(3).

For Plaintiff to prevail on a claim under § 64.1200(d), he must show 1) he received from or on behalf of Defendant 2) more than one call in a 12-month period 3) that constitutes telemarketing. Plaintiff has pled each of these elements. Whether Defendant had the required policies and procedures in place is an affirmative defense, given the introduction of those requirements with an "unless" clause, which is considered to be "telltale language … indicative of an affirmative defense." *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015). For thoroughness, however, Plaintiff will discuss these elements as if he has the burden.

      i.   <u>Plaintiff pleads that the calls were telemarketing.</u>

As discussed previously, Plaintiff specifically pleads that both the content and purpose of Defendant's calls were to sell Defendant's home warranty services. [FAC, ¶¶ 53-77.]

      ii.   <u>Plaintiff pleads he received more than one call from Defendant in a 12-month period.</u>

Plaintiff pleads he received 48 telemarketing calls from Defendant on his telephone number ending in 1001 between February 21, 2020 and August 27, 2020, and at least 12 telemarketing calls from Defendant between August 20, 2021 and July 18, 2022 on his number ending in 4999. [FAC ¶¶ 47-48.]

      iii.   <u>Plaintiff pleads Defendant's lack of policies and procedures.</u>

Plaintiff specifically pleads that Defendant lacks the policies and procedures required under the statute. Plaintiff alleges that he requested a copy of Defendant's written do-not-call policy on July 6, 2020 and it was not provided. [FAC ¶¶ 65-71, 109-110.] Plaintiff also points to another

complaint in which the caller requested Defendant's do-not-call policy and also did not receive it. [*Id.* at ¶¶ 110-118.] Accordingly, Plaintiff pleads that Defendant did not have a written do-not-call policy *available upon demand*, as required by § 64.1200(d)(1).

Plaintiff also pleads that Defendant did not honor, and did not train its employees on honoring, do-not-call requests. Plaintiff points to numerous examples out of hundreds complaints about Defendant's refusal to honor do-not-call requests (going so far as to demanding payment to do so.) [*Id.* at ¶¶ 4, 122-126.] Accordingly, Plaintiff has adequately pled that Defendant fails to honor do-not-call requests, and lacks the training to do so, in violation of § 64.1200(d)(2) and (d)(3).

      iv.   <u>A private right of action exists for violations of § 64.1200(d) through § 227(c).</u>

Defendant footnotes the near-unanimously rejected argument that there may not be a private right of action for violations of § 64.1200(d). [Def.'s Brief, p. 7 n.7.] This is incorrect. Section 227(c) provides a private right of action for violations of regulations promulgated thereunder, and § 64.1200(d) was one such regulation. As the FCC wrote,

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. **In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide** that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).[6]

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013) (emphasis added).

Dozens of district and circuit courts have considered and rejected Defendant's argument,

---

[6] The FCC orders do not cite directly in text, but instead refer to footnotes which contain the citations. For example, the citation to 47 C.F.R. § 64.1200(d) is done through a citation to note 87. For convenience and simplicity, Plaintiff will plug the cite directly into the text where the corresponding footnote is found.

including in cases involving Defendant (and the same counsel) here. *See, e.g. Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620, *16-23 (N.D. Iowa, Sept. 9, 2021); *see also*, *Benzion v. Vivint, Inc.*, Case No. 12-61826, 2014 U.S. Dist. LEXIS 187275, *15-17 (S.D. Fla. Jan. 17, 2014); *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 (6th Cir. 2011); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1197-98 (M.D. Fla. 2014).

## III.   Section 227(c)'s applicability to "residential telephone subscribers".

The Section 227(c) regulations apply only to calls made to "residential telephone subscribers" and "wireless telephone numbers." 47 C.F.R. § 64.1200(c)(1); 47 C.F.R. § 64.1200(d); 47 C.F.R. § 64.1200(e). Defendant contends that Plaintiff has not pled that he qualifies as a residential telephone subscriber.[7] Defendant is incorrect.

