UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SAM KATZ,
on behalf of himself and all others similarly situated                                                   PLAINTIFF

v.                                                  No. 5:22-cv-5198

CHW GROUP, INC.,
d/b/a CHOICE HOME WARRANTY                                                                  DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant CHW Group, Inc., d/b/a Choice Home Warranty's ("CHW") motion to dismiss or strike (Doc. 25) and brief in support (Doc. 26), as well as Plaintiff Sam Katz's response in opposition (Doc. 27). For the reasons given below, CHW's motion is DENIED. Additionally, the Court will take this opportunity to explain the basis for its previous ruling on Mr. Katz's motion for partial remand (Doc. 17), which was denied via docket text order on February 17, 2023.[1]

**I.    Background.**

Mr. Katz brings this putative class action against CHW under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, alleging that he has received unlawful telemarketing calls and phone solicitations from CHW. He seeks to represent four different nationwide classes of individuals who have been subjected to the same annoyance. Mr. Katz's operative complaint (Doc. 23) sets forth three separate causes of action. Count 1 alleges that CHW made prerecorded or artificial voice telemarketing calls to Mr. Katz without obtaining his prior express written consent to do so, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and various

---

[1] Mr. Katz's motion for partial remand was accompanied by a brief in support (Doc. 18), which CHW opposed (Doc. 20).

1

implementing regulations. Count 2 alleges that CHW made telephone solicitations to a phone number of Mr. Katz's that was on the national "Do Not Call" registry, in violation of 47 U.S.C. § 227(c) and various implementing regulations. And Count 3 alleges that CHW made telemarketing calls to Mr. Katz despite not having an internal written policy pertaining to "Do Not Call" requests, in violation of 47 U.S.C. § 227(c) and various implementing regulations.

Mr. Katz's lawsuit was originally filed in the Benton County Circuit Court on July 18, 2022, but CHW removed it to this Court on September 27 of that year. *See* Doc. 2. The basis for removal was this Court's federal-question jurisdiction under 28 U.S.C. § 1331, as the TCPA is a federal statute. *See also* 28 U.S.C. § 1441(a). On December 2, Mr. Katz filed a motion for partial remand (Doc. 17), asking that Count 3 be sent back to state court. CHW opposed that motion, and this Court denied it without explanation in a docket text order dated February 17, 2023. *See* Doc. 28.

On January 30, 2023, CHW filed a motion to dismiss Mr. Katz's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Alternatively, CHW's motion requested that the complaint's class allegations be stricken under Rule 12(f). That motion has been fully briefed by the parties and is ripe for decision.

**II.     Discussion.**

Below, in Section II.A, the Court will first provide the basis and explanation for its February 17 order denying Mr. Katz's motion for partial remand. Then, in Subsection II.B, the Court will address CHW's motion to dismiss or strike.

**A.      Mr. Katz's Motion for Partial Remand (Doc. 17).**

Mr. Katz argued that proceedings on Count 3 of his complaint should be remanded to state court because he *might* not have Article III standing to bring that claim in federal court. The Court

2

emphasizes "might" because Mr. Katz coyly hedged his bets on this, implying that he perhaps *could* demonstrate Article III standing to bring this claim if he needed to, but that since he does not need to he would really just prefer not to.

To provide some background: Article III of the United States Constitution limits the jurisdiction of federal courts to specific types of "cases" and "controversies." U.S. Const. art III, § 2. According to the United States Supreme Court, a lawsuit is not a true "controversy" for Article III unless the plaintiff has "standing" to bring the case, which means the following three elements are all met: (1) the plaintiff suffered an "injury in fact" which was both "concrete and particularized" and "actual or imminent"; (2) there is a causal connection between the injury he suffered and the conduct of which he complains; and (3) it is "likely," rather than merely "speculative," that a favorable decision by the court would redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Count 3 in Mr. Katz's lawsuit is based on CHW's alleged failure to maintain internal policies and procedures for honoring do-not-call requests. At least one federal appellate court has held that a plaintiff does not have standing to bring this sort of claim unless the plaintiff received calls from the defendant after having previously asked the defendant to stop calling him. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271–72 (11th Cir 2019). The idea here is that if a plaintiff never asked the defendant to stop calling him, then his injury was not caused by the defendant's failure to maintain an internal do-not-call policy; after all, even if the policy existed, it would not have been triggered and the calls would have continued absent a do-not-call request from the plaintiff. *See id.* This Court is not subject to any binding precedent on this particular issue, as the Eighth Circuit has never addressed it.