### a.   "Residential telephone subscriber" requires only that the subscriber number at issue is not on a business plan.

Throughout its brief, Defendant conflates the terms residential telephone *subscriber* with residential telephone *number*, and argues about the usage of the number. This seemingly minor distinction is crucial because "residential subscriber" is a defined term. The FCC defines "residential subscriber" as a "a subscriber to a telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(c). On the other hand, "[b]usiness subscriber refers to a subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b). These definitions pre-date the creation of the Do-Not-Call Registry and internal do-not-call regulations by almost four years. *Compare* 18 F.C.C. Rcd. 14014 (June 26, 2003) *with* 47 C.F.R. §§ 64.2305(b) and (d) (effective date October 5, 1999).[8] Combining the definitions results in:

---

[7] Plaintiff does not argue that his numbers are wireless telephone numbers, so this brief will focus only on the "residential telephone subscriber" language.

[8] While it is true that these definitions do not appear directly in the TCPA, this is not necessary for these definitions to be persuasive. "[W]hen Congress uses the same language in two statutes having similar

Residential subscriber refers to a subscriber to a[9] … service within a telephone exchange[10] [or a] comparable service … by which a subscriber can originate or terminate a telecommunications service[11] … that is not a subscriber to a service … for businesses.[12]

Congress also recognized this distinction between *subscriber* and *number*. In § 227(b), Congress prohibited certain calls to "any residential telephone line." 47 U.S.C. § 227(b)(1)(B). Yet in § 227(c), Congress required the FCC to initiate rulemaking proceedings to protect "residential telephone subscribers." Congress could have easily used the phrase "residential telephone lines" instead. Its decision not to do so must be treated as intentional. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another … it is generally presumed that Congress acts intentionally."). Accordingly, the terms "residential telephone subscriber" and "residential telephone number/line" cannot be synonymous.

Considering the above, whether one is a residential or business subscriber thus turns on the nature of the service to which the subscriber subscribes. A subscriber to number attached to a business service is a business subscriber, and a subscriber to a non-business service is a residential

---

purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended the text to have the same meaning in both statutes."3F[8]  *United States v. Nishiie*, 996 F.3d 1013, 1026 (9th Cir. 2021); *see also, e.g.*, *United States v. Davies*, 139 S. Ct. 2319, 2329 (2019) (considering nearly identical language in two different statutes and writing "we normally presume that the same language in related statutes carries a consistent meaning."); Courts apply the canons of construction to regulations as well as to statutes. *See Wells Fargo & Co. v. United States*, 957 F.3d 840, 856-57 (8th Cir. 2020) (Grasz, J., dissenting); *see also Cremeens v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2010).

[9] 47 C.F.R. § 64.2305(d)

[10] 47 C.F.R. § 64.2305(g)(1)

[11] 47 C.F.R. § 64.2305(g)(1)(B)

[12] 47 C.F.R. § 64.2305(b).

subscriber.[13] This simplified approach stands in stark contrast to Defendant's convoluted and arbitrary "usage" test discussed below. "Statutes should be interpreted to avoid arbitrary results." *Velez v. Coler*, 767 F. Supp. 253, 256 (M.D. Fla. 1991); *see also, e.g. United States v. Wilson*, 503 U.S. 329, 334 (1992) (where possible, any ambiguities in a statute should be interpreted so as to avoid arbitrary or absurd results). This is especially so when it comes to consumer-protection statutes such as the TCPA, which is a "remedial statute [and] should be liberally construed in favor of the consumer." *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 824 (M.D. Tenn. 2018); *see also, e.g. Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC, 950 F.3d 959, 967 (7th Cir. 2020).

Plaintiff acknowledges that there are cases that have examined a person's "use" of a phone in determining whether that person was a "residential telephone subscriber." Those courts, however, were not presented with, and did not address, the definitions discussed above or the distinction Congress drew between "residential subscriber" and "residential line." On the other hand, all three courts to be presented with and to address these definitions found that they are controlling on the meaning of "residential subscriber". *See Spurlark v. Dimension Serv. Corp.*, 2022 U.S. Dist. LEXIS 120468, *8 (S.D. Ohio July 7, 2022) ("A 'residential telephone subscriber' is a 'subscriber to a telephone exchange service that is not a business subscriber.' 47 C.F.R. § 64.2305(d)."); *Rose v. New TSI Holdings, Inc.*, 2022 U.S. Dist. LEXIS 56525, *6 (S.D.N.Y. Mar. 28, 2022) ("The FCC, which possesses authority to issue implementing rules and regulations for the TCPA … defines a 'residential subscriber" as a "subscriber to a telephone exchange service