3

Mr. Katz makes no secret of the fact that his preferred venue for this lawsuit is the state court where he originally filed it. Now that he has challenged this Court's jurisdiction over Count 3 of his complaint, Mr. Katz contends that CHW—as the party invoking federal jurisdiction, *see Lujan*, 504 U.S. at 561—bears the burden of showing that Mr. Katz has standing to bring this claim in federal court. *See Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1222 (S.D. Fla. 2020); *see also In re Bus. Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993). In his complaint, Mr. Katz artfully avoided making any allegations one way or the other about whether he ever made any such do-not-call request of CHW. Maybe he made the request, or maybe he didn't; but he would prefer not to inform us one way or the other at this time, and instead would like to keep everyone guessing until the big reveal becomes procedurally convenient for him. But for now, since he isn't telling, CHW can't carry its burden and therefore the claim must be remanded to his preferred state-court venue. Or so the argument goes.

This is obvious procedural gamesmanship, and the Court need not countenance it. "Plaintiffs . . . may not omit pertinent facts from their Complaint in an attempt to avoid federal jurisdiction." *Jamil v. Workforce Res., LLC*, 2018 WL 2298119, at *4 (S.D. Cal. May 21, 2018). "Jurisdiction is determined on the basis of the *well-pleaded* complaint. A complaint that is 'artfully pleaded' to avoid federal jurisdiction may be recharacterized as one arising under federal law." *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) (emphasis in original), *overruled on other grounds*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985). This Court unquestionably had original federal-question jurisdiction at the time of removal, given that the TCPA is a federal statute. Neither party has presented this Court with any good reason to

believe it lacks subject-matter jurisdiction.[2]  "Federal courts . . . have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.  Jurisdiction existing, . . . a federal court's obligation to hear and decide a case is virtually unflagging."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).  Therefore, Mr. Katz's motion to remand was denied.

> **B.     CHW's Motion to Dismiss or Strike (Doc. 25).**

Turning now to CHW's pending motion to dismiss or strike—as previously mentioned, CHW asks that Mr. Katz's complaint be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Alternatively, CHW requests that the complaint's class allegations be stricken under Rule 12(f).

> **1.     Legal Standard.**

In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party."  *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)).  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  However, "*Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2).  Rather, those decisions confirmed that Rule 8(a)(2) is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for a misconduct

---

[2] Notably, Mr. Katz never says that he *lacks* standing to bring any of his claims; he just argues that at this early stage of the litigation, his standing to bring Count 3 in federal court "is in doubt."  *See* Doc. 18, p. 11.

alleged.'" *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Where the facts alleged, taken as true, "raise a reasonable expectation that discovery will reveal evidence" in support of a plaintiff's claim, the Court should deny a motion to dismiss. *Twombly*, 550 U.S. at 556.

As for motions to strike, "striking a party's pleadings is an extreme measure, and, as a result . . . motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). "[I]n many cases, a motion to strike or dismiss a plaintiff's class allegations prior to discovery on class-related issues and prior to the submission of a motion for class certification would be premature." *Knowles v. Standard Fire Ins. Co.*, 2013 WL 6497097, at *2 (W.D. Ark. Dec. 11, 2013). However, this Court "has 'liberal discretion' when deciding whether to strike any portion of a pleading" under Rule 12(f), and "may strike class allegations when they involve 'a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion.'" *Id.* A court may also strike or dismiss class claims that do not meet the requirements of Rule 23. *See id.*

  2.  **Analysis.**

To refresh the reader's memory: Count 1 of Mr. Katz's complaint alleges that CHW made prerecorded or artificial voice telemarketing calls to Mr. Katz without obtaining his prior express written consent to do so, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and various implementing regulations. Count 2 alleges that CHW made telephone solicitations to a phone number of Mr. Katz's that was on the national "Do Not Call" registry, in violation of 47 U.S.C. § 227(c) and various implementing regulations. And Count 3 alleges that CHW made telemarketing calls to Mr. Katz despite not having an internal written policy pertaining to "Do Not Call" requests, in violation of 47 U.S.C. § 227(c) and various implementing regulations.