---

[13] This conclusion is not at odds with the FCC's statement that while it "will presume wireless subscribers who ask to be put on the national do-not-call list [are] 'residential subscribers'" this presumption "may require a complaining wireless subscriber to provide further proof of the validity of that presumption should [it] need to take enforcement action." 18 FCC Rcd. 14014, 63, ¶ 36. That proof, under the definitions discussed herein, is proof that the telephone number on the list is subscribed to a non-business service.

that is not a business subscriber,' 47 C.F.R. § 64.2305(d).")); *Kemen v. Cincinnati Bell Tel. Co. LLC*, 2023 U.S. Dist. LEXIS 11552, *12 (S.D. Ohio, Jan. 23, 2023) (noting 47 C.F.R. § 64.2305(d) as controlling on the definition of residential subscriber in the context of the TCPA, but dismissing without prejudice because plaintiff only pled that the calls were to her cell phone, which is not sufficient under § 64.2305's definition.)

Here, Plaintiff pleads his numbers were subscribed to him personally and on an individual plan, rather than to a business on a business plan. [FAC ¶¶ 39-40.] Plaintiff also pleads that his telephone number ending in 4999 was on the National Do-Not-Call Registry at the time of the calls, and numbers on the National Do-Not-Call Registry are entitled to a presumption that they are residential. *See, e.g. Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020); *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 505 (D.R.I. 2020); *Balack v. Rentbeforeowning.com*, 2022 U.S. Dist. LEXIS 188649, *9-10 (C.D. Cal. Oct. 11, 2022) (collecting cases); *Valdes v. Century 21 Real Estate, LLC*, 2019 U.S. Dist. LEXIS 182616, *8-9 (D.N.J. Oct. 21, 2019); 18 FCC Rcd. 14014, *63-64, ¶ 36.

**b. Defendant's suggested limitations on who qualifies as a "residential telephone subscriber" are arbitrary, nonsensical, and unworkable.**

Defendant proposes a much more convoluted and largely invented "use" test. It then relies on selectively curated pages from depositions of Plaintiff in previous cases to argue that Plaintiff's numbers do not qualify as residential.

For starters, the Court should decline to consider Defendant's edited deposition transcripts. While it is true that courts may consider public records, such as court filings, without converting a motion to dismiss into a motion for summary judgment, Defendant submits deposition transcripts missing dozens of pages and frequently cuts off Plaintiff's responses to relevant queries mid-response. *See, e.g.* [Heeringa Decl., Ex. A, 33:24.] It would be prejudicial to Plaintiff to take

judicial notice of the truth of the matters contained in such edited transcripts. The editing places the "substance" of the deposition testimony in "reasonable dispute", rendering judicial notice improper. *See Insulate SB, Inc. v. Advanced Finishing Sys.*, 797 F.3d 538, 543 n.4 (8th Cir. 2015) (applying Fed. R. Evid 201(b) and finding it inappropriate to take notice of the truth of the matters asserted in documents when the opposing party disputes the accuracy "of the matters within them and inferences to be drawn from them[.]")

Even if the Court considers the substance of the transcripts, they are not grounds for dismissal. The criteria Defendant seeks to apply to some of the "facts" derived therefrom are entirely made up. Defendant, with minimal support, broadly claims that the term "residential telephone number" (which, again, is not the operative term) does not include any number belonging to someone has more than one telephone number. [Def.'s Brief, p. 10] (Plaintiff's numbers are not residential because they are "not his only phone line"). It also claims, with minimal support, that it excludes any number that forwards to a cell phone. *Id.* (Plaintiff's numbers are not residential because they "forward[] to his cellular phone number."). It also claims, with minimal support, that it excludes any number not used make outbound calls. *Id.* (Plaintiff's number is not residential because "he does not use them to make any calls"). Finally it claims, with minimal support, the term excludes numbers given to telemarketers. *Id.* (Plaintiff's numbers are not residential because "he uses them primarily…to receive calls from would-be TCPA defendants.").