CHW advances a variety of arguments as to why these counts should be dismissed. Several of these arguments can be quickly rejected, so the Court will address those weaker arguments first.

CHW's weakest argument by far is that the complaint alleges insufficient facts to support a reasonable inference that CHW directly placed the calls at issue or had an agency relationship with some third party who placed these calls on its behalf. This is obviously wrong. Among other things, Mr. Katz's complaint alleges that CHW explicitly "identified itself by name on several of the calls" to Mr. Katz, *see* Doc. 23, ¶ 54, and that, for example, one call began with a prerecorded message stating that "[t]his call is being placed on behalf of Choice Home Warranty for telemarketing purposes," *id.* at ¶ 56, that another call was from a live caller who identified himself as "Richard Kelly from CHW," *id.* at ¶ 57, and that another prerecorded call had a message stating "[h]ey, this is Jen from CHW," *id.* at ¶ 58. The complaint also alleges that Mr. Katz received numerous calls from an entity identifying itself as "Complete Home Services," but that within a minute of receiving one such call, the person with whom Mr. Katz spoke on that call sent Mr. Katz an email thanking him for his interest in CH*W* and advertising CH*W*'s services. *See id.* at ¶¶ 65–75. The Court does not see what more could possibly be necessary or useful for supporting a reasonable inference at the pleading stage that CHW was, indeed, the entity ultimately responsible for placing these calls to Mr. Katz.

CHW's only other argument specific to Count 1 is that the complaint alleges insufficient facts to support a reasonable inference that Mr. Katz ever received any prerecorded or artificial voice calls from CHW. The Court disagrees. The complaint alleges, among other things, that Mr. Katz "received numerous prerecords" from CHW "which played identical artificial voice messages." *See id.* at ¶ 64. It further explains that by "prerecorded" Mr. Katz means "calls that were non-interactive and sounded as if they were actual pre-created recordings (compare to one's

7

outgoing voicemail message)," and that by "artificial" Mr. Katz means "calls that were either interactive or appeared to be computer- or artificially-generated during the call (compare to a customer service system that invites you to speak responses and answers accordingly)." *Id.* at n.4. The complaint states that "Mr. Katz is aware that these telephone calls used a prerecorded or artificial voice because of his familiarity with normal human interaction, intonation, manners of speaking, and his inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter." *See id.* at ¶ 80. That is good enough. Virtually everyone can quickly recognize when they are speaking with a non-human on the phone, and Mr. Katz has provided more than sufficient detail to persuade the Court that he is no outlier on that front. Federal notice-pleading standards do not require his complaint to provide microscopic analysis of these calls' qualities. *See, e.g.*, *Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (it is sufficient for complaint to describe "in laymen's terms" the basis for his belief that the messages were pre-recorded, for example, by alleging that the voice sounded "robotic," or that there was a "lack of human response when he attempted to have a conversation with the 'person,'" or that the message's content was "generic"); *cf. Manopla v. Sansone Jr.'s 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020) (implying that it would have been sufficient for plaintiff's complaint simply to allege that the call's pre-recorded nature was "patently obvious to the naked ear when listening to the message").

Another weak argument from CHW pertains specifically to Count 3: CHW contends that the complaint alleges insufficient facts to support a reasonable inference that CHW failed to maintain internal do-not-call policies. The Court disagrees. The complaint alleges that during a phone conversation with "Marc at Choice Home Warranty sales," Mr. Katz "requested that Marc provide Plaintiff with a copy of Defendant's Do-Not-Call policy," and that "Marc stated he would

8

provide this policy in an email and then hung up," but then failed to do so. *See* Doc. 23, at ¶¶ 65–72. The complaint also alleges, in detail, that at least one other individual has requested, during a phone call with a CHW representative named "Dennis," that CHW provide them with a copy of its do-not-call policy and that after much discussion CHW refused to do so. *See id.* at ¶¶ 112–19. At this early stage of litigation, this is sufficient. Mr. Katz has alleged that CHW failed to maintain an internal written do-not-call policy, and he has alleged specific facts supporting his belief to that effect. These facts are the most that could ever reasonably be expected to be available, without the benefit of discovery, to an ordinary person who is not an employee of CHW. Some issues in this case will doubtlessly involve very complicated discovery; but establishing the truth or falsity of these particular allegations about when and whether CHW's internal written do-not-call policy existed should be a very simple, straightforward, and non-burdensome affair.