Defendant's proposed criteria should be rejected. Indeed, the arbitrary "no other number" standard it seeks to impose was explicitly rejected by the FCC. 18 FCC Rcd. 14014, ¶ 35 ("[T]here is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect in the TCPA" and rejecting an interpretation that would exclude from protection those whose numbers are used to supplement their primary telephone

service.) To the extent its one case in support of this condition suggests otherwise, it is incorrectly decided on this issue. *See Mantha v. Quotewizard.com, LLC*, 2022 U.S. Dist. LEXIS 19502, *12-14 (D. Mass. Feb. 3, 2022).[14]

Nevertheless, if Plaintiff's use were considered, Plaintiff pleads that, in the context here, he received *home warranty sales calls* from Defendant. It does not get more residential than that. This is sufficient to survive a Motion to Dismiss.[15]

### c. Nothing about Defendant's ad hominem attacks on Plaintiff indicate his number is not residential.

Defendant's drive-by attack on Plaintiff as a "serial TCPA litigant" is not only irrelevant, but hypocritical considering its request to strike much more relevant evidence that it is a "serial TCPA violator." And while this attack only occupies a couple of words in Defendant's brief, much of the highlights in its proffered deposition exhibits appear to deal with Plaintiff's litigation history. Though Defendant only cites to pages 31-33, 35, 42, 44, 60-62 of Exhibit A and pages 115-116 of Exhibit B, the exhibits themselves contain dozens of additional pages and highlights to which Defendant does not cite. No one disputes that Plaintiff Katz is well-versed in the TCPA and has used its protections in the past. He has chosen to take a stand to protect privacy rights that Congress found significant enough to codify in bipartisan fashion and which remain codified and bipartisan even today. There is nothing wrong with that.

### d. Standing

---

[14] Notably, however, *Mantha* explicitly rejected a use test. *Id.* at *13, n.7.

[15] In addition, although Defendant's submitted partial deposition transcripts are not properly considered, they too support Plaintiff's "residential" qualification. Even in those cherry-picked pages, Plaintiff testified that the numbers receive calls from "illegal telemarketers" and that the "vast majority" are telemarketing calls. Heeringa Decl., Ex. A, 32:16-33:16.

Issues of Article III standing have been addressed in Plaintiff's pending partial Motion to Remand. [Dkt. 17.] Defendant raises issues of prudential standing in its Motion, based solely on its arguments that Plaintiff's numbers are not "residential telephone numbers" under the statute. For the reasons discussed previously in Section III, this argument should be rejected.

### IV.   Plaintiff's class definitions and allegations are proper.

Defendant moves to strike Plaintiff's proposed class definitions as fail-safe or because of theoretical predominance issues. While judges enjoy liberal discretion to strike pleadings under Rule 12(f), "this remedy is drastic and often sought by the movant simply as a dilatory or harassing tactic, [making this] an extreme and disfavored measure." *Donelson v. Ameriprise Financial Services, Inc.*, 999 F.3d 1080, 1091 (8th Cir. 2021). Defendant's arguments here are prime examples of such dilatory tactics and its motion to strike should be denied.

### a.   Plaintiff's proposed class definitions are not fail-safe

"A fail-safe class is one that would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Vogt v. State Farm Life Ins.*, 963 F.3d 753, 768 (8th Cir. 2020). In other words, "a class whose members may only be identified and included after the [c]ourt determines whether or not the potential class member has a valid claim" is fail-safe. *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 826 (7th Cir. 2012).

None of Plaintiff's proposed definitions are fail-safe. Significantly, not once does Defendant address the class definitions as written. Instead, Defendant argues that if one rephrases Plaintiff's class definitions to be fail-safe, the class definitions are fail-safe. Specifically, Defendant takes issue with Plaintiff's class definitions being limited to calls "regarding home warranty services", rephrasing this in a parenthetical as "(i.e. whether they constituted an

'advertisement' or 'telemarketing'). [Def.'s Brief, p. 21.] But a class cannot be stricken on a defendant's proffered "i.e." Plaintiff's class definitions are written intentionally and say what they say, and if Defendant takes issue with what they say, it should have addressed what they say.