The Court now turns to CHW's sole remaining argument for dismissal of Counts 2 and 3, which is that Mr. Katz is not a "residential telephone subscriber" to the phone numbers at which CHW called him. This is significant because the regulations on which Mr. Katz's claims are based apply only to calls made to "residential telephone subscribers" and "wireless telephone numbers." *See* 47 C.F.R. § 64.1200(c)–(e). Mr. Katz does not contend his phone numbers in this case are wireless, so his only route to success in this case requires that he be a "residential telephone subscriber" to the numbers at issue here.

Disappointingly, this term is not defined in the TCPA nor in its implementing regulations. CHW contends that for a person to be a "residential telephone subscriber" within the meaning of these regulations, the number in question must be "actually used for residential purposes," *see* Doc. 26, p. 17 (internally numbered as p. 8), and must be "the primary means of reaching the individual at their residence—that is, there is no other landline or phone at their residence which

9

is instead the primary means of reaching them," *see, e.g.*, *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022). Mr. Katz, by contrast, advocates for a more expansive definition, which is that a "residential telephone subscriber" is a "subscriber to a telephone exchange service that is not a business subscriber." *See, e.g.*, *Rose v. New TSI Holdings, Inc.*, 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022). Apparently the Eighth Circuit has never addressed this issue; and each party cites a smattering of unpublished district court cases from around the country in support of its preferred definition.

The Court favors Mr. Katz's preferred construction, for reasons both textual and purposive. First, with respect to the text, the Court finds nothing in the language of the organic statute or the implementing regulations to support the *Mantha* court's "primary means of reaching the individual at their residence" test. Indeed, quite the opposite: the regulations at issue here explicitly extend their protection not only to "residential telephone subscribers" but also to "wireless telephone numbers." *See* 47 C.F.R. § 64.1200(e). On this point, the Court agrees with no less an authority than the Federal Communications Commission ("FCC") itself, which is the agency tasked with promulgating and enforcing these regulations. *See* 18 FCC Rcd. 14014, 14038, ¶ 35 ("[T]here is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA.").

Second, although the TCPA and its implementing regulations do not define "residential telephone subscriber," the FCC has provided a definition for that term in a different, but not distant, Subpart of the federal regulatory code—and that definition is Mr. Katz's preferred one: "a subscriber to telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(d). Here, the Court would apply the canon of construction that identical language in related statutes or regulations presumptively carries a consistent meaning. *See United States v.*

10

*Davies*, 588 U.S. __, 139 S. Ct. 2319, 2329 (2019); *Black & Decker Corp. v. C.I.R.*, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to canons of construction.").

Third, another longstanding canon of construction instructs that to whatever extent remedial statutes are vague or ambiguous, they generally should be liberally construed in favor of the parties they were designed to protect. *See, e.g.*, *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (Securities and Exchange Act); *Welsh v. Burlington N., Inc., Emp. Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995) (ERISA). "The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls. Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) (internal citations omitted); *see also Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 950 F.3d 959, 967 (7th Cir. 2020) (same); *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.*, 847 F.3d 92, 96 (2d Cir. 2017) (same). Arbitrarily importing a requirement that a number be the primary means of reaching an individual at their residence would not comport with this canon.

None of this is to say that the actual use a subscriber makes of a telephone number is irrelevant to whether he is a residential or business subscriber. That may turn out to be a fruitful topic of discovery.[3] But at this stage, the critical question is whether Mr. Katz has alleged sufficient facts in his complaint to support a reasonable inference that he is not a business subscriber. The

---

[3] CHW has submitted incomplete transcripts from depositions of Mr. Katz that were taken in earlier lawsuits, and argues that these show it will be impossible for him to prove that he actually uses the phone numbers at issue for residential purposes. Given their incomplete nature and that they are being offered for the truth of the matters within them and inferences to be drawn from them, it would be inappropriate for the Court to take judicial notice of them at this stage of the proceedings. *See Insulate SB, Inc. v. Advanced Finishing Sys.*, 797 F.3d 538, 543 n.4 (8th Cir. 2015).