This is not mere semantics. Plaintiff's definition and Defendant's "i.e." are not the same. Limiting the classes to those who received calls about a certain topic (in this case, Defendant's home warranty services) is *not* the same as limiting the class to those who received a call meeting a legal definition. The former is an issue of fact—what was the call about? Any person meeting the other elements of the class definitions who received a call on that topic is a class member. No merits determination is necessary. While Plaintiff believes such calls will qualify as telemarketing under the TCPA, reaching that conclusion is not necessary class membership. If calls regarding Defendant's home warranty services are *not* telemarketing, no one included in the classes is defined out, they lose on that issue and are bound accordingly.

The same is true for Defendant's arguments regarding the class definitions being limited to calls that it placed or "*had* placed on its behalf." Besides being an objectively odd argument— of course Defendant can only be held liable for calls for which it was in some way responsible— this too is a factual question. Did Defendant place the calls or have the calls placed? If so, persons receiving such calls are in the classes. While the latter piece of this relating to calls Defendant's "had placed on its behalf" involves more of an inquiry than calls Defendant made more directly, this is a factual issue that can be resolved by, for example, identifying the vendors (if any) Defendant used and obtaining their call logs, agreements, instructions from Defendant, and so on. This is *separate* from the inquiry of whether Defendant should be held liable for those calls that it "had placed on its behalf." For example, if Defendant instructed Vendor A to make calls offering its home warranty services, everyone to whom Vendor A placed such calls would be included in

the class. Yet that does not guarantee Defendant will be liable for such calls. The legal question of responsibility for a third-party's violation is distinct from the factual question of whether Defendant had the call placed.

Defendant also claims that Plaintiff's "Prerecord Subclass" is limited to those persons who did *not* provide their prior express written consent. Perhaps hoping to justify its inevitable request for reply briefing, Defendant does not explain to what language this argument refers, as neither "consent" nor references thereto appear in the Prerecord Subclass definition.[16]

Defendant's final argument—that limiting the "DNC Class" only to those persons whose numbers were "on the National Do-Not-Call Registry at the time of the calls" creates a fail-safe problem—fares no better. Once again, Defendant attempts to use a parenthetical rephrase to build a straw class definition that would be more susceptible to the arguments it wants to make. [Def.'s Brief, pp. 21-22.] But whether a number is on the National Do-Not-Call Registry is question of fact. No merits determination is needed to identify telephone numbers on the National Do-Not-Call Registry. They were either on it or they were not. Defendant's sole cited case in support of this point has been rejected by most courts to consider it. *See Costa v. Dvinci Energy, Inc.*, 342 F.R.D. 38, *40-41 (rejecting *Bryant v. King's Creek Plantation*, finding limiting a class to numbers on the DNC Registry is not fail-safe, and collecting cases holding the same); *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS at *34 (rejecting *Bryant*). Indeed, it is difficult to imagine how a plaintiff could define a DNC Registry TCPA class without limiting the class to those whose telephone numbers were on the Registry. *Costa*, 342 F.R.D. at 41.

---

[16] To the extent Defendant's issue is that this class is limited to "non-customers" of Defendant "when the number did not belong to the person for whom the calls were intended", these are factual questions. While a call being a wrong number makes it likely that the recipient did not consent, Defendant is free to introduce evidence that some portion of wrong number recipients provided consent. But no one is defined in or out of the class based on any merits determination of that consent.

### b. Predominance

Defendant again wrongly asserts that Plaintiff's class definitions are limited only to those who did not legally provide their consent, and that because Plaintiff's allegations suggest "countless unidentified third parties could have been involved in initiating the alleged calls and texts to Plaintiff and the putative class members", issues of how these third parties may have obtained consent, or how putative class members provided consent, are too individualized for class certification. While it is true that Defendant's *liability* to the class may depend on issues of consent, consent is irrelevant to Plaintiff's class definitions.

Assuming *arguendo* the relevance of consent to the predominance inquiry, consent is an affirmative defense. *Backer Law Firm, LLC v. Costco Wholesale Corp.*, 2017 U.S. Dist. LEXIS 213515, *18 (W.D. MO., Nov. 28, 2017); *see also, e.g. Momient v. Nw. Collectors, Inc.*, 666 F. App'x 531, 537 (7th Cir. 2016); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). Defendant has come forward with no evidence that it, or *any* third-party, obtained legally-sufficient consent from any class member. Such pure speculation cannot defeat class certification. *See, e.g. Rivera v. Equifax Info. Servs., LLC*, 341 F.R.D. 328, 345 (N.D. Ga. 2022) ("Where the [raised predominance issue] is hypothetical, courts should not allow such speculation and surmise to tip the decisional scales against class certification.") (citing *Bridging Communities Inc. v. Top Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016)). Further, Plaintiff explicitly pleads "the only locations at which Defendant solicits consent" does not constitute prior express written consent under the TCPA. [FAC ¶¶ 84-99.]

Defendant also prematurely argues that the issue of whether a telephone number is "residential" is an individualized question. Plaintiff disagrees. First, this is not the issue, as § 227(c) deals with "residential telephone subscribers", not "residential telephone numbers." Second,

whether a person qualifies as a residential telephone subscriber is a simple matter of accessing public databases and issuing subpoenas to carriers to determine the type of plan to which a class member telephone number is subscribed. As such, while this issue does in some respect require looking at individual class members, this process of separating all numbers on business plans is trivial in comparison to the issue susceptible to class-wide proof, and certainly would predominate. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3) … does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class wide proof… [only that] common questions predominate over questions affecting only individual class members.").

Even a usage test would not defeat predominance. Everyone in each class *necessarily* used their number for residential purposes, as they received calls from Defendant about *home* warranties. In other words, everyone who received a call from Defendant about its home warranty services used their phone on that received call for a residential purpose. Further, the intent of Defendant's campaign was to call consumers about a quintessentially consumer/residential product. If Defendant believes business telephone numbers were inadvertently called, this can be dealt with in discovery prior to class certification. It need not be something the Parties wait until class certification to figure out. But as it stands, Defendant's concerns are purely hypothetical, and such hypothetical concerns cannot be the basis to defeat (or strike) a class.

Finally, determining whether a number did not belong to the person for whom the calls were intended is not only doable, but wrong number classes are routinely certified doing just that. *See, e.g. Head v. Citibank, N.A.*, 340 F.R.D. 145, 152-54 (D. Ariz. 2022). Plaintiff will submit a proposed plan for ascertaining such numbers, according to the Eighth Circuit standard, at the appropriate time. This is not that time.

### c. Superfluous historical allegations

Defendant asks to strike allegations in Plaintiff's complaint of other, publicly available complaints about Defendant's conduct. These complaints are relevant, however, because the TCPA allows for treble damages for willful misconduct. These complaints come from Defendant's Yelp site and the BBB. Both sites put Defendant on notice that it is harassing consumers in violation of the TCPA. Indeed, in the case of BBB, Defendant actively responds to these complaints. If Defendant was aware of these complaints and continued the illegal conduct that impacted Plaintiff, it makes it more likely that Defendant's conduct is willful.

This is also relevant to whether Defendant had the proper policies, procedures, and training in place under § 64.1200(d). The number of complaints about Defendant's calling practices, with descriptions of conduct that mirrors Plaintiff's own experiences, make it plausible that Defendant's failures with respect to Plaintiff were rooted in its failures to create and/or comply with the mandated policies and procedures of § 64.1200(d), rather than an isolated error.

Finally, this is suggestive of numerosity. If this many people took the time to complain about Defendant's calling practices, which is likely a fraction of persons impacted by such numerosity is likely to be met.

### <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court deny Defendant's Motion in full.

**Dated:** February 13, 2023

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com
(Pro hac vice)

24

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on February 13, 2023, I electronically filed the foregoing with the Clerk of Court by using the Cm/ECF system, which will send notice of electronic filing to counsel of record.

**Dated:** February 13, 2023        /s/ Jeremy M. Glapion_____
                                      Jeremy M. Glapion