11

Court concludes that he has. He alleges that both numbers "are subscribed to him personally rather than a business and [are] on a plan intended for individuals rather than businesses." *See* Doc. 23, ¶¶ 39–40. He also alleges that both numbers "are, and at all times were, used primarily as residential and personal numbers." *Id.* at ¶ 102. While perhaps a little thin, these allegations are sufficient at this early stage to support the reasonable inference that Mr. Katz does not primarily use these numbers for business purposes.

Having rejected all of CHW's arguments for dismissal,[4] the Court turns finally to the issue of whether Mr. Katz's class allegations should be stricken from his complaint. CHW advances two arguments on this topic: first, that the class definitions are improper "fail-safe" classes; and second, that common questions of fact and law do not predominate. The Court has no difficulty rejecting the second argument as premature at this stage; as already noted, motions to strike class allegations at the pleading stage "are viewed with disfavor and are infrequently granted." *Stanbury Law Firm*, 221 F.3d at 1063. "[J]udges in the Eighth Circuit . . . typically deny as premature motions to strike class allegations filed significantly in advance of any possible motion for class certification." *In re Folgers Coffee*, 2021 WL 7004991, at *4 (W.D. Mo. Dec. 28, 2021). "At this early stage in litigation, prior to any class discovery or a motion for class certification, the Court cannot determine whether individualized matters will predominate over common issues." *Bishop v. DeLaval Inc*, 2020 WL 4669185, at *2 (W.D. Mo. Jan. 28, 2020).

As for CHW's first argument regarding fail-safe classes, the Court is presently unpersuaded. A fail-safe class is one that is defined such that membership in the class depends upon having a valid claim on the merits. *See Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616,

---

[4] CHW also argues that Mr. Katz lacks prudential standing to bring Counts 2 and 3 in this lawsuit, but the only basis for this argument is the one the Court has already rejected regarding the definition of "residential telephone subscribers."

624 (8th Cir. 2021). Fail-safe classes are impermissible because they "allow[] putative class members to seek a remedy but not be bound by an adverse judgment." *Id.* They are also "unmanageable, *see* Fed. R. Civ. P. 23(b)(3)(D), because the court cannot know to whom notice should be sent." *Id.* (internal quotation marks omitted).

Mr. Katz contends that CHW's fail-safe argument is based on CHW's re-characterization of Mr. Katz's class definitions rather than on the actual language of the class definitions. The Court agrees with Mr. Katz, and would add that those re-characterizations seem to be procrustean attempts at fitting the class definitions into favorable (for CHW) caselaw rather than applying the caselaw to the class definitions that Mr. Katz has proposed. Specifically, every single case that CHW cites in which TCPA class allegations were stricken on fail-safe grounds did so because the classes included only individuals who did not consent to the receipt of phone calls. *See Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076 (S.D. Ohio May 7, 2014); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013); *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016); *Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 4426908 (N.D. Cal. Aug. 22, 2016); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015); *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610 (E.D. Penn. 2015); *Martinez v. TD Bank USA, N.A.*, 2017 WL 2829601 (D.N.J. June 30, 2017); *Bryant v. King's Creek Plantation, L.L.C.*, 2020 WL 6876292 (E.D. Va. June 22, 2020). But none of Mr. Katz's proposed class definitions say anything at all about whether the class members ever consented to receive phone calls, *see* Doc. 23, ¶ 139, although CHW inexplicably asserts that they do, *see* Doc. 26, p. 30 (internally numbered as p. 21).

CHW also advances fail-safe objections to a few other aspects of Mr. Katz's proposed class definitions, but does not provide any judicial precedent that meaningfully addresses these other

13

objections. If the Court is not to have the benefit of any caselaw regarding particular class definition language, then it is all the more important that the Court be informed by discovery and by more fulsome class-certification briefing on the topic. Therefore, the Court in its discretion will deny CHW's request to strike Mr. Katz's class allegations, without prejudice to its right to raise these arguments again at the class-certification stage.

### III.   Conclusion.

IT IS THEREFORE ORDERED that Defendant CHW Group, Inc., d/b/a Choice Home Warranty's motion to dismiss or strike (Doc. 25) is DENIED.

IT IS SO ORDERED this 29th day of September, 2023.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE